IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACUSETTS
(BOSTON DIVISION)

| | |
|---|---|
| THOMAS J. MACDONALD, a/k/a "TOMMY MAC," an individual, and TOMMY MAC ENTERPRISES, INC., a successor in interest to THOMAS J. MACDONALD FINE FURNITURE INC., a Massachusetts corporation,<br><br>      Plaintiffs,<br><br>   -against-<br><br>WGBH EDUCATIONAL FOUNDATION, a charitable non-profit Massachusetts corporation, THE TAUNTON PRESS, INC., and LAURIE DONNELLY, an individual,<br>      Defendants. | Civil No.<br><br>PLAINTIFFS' VERIFIED COMPLAINT AGAINST DEFENDANTS FOR USE OF THE NAME, PICTURE, GOOD WILL, AND TRADEMARKS OF PLAINTIFFS IN VIOLATION OF THE LANHAM ACT AND STATE LAW, FOR THEIR MISREPRESENTATION AND BREACH OF CONTRACT, AND SEEKING INJUNCTIVE RELIEF AND DAMAGES  AGAINST DEFENDANTS AND CANCELLATION OF DEFENDANT WGBH'S IMPROPERLY REGISTERED TRADEMARK |

  Plaintiffs Thomas J. MacDonald a/k/a/ "Tommy Mac" and Tommy Mac Enterprises, Inc., as successor in interest to Thomas J. MacDonald Fine Furniture Inc., allege as follows for their Verified Complaint against Defendants WGBH Educational Foundation, The Taunton Press, Inc., and Laurie Donnelly.

### Summary Statement

  1. Plaintiffs bring this action because (1) all three Defendants are infringing on the trademarks, name, picture, and reputation of Plaintiff Thomas MacDonald and are profiting from use of these assets; (2) Defendants WGBH and Laurie Donnelly induced Plaintiffs into giving up many valuable business opportunities in exchange for the false promise of other opportunities; and (3) WGBH and Laurie Donnelly improperly registered a trademark in violation of Plaintiffs' rights and intentionally misled Plaintiffs about that registration.

**Jurisdiction and Venue**

2.      This Court has subject matter jurisdiction over Count I (false suggestion of connection), Count II (trademark infringement), and Count III (false sponsorship) pursuant to 28 U.S.C. § 1331 because these claims arise under the laws of the United States, specifically under the Lanham Act, Title 15 U.S.C. §1125, *et seq*.

3.      This Court has supplemental jurisdiction over the Massachusetts state law claims brought in Count IV (Defendants' unauthorized use of Plaintiff's name and picture), Count V (misrepresentation of the nature of a trademark Defendant WGBH obtained), and Count VI (breach of contract to make best efforts to secure business opportunities) because these state claims are so related to Counts I, II, and III, which are within the original jurisdiction of this Court, that Counts IV, V, and VI form part of the same case or controversy as the federal claims, within the meaning of 28 U.S.C. §1367, and involve common questions of fact and related questions of law.

4.      Venue is proper in this District under 28 U.S.C. §1391 because, as more specifically alleged below, Defendants either reside or have their principal place of business within this District, transact business here, or because a substantial part of the events and actions of Defendants took place here.

**The Parties**

5.      Plaintiff Thomas J. MacDonald a/k/a "Tommy Mac" ("Macdonald") resides in Canton, Massachusetts.

6.      Plaintiff Tommy Mac Enterprises, Inc., as successor in interest to Thomas J. MacDonald Fine Furniture Inc., ("Fine Furniture") is a corporation organized and doing business under the laws of the Commonwealth of Massachusetts. At all times relevant herein, Fine

Furniture gave material aid to the efforts of MacDonald in achieving his fame and trademarks in the manner described below and had a right to enjoy and to have its rights to these assets protected by federal and state law, along with Plaintiff MacDonald.

7.      Defendant WGBH Educational Foundation ("WGBH") is a charitable, non-profit Massachusetts corporation having its principal place of business at One Guest Street, Boston, Massachusetts 02135.

8.      Defendant The Taunton Press, Inc. (the "Taunton Press") is a corporation organized and doing business under the laws of the state of Connecticut and some of its publications are distributed within this District in substantial amount.

9.      Defendant Laurie Donnelly is an individual residing in Duxbury, Massachusetts, and was at all relevant times the Executive Producer for the television series referred to herein, and was acting for and on behalf of WGBH and for herself with the intent to benefit both WGBH and herself personally, by her wrongful actions described in this Verified Complaint.

## Facts Relevant to All Counts

### Plaintiff MacDonald's Trademarks and Associated Assets

10.     Plaintiff Thomas J. Macdonald a/k/a Tommy Mac ("MacDonald") has been involved with carpentry and woodworking virtually his entire life. He learned and fell in love with carpentry by attending and studying carpentry at the Blue Hills Vocational and Technical High School in Canton, Massachusetts. In 1985, he took the required training to become a member of the Carpenters' Union, joined that union in 1990, and worked as a carpenter for the next 17 years. In 1997, he became disabled as the result of a shoulder injury. Because he wanted to stay involved with carpentry but was unable to work as a tradesman with the union, he enrolled in the prestigious North Bennett Street School in Boston for Craft, Trade, and Artisan

Instruction. There he learned woodworking in the form of high-end cabinet and furniture making. He thereafter launched his new career in cabinetry and woodworking in 2001.

11.     By 2010 Thomas MacDonald had become known as "Tommy Mac", a highly-skilled master woodworker. Through his hard work and skill, and through his efforts to publicly establish himself as a master furniture maker, Macdonald had become well known throughout New England and beyond by his name, the name "Tommy Mac," his picture, and his excellent reputation as a master woodworker, one of the best in his trade. He established his woodworking reputation through his name "Tommy Mac" and by use of the phrase "Rough Cut," which he used to promote himself, his skills, talents, and high-quality products, and which has as a result become associated by the public with his name, his skills, his talents, and his high-quality products.

12.     Defendants WGBH and Laurie Donnelly have themselves admitted to the valuable nature of the name and picture of MacDonald and Tommy Mac, and the fine and highly-praised work associated with his name and picture. They described these valuable assets publicly in a WGBH publication (Exhibit "A" hereto) which these Defendants repeatedly posted in and after 2010, and which described MacDonald and Tommy Mac as:

- a "famed woodworker,"

- "one of the best wood workers today,"

- "a rising star,"  and

- "the Van Gogh of woodworking."

WGBH also acknowledged publicly (Exhibit A) that "people all over New England have been gravitating to Tommy MacDonald's workshop." (*Id.*)

4

13.     MacDonald earned significant public recognition of the quality of his work, and

of his picture, his name, and the name "Rough Cut", through news and trade articles praising his

work, including those found collectively in Exhibit "B" to this Verified Complaint, the following

of which are a sample:

> [Article starts with a photograph of MacDonald followed by the article]
>
> An injury on Boston's Big Dig led the construction worker Tom MacDonald to North Bennett Street School, where he built a Salem block-front secretary and launched a successful career.

[MacDonald, Tom, "My bad arm forced a good decision," *Taunton's Fine Woodworking*,

October 2003, Issue No. 165, 2003, Exhibit B-1].

> [*Fine Woodworking* feature article starts with photograph of MacDonald] Tom MacDonald, who was recently on 'This Old House,' stands with one of his pieces, a block front Salem secretary made from mahogany wood.
>
> From the depths of his basement to a new woodworking studio and gallery in Canton center, Tomas J. MacDonald continues to design and create custom furniture pieces.  . . .
>
> With the tag-line, "Creator of Future Family Heirlooms," MacDonald opened Thomas J. MacDonald Furniture Maker at 574 Washington St. in Canton three months ago, following a lengthy career in construction. . . .
>
> While recovering from his injury, MacDonald was accepted to the North Bennett Street School in Boston's North End, where he graduated in 2002. During his second year at the prestigious trade school, MacDonald invested over 1,000 hours of work replicating a Salem secretary. The amazing piece of furniture on display in MacDonald's gallery for the month of April, earned the 38-year old both cash and stardom.
>
> Bob Vila, at the school filming an episode of his show Home Again, saw the secretary, was impressed, and decided to profile it for a segment. MacDonald, who demonstrated shell carving for the episode, was also invited to showcase his furniture in a house Vila was building on Cape Cod. . . .
>
> During the month of April, MacDonald's works will be on display in his Washington Street gallery every Saturday from noon-2 p.m.

Showcased will be the two-piece secretary featured on Vila's show. To view the item on line, visit www.bobvila.com/BVTV/HomeAgain/episode-1325.html. . . .

For more information, visit Thomas J. MacDonald's Web site www.thomasjmacdonald.com. . . .

[Sullivan Foley, Kate, "Creator of Future Family Heirlooms," Canton Journal, April 15, 2005, Exhibit B-3, -4].

[Thomas J. MacDonald] started furniture making less than five years ago, yet has the skill of a master. . . .

Anthony DeGiulio, an antique map collector in Troy, N.Y., saw MacDonald and his secretary on [Bob] Vila's show. . . . After a series of phone calls, DeGiulio met MacDonald in his studio and pored over photographs of some of the best American furniture designs. Prior to this, DeGiulio thought he wanted MacDonald to make a cabinet for his maps, but seeing all these ideas and listening to MacDonald's enthusiasm, DeGiulio changed his mind. He wanted two Hepplewhite cabinets. . . .

"You're talking about one of the best furniture makers today. My great-great-grandchildren will have a piece by Thomas J. MacDonald," says DeGiulio . . .

In downtown Canton, MacDonald walks onto the street and looks up at the sign that fills the storefront windows: "Thomas J. MacDonald – Creator of Future Family Heirlooms."

[Hagan, Debbie, "Details Details: A Big Dig Casualty Finds His Calling Replicating Fine 18th-Century Furniture," The Boston Globe, September 29, 2005, Exhibit B-5, -6, -7].

Thomas J. MacDonald, one of the most promising and authentic fine furniture makers today, will exhibit four pieces at the Fine Furnishings Show in Providence from October 27 to 29. . . .

MacDonald has tapped into an exclusive client-base of patrons from across the nation who are looking to acquire completely handmade pieces as family heirlooms. . . .

MacDonald's passion for 17th, 18th, and 19th century furniture stems from a deep-rooted respect for the pure craftsmanship of the original furniture makers of the old world. His pieces are completely handcrafted and represent a rare art form scarce by today's fast-paced and mass produced standards. . . .

. . . For more information, visit www.thomasjmacdonald.com

["Canton fine furniture maker exhibits 4 pieces ~ Valued over $250,000 ~", Canton Citizen,

October 26, 2006, Exhibit B-8].

> Thomas J. MacDonald became a fine-furniture maker by accident—literally. A union carpenter for 17 years, he separated his shoulder in 1997 while laboring on Boston's Big Dig. Unable to work during his convalescence, he applied to the city's prestigious North Bennett Street School, which has been training craftspeople since 1885. Favored by Home Again's Bob Vila, MacDonald's 18th-century reproduction, such as a Hepplewhite sideboard (above) that sold for $50,000, have garnered numerous accolades. Now that he's found his groove, MacDonald's interested in exploring other styles. "I need to do some carving and shaping, so I'm going to revisit some Chippendale stuff next," says the Canton, MA, furniture maker. MacDonald accepts commissions in all styles, and will work with clients to create pieces that remain true to the era that inspired them. *www.thomasjmacdonald.com*

["The Eye," Forbes Life, March 2007, Exhibit B-2].

> The Rough Cut Show brings you woodworking with a twist. Every week, renowned wood guru and furniture maker Tommy MacDonald demonstrates a new technique in quality furniture making.

[Bobvila.com, 2007, Exhibit B-9].

> Thomas J. MacDonald . . . The 42-year old Canton furniture maker is staking his future on piecing together a version of a $13 million Chippendale bombe secretary, originally created in Boston about 250 years ago. It's now housed at the Rhode Island School of Design in Providence.

> Not only is MacDonald producing this complicated piece of furniture, he's doing it for all to see. His progress is documented on the Rough Cut Show, a video podcast which airs on Bobvila.com. MacDonald films the show, which takes place right inside his downtown Canton shop. . . .

> In 2006, MacDonald was awarded Best in Show at the Providence Fine Furnishings Show for his entire body of work. . . .

> In addition to the Rough Cut Show, MacDonald, or T-Chisel as he's known on the show, also hosts a program called Ask the Masters on Bobvila.com, which features instructional videos in the same format as the Rough Cut Show and an open chat forum where people can ask questions. . . .

> To see the Rough Cut Show, go to www.bobvila.com/roughcutshow.com.

> For more information and to see pictures of MacDonald's work, go to www.thomasjmacdonald.com.
>
> MacDonald can be reached at info@ThomasJMacdonald.com

[Mucciarone, Jeff, "The Wood, The Bad and The Ugly: Canton craftsman getting plenty of airtime," Canton Journal, January 18, 2008, Exhibit B-13].

> Thomas J. MacDonald . . . Canton furniture maker is exhibiting his handmade, museum-quality pieces at the New England Home Show this weekend . . .
>
> MacDonald's passion for quality furniture design and building has garnered considerable attention, from the master woodworkers at the North Bennett Street School in Boston, where he learned his craft, to Bob Vila, of "This Old House" fame. . . . [image of MacDonald with caption:] Tommy MacDonald with his bombe secretary, which was displayed at the State House.

[Fay, Julie, "Made In Canton: Furniture maker will show off his philosophy – that quality pays – at New England Home Show this weekend," The Sunday Enterprise, March 1, 2009, Exhibit B-17].

14.     In addition to the above-described accolades from the media, Plaintiff MacDonald promoted his name and products on a weekly, web-based woodworking show called "The Rough Cut Show," hosting the show as "Tommy Mac." This was publicized initially at www.BobVila.com, a very popular site for woodworking. By 2001, MacDonald had also appeared several times on Bob Vila's famed television show "Home Again," his successor television show to "This Old House."

15.     By 2008, Tommy Mac's "The Rough Cut Show", by then made well-known by all his prior efforts, was moved by MacDonald to his own website, which ultimately had over 2 million page views and hundreds of thousands of followers.  The name "Rough Cut" was chosen by MacDonald to create a double meaning, whereby consumers would associate that name with MacDonald's persona, a self-described, rough cut, "Southie" who, as "Tommy Mac," went about

educating viewers across the economic and social divide as he created, on the Rough Cut Show, museum quality pieces of fine furniture. The turn of phrase paid off as goodwill for "Rough Cut" continued to increase, as did the association between MacDonald's name and the names "Tommy Mac" and "Rough Cut" in the fields of woodworking and entertainment services featuring woodworking.

16.     By far the most powerful and the central cause of the fame of his work and reputation and their association with his name and the names "Tommy Mac" and "Rough Cut" was MacDonald's elegant work itself, which became publicly known through its sale and public circulation. Examples of his woodworking and furniture-making are not only depicted in some of the publications annexed collectively as Exhibit B, they are also depicted collectively in Exhibit "C" hereto. MacDonald's woodworking and furniture-making, as it was sold, publicly displayed, and promoted in the media, was, because of its elegance and high quality, a major cause of his excellent reputation and popularity as a master woodworker.

17.     From all of the above, by 2010 Plaintiff MacDonald had established significant goodwill for "Tommy Mac" and "Rough Cut" and they acquired a secondary meaning in the marketplace as source indicators for MacDonald's entertainment services in the field of woodworking and for and in association with his fine furniture and craftsmanship.

18.     So strong was this secondary meaning that as of 2010, people approached him in public saying to him: "hey, Tommy Mac" or "hey, you're Rough Cut." As WGBH itself stated, "Tommy picked up a solid following of loyal users," and was "an internet phenomenon that has already caught on." (Exhibit A-4.) As a result, by 2010, and even years before that, both Tommy Mac and Rough Cut had become trademarks of MacDonald.

19.     Using these trademarks as the banner for his reputation, MacDonald and his company, Fine Furniture, developed a profitable business selling his fine woodworking, writing paid articles about woodworking, creating and selling videos about woodworking, teaching about woodworking in classrooms and on his popular, web-based instructional program, and selling tool kits that he developed and manufactured and other products. All these activities strengthened his trademarks.

20.     WGBH recognized the significant goodwill in the marketplace associated with MacDonald's reputation, name, picture and his trademarks "Tommy Mac" and "Rough Cut", as described above, and sought to exploit them. It therefore persuaded MacDonald and Fine Furniture to give up their promising woodworking business activities described above by inducing them to commit, by contract between Fine Furniture and WGBH, to a television series about fine woodworking that WGBH wanted to produce and broadcast, with "Tommy Mac" as host and the centerpiece of the series.

21.     In furtherance of this effort, Defendant Laurie Donnelly, on behalf of WGBH, by which she was employed as executive producer, and acting with the intent to benefit WGBH and herself, wrote MacDonald in August of 2009 as follows:

> We feel you are a great talent and have a warm and wonderful style that we think our PBS audience will really respond to. We were also delighted to hear that you are already generating such great traffic on your newly launched website. Clearly people like you and you have a solid following, on the web and in person. A strong web component and loyal social community is an important piece of any multi-platformed effort and one we'd love to continue to develop with you.

[Letter from Defendant Laurie Donnelly, Executive Producer, WGBH, to MacDonald, August 12, 2009, Exhibit B-18]

22.     In addition, Laurie Donnelly, on behalf of WGBH, promised Plaintiff Fine Furniture that if it committed Plaintiff MacDonald to be part of the proposed series, by Fine Furniture entering a contract with WBGH to produce and broadcast the proposed woodworking series, and agreed to give up its other, ongoing business activities, WGBH would find lucrative opportunities in woodworking-related businesses for Fine Furniture and thus for MacDonald, its sole owner. This representation was a material inducement to MacDonald and Fine Furniture to commit to this Series because, since they would agree under the Fine Furniture/WGBH contract to give up all their other activities, he and Fine Furniture would need these opportunities.

23.     In light of these promises of additional opportunities, and relying upon what it believed to be the integrity of WGBH, Fine Furniture was induced by WGBH to enter into the contract proposed by WGBH under which it would participate with WGBH in a television series about woodworking, and under which Fine Furniture would provide the services of MacDonald as the show host.

24.     The contract, entitled Project Participation Agreement ("Participation Agreement"), was dated January 20, 2011, and was by its terms effective as of May 15, 2010. A copy thereof, along with the three Amendments and one addendum to the Third Amendment, are collectively annexed as Exhibit "D" hereto and adopted herein by reference. Taking advantage of his name, reputation and trademarks, the television series was, under the Project Participation Agreement, called "Rough Cut: Woodworking with Tommy Mac" (the "Series").

25.     Under the terms of the Participation Agreement, Fine Furniture was required to abandon its other woodworking businesses as described above (except building furniture for sale but not publicly promoted) [*see* Ex. D, paras. 4, and 7 (a) (i), (ii), and (iii), 7 (e)(i) – (v)], and to devote itself instead to raising money for, consulting with WGBH on the production of, and

starring in, the Series. Ex. D, paras. 4 and 7. It also committed to have MacDonald participate

fully to the exclusion of other business activities.

26.     Under the Participation Agreement, WGBH was granted rights to use the Series

title "Rough Cut: Woodworking with Tommy Mac," for the Series and to all the materials

derived from the Series, including outtakes, promotional materials, print materials, internet

websites, merchandise, print media, and home video versions of the program (Ex. D, para. 2), all

of which were required to be owned by WGBH.

27.     WGBH was allowed under the Participation Agreement to register as a trademark

the name of the Series, *i.e.*, "Rough Cut: Woodworking with Tommy Mac." However, nothing in

the Participation Agreement conveyed any rights to the stand-alone trademarks "Tommy Mac"

and "Rough Cut" to any Defendant. Instead, the Participation Agreement expressly provided

that, while Defendants owned the name of the Series, "Rough Cut:  Woodworking with Tommy

Mac," all other name rights apart from the name of the Series belonged to Plaintiffs. Ex. D. para.

6(b)(iii).

28.     On or about July 13, 2010, as was its right under the Participation Agreement,

WGBH filed a trademark registration with the United States Patent and Trademark Office (the

"USPTO") for the Series, and that mark was entitled "ROUGH CUT WOODWORKING WITH

TOMMY MAC."

29.     Notwithstanding the clear division of trademark ownership rights under which

Plaintiff MacDonald owned the long-established mark "Rough Cut," WGBH, acting through

Laurie Donnelly, deceived Plaintiffs and filed a trademark on "Rough Cut", which they had no

right to do. Before filing the trademark for the name of the series on July 13, 2010, as described

in paragraph 28, above, but without informing MacDonald that it had done so, WGBH, on or

about April 5, 2010, filed a trademark registration for the name "Rough Cut," even though that

trademark did not belong to WGBH and was already a common law trademark belonging to

MacDonald.

30.     Moreover, after WGBH had filed the trademark registration for "Rough Cut" (on

April 5, 2010), which it had no authority from MacDonald to file, but before WGBH had filed

the registration application for the Series (on July 13, 2010) which it did have a right to file,

Laurie  Donnelly emailed to MacDonald on April 18, 2010 as follows (Exhibit I):

> I still like rough cut woodworking with Tommy Mac,
> And we've just already trademarked the name.

Yet as of the date of this email, WGBH had not filed any trademark registration for the show

Series title, but instead had only filed on "Rough Cut," MacDonald's preexisting mark. This was

a knowingly false statement by Donnelly sent to deceive MacDonald into believing that WGBH

had not filed an application infringing on his common law trademark "Rough Cut," but instead

had filed on the Series title.

31.     WGBH never informed MacDonald that it had filed a trademark attempting to

improperly secure and securing a trademark registration to "Rough Cut." As a trademark

applicant WGBH was required to file a declaration (verified statement) with the USPTO stating

that, "To the best of the signatory's knowledge and belief, no other persons, except, if applicable,

concurrent users, have the right to use the mark in commerce, either in the identical form or in

such near resemblance as to be likely, when used on or in connection with the goods/services of

such other persons, to cause confusion or mistake, or to deceive."  WGBH's declaration to that

effect demonstrated bad faith and was false because it knew that MacDonald had rights to the

mark "Rough Cut", which he never assigned nor otherwise conveyed to WGBH. Macdonald did

not learn of this deception until 2018.

32.     The Series was produced, broadcast and otherwise distributed for seven seasons, commencing in 2010 and continuing through December 24, 2016 when the seventh and last season ended.

33.     The series was popular. For one half hour each week for seven years, the Series was broadcast and otherwise exploited, featuring MacDonald, who promoted woodworking, demonstrated how to learn and accomplish successful woodworking, instructed as to the proper tools and wood types to use, and displayed various of his finished woodworking products. A transcript of one of the broadcasts of the Series, "Rough Cut: Woodworking With Tommy Mac," is annexed hereto as Exhibit E and a video of that same episode of the Series is available to be viewed by the Court at the Court's pleasure.

34.     In 2017, despite the popular success of the Series, WGBH did not contract with MacDonald for another year of this Series, which would have been Season 8.  The Series was not renewed by WGBH. Plaintiff therefore was led to believe that the Series ended, that no new shows would be produced, broadcast or distributed in 2018, and there would be no Season 8.

35.     However, that was false. WGBH and Laurie Donnelly combined with Defendant Taunton Press to produce a counterfeit show for the year 2018.

36.     This new show is a confusingly-similar intentional imitation of the seven year-old Series broadcast by WGBH and MacDonald, and Defendants are continuing to pass off their new show as a woodworking series by MacDonald, doing so in all of the following deceptive ways:

(a)     Even though it is in its first season, Defendants call the their new show "Season 8", which would have been the season number for Plaintiffs' Series had it been continued by WGBH, but was instead terminated after Season 7, in 2017;

14

(b)     Defendants have generated materials promoting this new show in an intentionally

confusing manner. Specifically, in a DirecTV advertisement, Defendants call their

new show "Rough Cut - Woodworking with Tommy Mac," thereby using both

MacDonald's trademarks without his permission. Next to that banner headline is a

photograph of the new host of this new show, who is named Tom McLaughlin,

yet the name next to his photograph is Plaintiff's name, Tommy MacDonald.  (Ex.

F-1.) Defendants repeat the misleading use of both the trademarks and the name

Tommy MacDonald in Ex. F-2;

(c)     In yet another DirecTV advertisement for their new show, Defendants advertise

the exact same wording as in the two exhibits quoted above (Ex. F-1 and 2),

meaning that they again use MacDonald's trademarks "Rough Cut" and "Tommy

Mac," but in this advertisement they brazenly use Plaintiff MacDonald's picture

as the show host, even though he is not involved at all.  (Ex. F-3);

(d)     In a differently-formatted TV Guide advertisement, Defendants describe various

future episodes of "Season 8" (even though this is Season 1 of an entirely

different show rather than the eighth season of Plaintiff's show), and this

reference is accompanied by a picture of Plaintiff MacDonald which is situated, in

the advertisement, just above the wording "Rough Cut," Plaintiff MacDonald's

trademark. (Ex. F-4);

(e)     In yet another form of advertising (i-phone streaming "next episode"), Defendants

proclaim their new show as, again, "Rough Cut – Woodworking with Tommy

Mac," followed by a listing of various episodes of "Season 8," and yet again with

a picture of Plaintiff MacDonald sitting in front of a table with a poster to his left

that reads "Rough Cut: Woodworking with Tommy Mac"  (Ex. F-5);

(f)      In two other advertisements for "Series 8," Defendants again use Plaintiff's name,

MacDonald, along with his picture. See, Ex. F-6 (a Google Search Response), and

Ex. F-7, another TV Guide advertisement.

(g)      Defendants also use a confusingly similar opening and closing to this new show

that are virtually identical to the opening and closing used during the seven years

of the Series. The new show opening is as follows and uses MacDonald's

trademark:

"Hi I'm Tom McLaughlin, this week on Rough Cut I'm making a shaker inspired
hall table out of beautiful solid cherry….. and its all coming up next, *right here on
Rough Cut.*"

Plaintiffs' opening for seven years was substantially as follows:

"Hi I'm Tommy MacDonald, this week on Rough Cut I'm going to show
how to build this beautiful walnut gate leg table….. and it's all coming up
next right here on Rough Cut."

Defendants' new closing is as follows and also uses MacDonald's trademark:

"I'm Tom McLaughlin and I'll see ya next time, right here on Rough Cut."

The Plaintiffs' closing for seven years was:

"I'm Tommy MacDonald and I'll see you next time, right here on
Rough Cut."

37.      In format and content, the above-described advertisements are also confusingly

similar to the format and content of the MacDonald advertisements used for seven years to

promote his Series, broadcast and distributed by WGBH for the past seven years, examples of

which are annexed as Exhibit G.

38.     By the use of MacDonald's trademarks "Tommy Mac" and "Rough Cut," and by use of MacDonald's picture (his picture), his name, almost identical openings and closings to their broadcast, and the same advertising format, all to promote a television show having the same subject matter – fine woodworking – long associated with MacDonald's public identification, and by calling their new show "Season 8" instead of the "Season 1", Defendants are attempting to and have deceived the public into believing that Plaintiff MacDonald is the originator of the Defendants' new show, and is participating in it, endorsing it, and sponsoring it.

39.     By the deception described above, there is a substantial likelihood that the public will confuse Defendants' new show with Plaintiff MacDonald, his trademarks, and his reputation.

40.     Indeed, such confusion is manifest. On or about April 18, 2018, Plaintiff MacDonald did a common Google search using the search term "Rough Cut."  What immediately came up on Google was a series of literally hundreds of search results depicting pictures of plaintiff MacDonald along with the words "Rough Cut," or "Rough Cut - Woodworking with Tommy Mac."  Moreover, among these many search results are several which depict a photograph of the new show host, Tom McLaughlin and in those several pictures, the wording "Rough Cut Woodworking with Tommy Mac" also appears. (See, Ex. H-1, an advertisement depicted inside a red highlighted square.)  In other words, a Google search cannot distinguish between the identity of the hosts, and associates both hosts with the trademarks "Tommy Mac" and "Rough Cut", in light of the confusingly similar advertising engaged in by Defendants. (Ex. H-1 through H-5.)

41.     Moreover, on the Facebook page first-year host Tom McLaughlin has dedicated

to the Defendants' new show, someone named James Jovenich messaged in about the new show

title:

"And they don't have to change a letter of the title!"

The new host, Tom McLaughlin, replied, next to a picture of himself smiling, as follows:

"You're right! . . . except I'm a Mc and he's a Mac!"

Mr. Jovenich replied, "Sounds the same to me." (Ex. H-14.)

42.     Through all of the above, and unless Defendants' confusingly-similar promotional

campaign and the trademark infringement described above are enjoined by this Court,  Plaintiff

MacDonald will be irreparably damaged because he will have lost control to the Defendants of

his well-earned and highly-valuable reputation in the woodworking field.

43.     Plaintiffs, through counsel, have demanded that Defendants cease and desist the

improper use of the name, picture, and marks of Plaintiff MacDonald (Exhibit J.) and Defendants

have refused to do so.

## COUNT I

## (Violation of the Lanham Act by False Suggestion of Connection – 15 U.S.C. §1502(a))

44.     Plaintiffs repeat and reallege each of the allegations set forth in paragraphs 1

through 43 above, as if separately pleaded herein in their entirety.

45.     Defendants' use of the mark "Rough Cut," in association with its new series

without MacDonald but named "Rough Cut Woodworking with Tommy Mac," along with

Defendants' use in that new series of the mark "Tommy Mac," and the repeated use of

MacDonald's picture, falsely suggests a connection with MacDonald because the dominant part

of the mark, "Rough Cut", is the same as the one previously used by MacDonald, namely, "The

Rough Cut Show," which he produced independently and distributed to over 2 million viewers from 2006 to 2009, predating any involvement with WGBH. Moreover, thereafter, "Rough Cut: Woodworking with Tommy Mac" was the WGBH Series that specifically featured MacDonald and his individual woodworking skills and furniture-making.  Plaintiffs' original "Rough Cut" series by "Tommy Mac" was a showcase of MacDonald's woodworking abilities in an unedited raw and real format which then became the boilerplate for the television series production.

46.     The "Rough Cut" and "Tommy Mac" marks, including "Rough Cut with Fine Woodworking", is and will continue to be recognized as associated with MacDonald because they point uniquely and unmistakably to MacDonald through its prior use in specifically featuring MacDonald and his singular woodworking skills.

47.     MacDonald is not featured or otherwise involved in any way in Defendants' new "Rough Cut" series for which they are using that mark, along with the mark "Tommy Mac". However, MacDonald's established fame and reputation as a master woodworker in the field of entertainment is such that when the mark is used by Defendants, consumers are led to believe and presume that MacDonald continues to be involved with the new woodworking series.

48.     By reason of the foregoing, Plaintiffs are entitled to damages as will be proved at trial, attorneys' fees as authorized under the Lanham Act, and to injunctive relief to prevent the confusion and likelihood of confusion caused by Defendants' conduct.

49.     The Lanham Act, at Title 15 U.S.C. §1052(a), bars the registration by Defendant WGBH on either the Principal or the Supplemental Register of, among other matters, a designation that consists of or comprises matter which is either deceptive, or which, with regard to MacDonald, falsely suggests a connection with him.  Moreover, a mark does not have to comprise a person's full or correct name to be unregistrable under this section; a nickname or

other designation by which a person is known by the public may be unregistrable under this provision of the Act, and "Rough Cut" is such a designation for the reasons stated above.  The registration of Rough Cut by Defendant WGBH was therefore improper under the above-referenced statute. Title 15 U.S.C. §1064 allows for cancellation of WGBH's trademark "Rough Cut" where, as here, that mark is used to falsely suggest a connection with MacDonald and where, as here, for the reasons explained above, this registration is damaging MacDonald.

50.     Plaintiff therefore seeks an order from this Court cancelling said mark as it is specifically in this Court's power to do under Title 15 U.S.C. § 1119.

## COUNT II

### (Violation of the Lanham Act by Trademark Infringement - 15 U.S.C. § 1125(a)(1))

51.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 50, as if separately pleaded herein in their entirety.

52.     Plaintiff MacDonald, known as Tommy Mac, has, over the years, in and around Massachusetts and beyond, by his skill and industry, developed a general reputation for mastery of woodworking and fine furniture-making and provided "rough-cut" demonstrations of and instructions for such woodworking and fine-furniture making, particularly through online video and television presentations available to viewers nationwide.  "Rough Cut" has acquired secondary meaning by which consumers have come to associate this name and mark with Plaintiff MacDonald's entertainment services and with his individual talent and skill in woodworking, and designing and creating high-quality fine wood furniture.  Plaintiffs' original "Rough Cut" series was a showcase of MacDonald's woodworking abilities in an unedited raw and real format, which then became the boilerplate for the television Series "Rough Cut with Tommy Mac." The primary significance of this mark, "Rough Cut," in the minds of the

consuming public is Plaintiff MacDonald (Tommy Mac) and his individual renowned woodworking skills and entertainment services. The same is true with the mark "Tommy Mac."

53.     Commencing in or around October, 2017, and continuing in the manner described above, Defendants began promoting a new series with the "Rough Cut" mark, "Rough Cut with Fine Woodworking," misappropriating the name as if Plaintiff MacDonald is involved in the new series when he is not, and wrongfully infringing on Plaintiff's good name and mark. Defendants are doing the same with the mark "Tommy Mac".

54.     Defendants are passing the series off as if MacDonald is associated with it, thereby causing consumer confusion and/or mistake, and/or in order to deceive consumers as to the affiliation, connection, or association of MacDonald with this new series in order to profit off of his mark and longstanding reputation.

55.     By reason of the foregoing, Plaintiffs are entitled to damages, as will be proved at trial, attorneys' fees as authorized under the Lanham Act, and injunctive relief.

## COUNT III

### (Violation of the Lanham Act by False Endorsement/Sponsorship - 15 U.S.C. § 1125(a)(1))

56.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 55, as if separately pleaded herein in their entirety.

57.     As described above, "Rough Cut" has acquired secondary meaning by which consumers have come to associate this name and mark with Plaintiff MacDonald and with his individual talent and skill in woodworking and designing and creating high-quality fine wood furniture.  The primary significance of this mark, "Rough Cut," in the minds of the consuming public is Plaintiff MacDonald (Tommy Mac) and his individual renowned woodworking skills. The same is true of "Tommy Mac."

58.     Commencing in or around October, 2017 and continuing in the manner described above, Defendants have and continue to falsely imply the endorsement and/or sponsorship of their new series by Plaintiff MacDonald through their use of the mark "Rough Cut".

59.     Plaintiffs have not endorsed or sponsored the new series nor have they been involved in any way with the new series. However, Defendants are promoting the new series as a "Rough Cut" series, which creates a likelihood of confusion that Plaintiffs have and are endorsing the new series and are associated with it. The new series is specifically called "Rough Cut with Fine Woodworking" which further contributes to a likelihood of confusion because Plaintiffs' original "Rough Cut" series was a showcase of MacDonald's woodworking abilities in an unedited raw and real format, which then became the boilerplate for the television Series, "Rough Cut with Tommy Mac."

60.     Defendants are promoting a series with the exact same "Rough Cut" mark, a series with the same woodworking content, a series in the same television format with a host performing woodworking, and a series being promoted and to be aired and distributed on the same channels of trade including, without limitation, television, supplemental markets, internet streaming and social media (including through the WGBH "Rough Cut" Facebook page), all of which will and has already caused actual confusion between Plaintiff and his mark and the new series, and which Defendants have intentionally done in order to profit from false implication that Plaintiffs endorse the new series.

61.     By reason of the foregoing, Plaintiffs are entitled to damages, as will be proved at trial, attorneys' fees as authorized under the Lanham Act, injunctive relief, and cancellation of Defendants' registration of the marks.

**COUNT IV**

**(Unauthorized Use of Name and Picture - M.G.L.A. Ch. 214 § 3A)**

62.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 61, as if separately pleaded herein in their entirety.

63.     Commencing in or around October, 2017 and continuing to the present in the manner described above, Defendants have used Plaintiff MacDonald's name and picture within the Commonwealth of Massachusetts and elsewhere for advertising, marketing and promotional purposes for Defendants' new show series without Plaintiff's written consent.

64.     Specifically, Defendants have used Plaintiffs' name and picture for the purposes of taking advantage of his reputation, prestige, and his established skills and talent in woodworking and fine furniture-making in order to promote and entice consumers to their new woodworking show series with which Plaintiff is not involved, with which he is not associated, and for which he has not authorized his name or picture to be used.

65.     Defendants are profiting and will profit directly from the use of Plaintiff's name and picture because the likelihood of confusion Defendants are causing will lure consumers to their new program under the false pretense that Plaintiff MacDonald, with his established reputation in the industry and his master woodworking skills, is involved in the new series.

66.     Defendants' unauthorized use of Plaintiff MacDonald's name and picture in Defendants' advertising, marketing and promotion is intended to profit directly from Plaintiff's name and picture rather than a merely incidental use.

67.     By reason of the foregoing, Plaintiffs are entitled to damages, as will be proved at trial, trebled as allowed under M.G.L.A. Ch. 214 § 3A.

## COUNT V

### (Misrepresentation by Laurie Donnelly and WGBH)

68.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 67, as if separately pleaded herein in their entirety.

69.     In connection with this Series, and on or about July 13, 2010, as was its right under the Participation Agreement, WGBH filed a trademark registration with the United States Patent and Trademark Office (the "USPTO") for the Series, and that mark was entitled "ROUGH CUT WOODWORKING WITH TOMMY MAC."

70.     Before filing the trademark for the name of the series as described just above but without informing MacDonald that it had done so, WGBH, on or about April 5, 2010, filed a trademark registration for the name "Rough Cut," even though that trademark did not belong to WGBH and was already a common law trademark belonging to MacDonald.

71.     Moreover, after WGBH had filed the trademark registration for "Rough Cut" (on April 5, 2010), which it had no authority from MacDonald to file, but before WGBH had filed the registration application for the Series name (on July 13, 2010) which it did have a right to file, Laurie  Donnelly emailed to MacDonald on April 18, 2010 as follows:

> I still like rough cut woodworking with Tommy Mac,
> And we've just already trademarked the name.

(Exhibit I.) This was a knowingly false statement by Donnelly sent to deceive MacDonald into believing that WGBH had not filed an application infringing on his common law trademark "Rough Cut" but had rather registered the Series name.

72.     WGBH never informed MacDonald that it had filed a trademark attempting to improperly secure and securing a trademark registration to "Rough Cut." As a trademark applicant WGBH was required to file a declaration (verified statement) with the USPTO stating

that, "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."  WGBH's declaration demonstrated bad faith and was false because it knew that MacDonald had rights to the mark "Rough Cut" which he never assigned nor otherwise conveyed to WGBH.

73.     By reason of the foregoing misrepresentation, Plaintiffs are entitled to damages as will be proved at trial.

## COUNT VI

### (Breach of Contract)

74.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 73, as if separately pleaded herein in their entirety.

75.     In the Participation Agreement, WGBH promised to use its reasonable best efforts to pursue for Fine Furniture business opportunities in both publication and merchandising, (Ex. D, para 7(c)), and promised to negotiate in good faith with Fine Furniture if it sought from WGBH permission to pursue any commercial opportunity other than the Series. These promises by WGBH were material because of the requirement of the Participation Agreement described above under which Fine Furniture had to abandon all earlier-developed business ventures to work exclusively on the Series.

76.     Defendant WGBH breached this agreement by failing to make best efforts to secure business opportunities as promised and failed to negotiate in good faith with Fine Furniture when it sought agreement on the pursuit of business opportunities. .

77.     Plaintiffs have been damaged in an amount to be proved at trial.

WHEREFORE, Plaintiffs pray for judgment as follows:

(A)     For a preliminary and permanent injunction ordering that, in connection with any woodworking show or promotion thereof which is broadcast by radio or television, or through cable or satellite transmission, or by use of the internet, whether by streaming or otherwise, or by any other electronic communication, or as otherwise publicly distributed, the Defendants:

(i)      shall not use either the terms "Rough Cut" or "Tommy Mac";

(ii)     shall not use any picture, or sketch image of MacDonald;;

(iii)    shall not use the term "Season 8"; and,

(iv)    shall, in relation to every broadcast or other transmission of their new show, for the next eight episodes thereof,  be required, both by oral and written statement made at the beginning and at the end of each show, to state as follows:

This show is not associated with or sponsored by Thomas MacDonald, known by many as "Tommy Mac." He is not participating in this show and does not endorse it. This show is different from the show "Rough Cut -- Woodworking with Tommy Mac" which was a series that ran for some years in the past and which featured Thomas MacDonald as its host;

(B)     For damages in an amount to be proved at trial, including treble damages where allowed;

(C)     For an order cancelling the registration of Defendants mark "Rough Cut;"

(D)     For costs of suit and attorneys' fees, where allowed by law; and,

(E)     For such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38, Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable.

Dated: April 21, 2018

Respectfully submitted,

*/s/ John J.E. Markham, II*
John J. E. Markham, II
(BBO No. 638579)
MARKHAM & READ
One Commercial Wharf West
Boston, Massachusetts 02110
Tel: (617) 523-6329
Fax:(617)742-8604
jmarkham@markhamread.com
*Attorney for the Plaintiffs*

**Verification**

I, Thomas J. Macdonald declare, under penalty of perjury, that I have read the foregoing Complaint and all of the factual statements made therein and I believe that the factual statements therein stated are true and correct to the best of my knowledge and belief.

Executed this 21st day of April, 2018, in Canton, Massachusetts under penalty of perjury.

Thomas J. MacDonald, individually and
on behalf of Thomas J. MacDonald Fine Furniture Inc., its
President