Legal and Business Affairs

WGBH
One Guest Street
Boston
Massachusetts
02135

617 300 4349 tel
617 300 1014 fax
wgbh.org



EXHIBIT D - 1

K 2 0 1 1 0 0 1 2 0



# Project Participation Agreement

This Project Participation Agreement is entered into this 20th day of January, 2011, effective as of May 15, 2010 (the "Effective Date"), between the WGBH Educational Foundation, a charitable, non-profit Massachusetts corporation with a principal place of business at One Guest Street, Boston, Massachusetts 02135 ("WGBH"), and Thomas J. MacDonald Fine Furniture, Inc., a Massachusetts corporation with a principal place of business at 28 Draper Lane, Canton, Massachusetts 02021 ("Company"), concerning Company's participation in the production of a public television series on the subject of woodworking entitled "Rough Cut:  Woodworking with Tommy Mac" (the "Series").

In consideration of the mutual covenants set forth herein, WGBH and Company agree as follows:

1.  Scope of Agreement:  This Agreement sets forth the terms and conditions concerning Company's participation in the Series, including Company's obligations to furnish the services of Thomas J. MacDonald ("MacDonald") as a consultant to the Series and compensation relating thereto.  Notwithstanding the foregoing, MacDonald's services as an on-camera host/performer in the Series are outside the scope of this Agreement and instead shall be covered by separate AFTRA Engagement Agreement(s) between WGBH and Company  (the "Host Agreement(s)").

2. The Project:  Subject to the terms and conditions contained herein, Company and MacDonald shall collaborate with WGBH in the development and production of the Series.  The Series is described more fully on Exhibit A attached hereto.  The Series, the programs that comprise the Series (the "Program[s]"), and materials related to or derived from the Series ("Related Materials") that are initially produced during the Term are sometimes referred to individually and collectively herein as the "Project."  Except as expressly provided herein, Related Materials shall include, without limitation, outtakes, promotion materials, print materials, internet websites, merchandise, print publications, and "home video" versions of the Programs.

**EXHIBIT D - 2**

3.  <u>Production of the Project</u>:  WGBH shall produce the Project in accordance with the following terms and conditions:

   (a)  production of the Project shall be dependent on and subject to WGBH's receipt of sufficient funding.  WGBH shall coordinate all fundraising activities and enter into all agreements with underwriter(s) and any other funders (the "Funder[s]");

   (b)  subject to the raising of sufficient funding as described in Paragraph 3(a) above, WGBH shall produce the Project in a professional manner in accordance with the "Production Budget(s)" and "Production Schedule(s)" reasonably determined by WGBH after consultation with Company.  The Production Budget and Production Schedule for the initial broadcast season of the Series ("Season One") are set forth on Exhibits B and C, respectively, attached hereto;

   (c)  WGBH shall have primary editorial responsibility for the Project, provided that WGBH shall consult with Company concerning material editorial, artistic, and technical aspects of the Project as WGBH shall determine in its reasonable discretion.  WGBH shall give good faith consideration to MacDonald's opinions, suggestions and concerns, provided that WGBH shall have the final approval and control of the Project and the contents thereof, and the decisions of WGBH relating thereto shall be final and binding;

   (d)  as between WGBH and Company, WGBH shall:  (i) furnish and/or arrange for all necessary elements for the production of the Project; (ii) obtain all necessary rights, clearances, and releases to use all creative elements and materials contained in the Project; and (iii) be responsible for all costs in respect to the production and distribution of the Project; and

   (e)  if requested by WGBH, Company shall provide a dedicated portion of its workshop space located at 28 Draper Lane, Canton, Massachusetts (the "Workshop"), for use as the primary studio location for production of the Series.  WGBH shall pay Company a weekly fee for the use of the Workshop in respect to the Programs produced during Season One as set forth in the Season One Production Budget (the "Season One Workshop Fee").  The fee(s) for any use of the Workshop in respect to the production of Programs for subsequent broadcast seasons shall be negotiated in good faith by WGBH and Company, taking into account Project expenses and available funding.

4.  <u>Services of Company/MacDonald</u>:

   (a)  Subject to the payment provisions set forth in Paragraph 8 below, Company shall cause MacDonald to render services for the Project as reasonably requested by WGBH, which services may include:  consulting with the producer(s) of the Series and other personnel; generating and reviewing

ideas concerning the format, content and scope of the Project; drafting the technical plans for the woodworking projects that are the subject of the Programs; and causing MacDonald to make personal appearances for the Funder(s) in accordance with terms mutually approved by Company, WGBH, and the Funder(s) (the "Services").

(b)  Except as expressly provided herein or in an agreement concerning Company Products as described in Paragraph 7(a)(ii) below, during the "Term" of this Agreement (as defined in Paragraph 5 below) and for a further period of eight (8 months following the Term (collectively, the "Non-Compete Period") neither Company nor MacDonald shall render any services (on-camera or otherwise) for, produce, and/or distribute any television or other audiovisual program(s) on the subject of woodworking.

5.  Term:  The "Term" of this Agreement shall commence on the Effective Date and shall expire on the date of initial broadcast of the last program of the final broadcast season for which MacDonald renders services as an on-camera host/performer under a separate Host Agreement, provided that if requested by WGBH MacDonald shall render such services as an on-camera host/performer for at least three (3) broadcast seasons.  Notwithstanding the foregoing, the Term of this Agreement shall be subject to termination as provided in Paragraph 11 below.

6.  Ownership:

(a)  Subject to the terms and conditions contained herein, WGBH shall own all right, title, and interest in the Project, including, without limitation, copyrights and trademarks relating thereto.  Except as provided in Paragraph 6(b) below, Company's contributions to the Project shall be considered a "work made for hire" by Company for WGBH.  If any such contribution is determined not to be a "work made for hire," then the copyright(s) therein will be deemed transferred to WGBH by this Agreement.

(b)  Notwithstanding anything to the contrary contained in Paragraph 5(a) above, but subject to the respective distribution rights of WGBH and Company and the terms concerning revenue sharing set forth in Paragraph 8 below:

(i)  WGBH and Company shall co-own equally all right, title, and interest, including, copyright(s), in (A) woodwork created and produced during production of the Series ("Woodwork") and designs related thereto ("Woodwork Designs"), and (B) "Publications" and "Merchandise" (as such terms are defined in Paragraph 7[c] below).  Notwithstanding anything to the contrary contained herein, all arrangements concerning the possession, control and/or disposition of Woodwork shall be subject to the mutual approval of WGBH and Company;

(ii)  Company shall own all right, title, and interest, including copyrights, in the "Existing Videos", "Video Clips" and "Existing Tool Set" (as such terms are defined in Paragraph 7[a] below), subject to the terms concerning distribution contained in Paragraph 7 below; and

(iii)  subject to WGBH's exclusive trademark rights in the title of the Series and WGBH's other rights set forth herein, Company shall own all trademark rights in and to the name "Tommy J. MacDonald" and variations thereof, including, without limitation, "Tommy Mac" and "T-Chisel."

7.  Certain Related Materials:

(a)  (i)  The parties acknowledge that Company previously produced the audiovisual programs listed on Exhibit D attached hereto for distribution in the "home video" market (the "Existing Video[s]"), multiple series of instructional audiovisual clips for internet broadcast and download (the "Video Clips"), and that Company currently manufactures (or causes to be manufactured) and sells a set of tools identified on Exhibit E attached hereto (the "Existing Tool Set"). The Existing Video[s], the "Video Clips" and the Existing Tool Kit are collectively referred to as the "Company Products."

(ii)  Until such time, if any, that Company and WGBH's affiliated company, Public Media Distribution, LLC ("PBSd") enter into a separate agreement concerning the exploitation of the Company Products, including in respect to income-sharing, Company shall not use or exploit, or authorize others to use or exploit, the Company Products in any manner or medium, except that Company may continue to stream the Video Clips on Company's website.

(iii)  Company shall cause the withdrawal of the Company Products from current means of distribution (i.e., remove the respective sales offers from Company's websites – ThomasJMacDonald.com, 207Woodworking.com).

(b)  If WGBH or Company desires to produce an audiovisual program (other than a Program) featuring MacDonald or using his name and likeness (the "New Video[s]"), then Company shall negotiate in good faith with PBSd concerning the production and exploitation of the New Videos, provided that during the Term neither party shall produce, distribute, or authorize another party to produce and/or distribute, any New Video without the prior written approval of the other party (i.e., Company or PBSd, as the case may be).

(c)  The parties acknowledge their intent to work together on print publications, including, without limitation, books ("Publications"), and merchandise ("Merchandise"), that are derived from and/or related to the Series. They shall use their reasonable best efforts to consult, cooperate and

**EXHIBIT D - 5**

pursue opportunities in respect to Publications and Merchandise, subject to the following:

(i)   prior to presenting any proposal to a publisher or merchandise agent or licensee, and prior to entertaining or responding to any proposal from a publisher or merchandise agent or licensee, each party shall notify the other in writing and obtain the other's prior written approval to present, entertain or respond to such proposal;

(ii)   if Company and WGBH desire to produce and/or exploit any Publications or Merchandise, then they shall negotiate in good faith terms relating thereto, including fees, if any, to be paid for any services to be rendered in connection therewith, provided that any such exploitation shall be subject to WGBH's Distribution Rights and the terms concerning the sharing of Net Proceeds as set forth in Paragraph 8 below;

(iii)   David Bernstein, Vice President of WGBH Enterprises, or his designee, shall represent WGBH for purposes of considering and approving plans relating to Publications and Merchandise; and

(iv)   promptly following WGBH's written request, if any, and at WGBH's expense, Company shall cause all inventory of the Existing Tool Set to be rebranded using the Series name and logo.

(d)   Each of WGBH and Company shall ensure that the production, distribution, sale, and promotion of Publications and Merchandise (including the Existing Videos, Video Clips and Existing Tool Set) conform with all applicable rules, regulations, and policies of WGBH, the Public Broadcasting Service ("PBS"), American Public Television ("APT"), and/or the Federal Communications Commissions ("FCC").

(e)   As described further in Paragraph 8 below, WGBH's rights in Related Materials hereunder include all rights in Series-related websites (the "Series Website[s]"). WGBH shall determine the contents and internet home(s) (e.g., pbs.org, thomasjmacdonald.com, etc.) of the Series Website(s) after consultation with Company, and WGBH shall manage the Series Website(s), subject to the following:

(i)   WGBH has determined for now that Company's existing website (the "Company Website") can include certain Series-related materials provided by WGBH. The content of that part of the Company Website that refers or relates to the Series (the "Series Part") shall be subject to the editorial control of WGBH. The content of that part of the Company Website that does not refer or relate to the Series (the "Non-Series Part") shall be subject to the editorial control of Company, subject to the conditions and restrictions set forth in this Paragraph 7;

(ii)  the Company Website, and the use of Series-related materials therein, shall be subject to applicable rules, regulations, and policies of WGBH, PBS, APT, and/or the FCC, and shall be consistent with the contractual obligations of WGBH and/or Company in respect to the Project, including, without limitation, contracts with Series funders;

(iii)  WGBH and Company shall consult for the purpose of determining how the Series Part shall be separated from the Non-Series Part of the Company Website so as to allow Company to pursue commercial opportunities, including advertising and sponsorship(s), for the Non-Series Part that comply with the above-referenced rules, regulations, policies and contractual obligations;

(iv)  as also set forth in Paragraph 3(c) of the Host Agreement, MacDonald shall not endorse any product or service without WGBH's prior written approval, which shall not be unreasonably withheld.  In addition, Company's commercial activities in respect to the Company Website shall be subject to WGBH's prior written approval, which shall not be unreasonably withheld.  WGBH shall not withhold any approval required under this Paragraph 7(e)(iv) unless WGBH determines in its sole discretion that an action proposed by Company is inconsistent with the best interests of the Project and/or the above-referenced rules, regulations, policies and/or contractual obligations.  WGBH shall reply to any request for approval described above within five (5) business days; and

(v)  if requested by Company:  (A) representatives of WGBH and Company shall meet to discuss the circumstances and factors relating to WGBH's exercise of its approval rights described in Paragraph 7(e)(iv) above so as to provide future guidance for Company and MacDonald concerning such matters; and/or (B) WGBH and Company shall negotiate in good faith for the purpose of mutually approving more detailed written guidelines concerning the Company Website and the rights of Company and MacDonald to pursue commercial opportunities.

8. <u>Distribution Rights and Revenues</u>:

(a)  Except as otherwise expressly provided herein, WGBH (which for purposes of this Paragraph 8 shall include PBSd) shall have the exclusive right, but not the obligation, to distribute and otherwise exploit the Project in all manner and media now known or hereafter developed throughout the world in perpetuity (the "Distribution Rights").

(b)  WGBH shall collect all revenues derived from its exercise of the Distribution Rights.  Subject to Company's fulfillment of its obligations hereunder, as consideration for Company's contributions to the Project and grant of rights as provided herein, including the Services described in Paragraph 4(a) above, WGBH shall pay Company fifty percent (50%) of all "Net

Proceeds" (as such term is defined in Exhibit F attached hereto). Notwithstanding the foregoing, for purposes of calculating Net Proceeds hereunder:

(i)  except as provided in Paragraph 8(b)(ii) below, all amounts paid by WGBH to Company under the Host Agreement in respect to the exploitation of the Programs/Series, which amounts are not included in any Production Budget(s) referred to in Paragraph 3(b) above, shall be considered "Third Party Payments" under Paragraph 2(p) of Exhibit F;

(ii)  all amounts paid by WGBH to Company under the Host Agreement in respect to the exercise of "Supplemental Market Rights" and/or "EST Rights" (as such terms are defined in Paragraphs 6[d] and 6[f], respectively, of the General Terms and Conditions of the Host Agreement) shall be considered "Third Party Payments" under Paragraph 2(p) of Exhibit F; and

(iii)  if WGBH raises funding that exceeds the Project's actual costs, then, after consultation with Company, WGBH shall determine whether to use such funding to cover future Project costs and/or treat any excess funding as "Gross Receipts" for the purpose of calculating Net Proceeds.  Company shall have the right to examine WGBH's books and records relating to the calculation of such actual costs in respect to each broadcast season of the Series.  Such examination shall take place at the offices of WGBH during reasonable business hours upon at least three (3) weeks prior written notice, which notice in respect to a particular season (the "Examination Season") must be delivered by Company to WGBH within sixty (60) days after the earlier of (A) the date on which WGBH notifies Company that final costs have been incurred for the Examination Season, or (B) the date of initial broadcast of the first Program for the next season following the Examination Season.  Company may not examine the costs for a particular season more than once.

(c)  If, during or after the Term, WGBH sells (a "Sale") all or substantially all of the assets (including, for example, Program copyrights, mastertapes, and music rights) related to Programs for which MacDonald renders services as an on-camera host/performer under a separate Host Agreement (the "Program Assets"), WGBH shall pay Company an amount equal to fifty percent (50%) of the net proceeds derived from the sale of such Program Assets (the "Net Purchase Proceeds"), subject to the following:

(i)  in order to be entitled to its share of the Net Purchase Proceeds, Company must waive any entitlement to its share of Net Proceeds (as defined in Paragraph 8[b] above) from or related to any and all Program Assets.

(ii)  Net Purchase Proceeds shall consist of all amounts actually received in the United States in United States dollars by WGBH or PBSd after deduction of the following:

(A)  Third Party Payments, including but not limited to payments to other income participants, funders, distributors of Program Assets, and others;

(B)  the Production Deficit, if any;

(C)  out-of-pocket costs, including WGBH's Overhead thereon, for professional services related to the Sale, including but not limited to attorneys' fees, tax consulting services, and business consulting services; and

(D)  any and all taxes incurred by WGBH and/or PBSd in connection with the Sale;  provided however that WGBH shall not deduct income taxes, if any, paid by WGBH, and each party shall bear its own liability for income taxes.  If WGBH is obligated to pay income taxes, WGBH shall structure the payments in a manner such that WGBH is not obligated to pay income taxes on Company's share.

For purposes of this Paragraph 8(c)(ii), the following terms shall be as defined in Exhibit F:  Third Party Payments, Production Deficit and Overhead.  Otherwise, the terms of Exhibit F shall not apply to the Sale.

(iii)  Company acknowledges that the Purchase described hereunder is outside WGBH's customary business transactions.  The decision to pursue, accept or complete any Sale rests entirely with WGBH in its sole discretion. WGBH makes no warranty that such Sale will take place, or that there will be any Net Purchase Proceeds or any particular amount thereof.

9.  Insurance:

(a)  WGBH shall, at its expense, procure and maintain until the expiration of the Term and any extensions thereof, producer's errors & omissions insurance suitable to cover all uses of the Project with limits of no less than one million dollars ($1,000,000) per occurrence and three million dollars ($3,000,000) in the aggregate.  This insurance shall name Company and MacDonald as additional insureds, and shall not be cancelled without thirty (30) days prior written notice to Company.  In addition, this insurance policy shall state that it is primary, and not secondary, to any other insurance that Company may have.  WGBH shall provide Company with a certificate of insurance evidencing such terms.

(b)  Insurance limits and expenses for (i) product liability insurance in respect to the Existing Tool Set and (ii) errors and omissions liability insurance in respect to the Existing Videos shall be negotiated in good faith directly between Company and PBSd.

(c)  Company shall obtain its own production/general liability insurance policy as needed or as reasonably requested by WGBH.  Company also shall

obtain and/or maintain a policy for worker's compensation or equivalent insurance which may be required by law or reasonably requested by WGBH. Such policy must be maintained in full force at all times during the production of the Series, and these policies shall list WGBH as additional insured. Company shall deliver to WGBH and/or PBSd any certificates of insurance evidencing the general liability and/or workman's compensation insurance policies promptly following any request therefor.

10.  Representations, Warranties, and Indemnities:

(a)  WGBH represents and warrants to Company that it has the legal right and authority to enter into this Agreement and to observe and perform fully its obligations as set forth herein, and that its performance hereunder and the rights it has granted to Company herein, if any, will not conflict with or violate any commitment, agreement, or understanding it has or shall have to or with any other person or entity.

(b)  Company represents and warrants that:

(i)  it has the legal right and authority to enter into this Agreement and to observe and perform fully its obligations as set forth herein, and that its performance hereunder and the rights it has granted herein will not conflict with or violate any commitment, agreement, or understanding it has or shall have to or with any other person or entity;

(ii)  it shall exercise diligence and care in respect to the Services, such diligence and care is sufficient to assure the accuracy and safety of Company's contributions to the Project, including, without limitation, woodworking instructions;

(iii)  neither the information Company supplies in connection with the Services nor the exercise by WGBH or its designees of the rights granted by Company herein shall violate or infringe upon the rights of any person or entity whatsoever, or create any liability of any kind;

(iv)  it owns or controls all necessary rights in and to the Existing Videos and the Existing Tool Set, or to the extent that such is not the case, it will acquire such rights for all purposes contemplated by this Agreement;

(v)  all materials in the Woodwork Designs will be free and clear of any liens or claims by any third party, and neither the content of the Woodwork Designs nor the distribution or other exploitation of thereof by WGBH, PBSd, or their licensees will infringe upon or give rise to a cause of action or violate any right whatsoever (including copyright, trademark, privacy, or any other rights) of any person or entity; and

(vi)  WGBH or its designees will not be obligated to make any payment to Company or to any third party in respect to the Services and/or WGBH's exercise of its rights hereunder unless specifically provided for herein

(c)  Each of WGBH and Company, as the case may be (the "Indemnifying Party"), shall defend, indemnify, and hold harmless the other party (the "Indemnified Party") and its officers, directors, agents, trustees, employees, subsidiary companies (including PBSd), and agents from and against any and all claims, alleged claims, actions, losses, costs, expenses, settlements, demands, and liabilities of every kind, including reasonable attorneys' fees and expenses, arising out of or incurred by reason of the inaccuracy, alleged breach, or actual breach of any representation, warranty, covenant, agreement, or undertaking made by the Indemnifying Party herein.  The Indemnifying Party shall, at its sole cost and expense, dispose of any such claim or demand or defend against any such action.  The Indemnified Party, at its option, shall have the right, at its sole cost and expense, to participate in the defense of any such action and to be represented by counsel of the Indemnified Party's selection.  The Indemnified Party shall give the Indemnifying Party prompt notice of the assertion of any claim or the institution of any action that may expose the Indemnifying Party to liability.

11.  Termination:  Subject to Paragraph 13(f) below, each of WGBH and Company shall have the right to terminate this Agreement upon written notice to the other party if the other party defaults in any material respect in the performance or observance of any of its obligations hereunder, including, without limitation, any breach of its representations and warranties set forth in Paragraph 10 above.  The respective representations and warranties of the parties set forth herein and the provisions regarding indemnification, accounting and payment of royalties, audit rights, and ownership of intellectual property shall survive any expiration or termination of this Agreement.

12.  Force Majeure:  If completion of the Project by WGBH is delayed by reason of act of God, fire, flood, delay in transportation, lockout, strike or other labor dispute, riot or civil disorder, war, whether war has been declared or not, or armed insurrection, enactment, rule, act or order of government, public disaster, mechanical failure, or other event or acts of a similar or different nature beyond WGBH's reasonable control, then such delay shall not constitute a material breach of this Agreement.

13.  Miscellaneous

(a)  This Agreement (which shall include all Exhibits attached hereto) constitutes the entire agreement between the parties in respect to the subject matter hereof and supersedes any prior agreement or understanding relating to the subject matter hereof, including the Deal Memorandum between WGBH and Company/MacDonald, d/b/a Major League Woodworking LLC, entered into on January 15, 2010.  This Agreement shall not be modified except by a

written agreement dated subsequent hereto signed on behalf of WGBH and Company by their duly authorized representatives.

(b)  If any provision of this Agreement shall be determined to be invalid or unenforceable, the remaining provisions of this Agreement shall remain in full force and effect.  The waiver of any provisions of this Agreement shall not affect WGBH's or Company's rights thereafter to enforce such provisions or to exercise any right or remedy in the event of any other default.

(c)  WGBH and Company are independent contractors with respect to each other, and nothing contained herein shall be construed to create any association, partnership, joint venture or agency relationship between them. All persons employed by WGBH and Company in connection with its performance hereunder shall be its employees or independent contractors, and each party shall be fully responsible for them.  Without limiting the foregoing, each party shall be responsible for all withholding taxes, other taxes, contributions to Social Security, and any other deductions and contributions which may be required by any applicable law or agreement for each of its employees.

(d)  All notices to be given hereunder shall be given or made in writing to the addresses of the parties set forth above unless notification of a change of address is given.  All notices shall be sent by registered or certified mail or by overnight courier, charges prepaid, with a confirming facsimile, and shall be deemed to have been given on the date mailed.  Copies of all notices from Company to WGBH shall be marked to the attention of WGBH's General Counsel.

(e)  Each party shall, promptly following the request of the other party, execute any further documents or do any acts which the other party may reasonably consider necessary for more effectively vesting in or confirming to such party the rights referred to in this Agreement or otherwise for the purpose of carrying into effect this Agreement and any of the arrangements intended to be made hereby.  Without limiting the foregoing, Company shall execute all further documents reasonably required by WGBH in respect to its application for production tax credits relating to the Project.

(f)  Before taking any action or making any claim based on the other party's breach of this Agreement, each party, as the case may be, shall notify the other party in writing that such other party has breached this Agreement, and give the other party thirty (30) days to cure such breach.  Under all circumstances, Company's remedy shall be limited to an action at law for damages, if any.

(g)  Company shall not assign its rights and obligations under this Agreement without the prior written approval of WGBH.  Subject to the

**EXHIBIT D - 12**

foregoing, this Agreement shall inure to the benefit of and be binding upon the parties and their assigns.

(h)  This Agreement shall be governed and controlled by the laws of the Commonwealth of Massachusetts.  The parties agree to submit solely and exclusively to the jurisdiction of the state and federal courts of the Commonwealth of Massachusetts to resolve any disputes arising hereunder.

ACCEPTED AND AGREED TO as of the date set forth above:

WGBH Educational Foundation

By: _Sue Ramonz_

Title: _VP + General Counsel_

Date: _1/28/11_

Thomas J. MacDonald Fine Furniture, Inc.

By: _Thomas J MacDonald_

Title: _President_

Date: _1-20-11_

Accepted and Agreed to Insofar as this Agreement Applies to it:

Public Media Distribution, LLC

By: _____

Title: _Co-President_

Date: _2/2/11_

I have read and understand this Project Participation Agreement and agree to perform the services, grant the rights, and comply with restrictions, applicable to me hereunder.  I agree to look solely to Company for any and all compensation arising out of this Agreement.

_Thomas J MacDonald_

Thomas J. MacDonald

**EXHIBIT D - 13**

<u>Exhibits</u>

Exhibit A - Series Description

Exhibit B - Season One Production Budget

Exhibit C - Season One Production Schedule

Exhibit D - Existing Videos

Exhibit E - Existing Tool Set

Exhibit F - Net Proceeds

**EXHIBIT D - 14**

<u>Exhibit A</u>

<u>Series Description</u>

**EXHIBIT D - 15**

## Exhibit B

## Season One Production Budget

**EXHIBIT D - 16**

## Exhibit C

## Season One Production Schedule

PRODUCTION SCHEDULE / SEASON ONE
"ROUGH CUT: WOODWORKING WITH TOMMY MAC"

| EP# | EP# | DEL# | EPISODE TITLE | FIELD SHOOT | DAYS | STUDIO SHOOT | EDIT START | CAPTION & EVAL | DELIVER | AIRDATE |
|---|---|---|---|---|---|---|---|---|---|---|
| 101 | 64 | 1 | NESS & Shaker | 5/24/2010 | 9 | 6/14/2010 | 7/5/2010 | 7/8/2010 | 8/6/2010 | 10/2/2010 |
| 102 | 67 | 2 | Adams House & Jewelry Box | 5/26/2010 | 18 | 6/16/2010 | 7/12/2010 | 7/15/2010 | 8/13/2010 | 10/9/2010 |
| 103 | 66 | 3. | USS | 6/7/2010 | 8 | 6/18/2010 | 7/19/2010 | 7/22/2010 | 8/20/2010 | 10/16/2010 |
| 104 | 76 | 4 | Ipswich Bombe | 6/9/2010 | TBD | 6/21/2010 | 7/26/2010 | 7/29/2010 | 8/27/2010 | 10/23/2010 |
| 105 | 71 | 5 | Artisan Lumber - | 5/31/2010 | 7 | 6/24/2010 | 8/2/2010 | 8/5/2010 | 9/3/2010 | 10/30/2010 |
| 106 | 69 | 6 | PEM - taltnur bread box | 7/12/2010 | 8 | 6/25/2010 | 8/9/2010 | 8/12/2010 | 9/10/2010 | 11/6/2010 |
| 107 | 70 | 7 | Period Finishes | 7/12/10 | 0 | 6/28/2010 | 8/16/2010 | 8/19/2010 | 9/17/2010 | 11/13/2010 |
| 108 | 72 | 8 | Shaker Village? | 7/14/2010 | 9 | 7/1/2010 | 8/23/2010 | 8/26/2010 | 9/24/2010 | 11/20/2010 |
| 109 | 73 | 9 | Artisan, Allen Breed & Pilgrim Blanket Chest | 7/21/2010 | 9 | 7/2/2010 | 8/30/2010 | 9/2/2010 | 10/1/2010 | 11/27/2010 |
| | | | | Art Lumber - 5/31/2010 | | | | | | |
| | | | | Allan Breed - | | | | | | |
| 110 | 68 | 10 | Adams House & | 5/26/2010 | 9 | 7/5/2010 | 9/6/2010 | 9/9/2010 | 10/8/2010 | 12/4/2010 |
| 111 | 65 | 11 | Old North | 5/24/2010 | 7 | 7/6/2010 | 9/13/2010 | 9/16/2010 | 10/15/2010 | 12/11/2010 |
| | | | | Phil Lowe - | | | | | | |
| | | | | Art Lumber - | | | | | | |
| 112 | 74 | 12 | Wil Neptune & | 5/31/2010 | TBD | 7/8/2010 | 9/20/2010 | 9/23/2010 | 10/22/2010 | 12/18/2010 |
| 113 | 75 | 13 | New Bedford & Compass Star Lazy Susan | 7/19/2010 | TBD | 7/16/2010 | 9/27/2010 | 9/30/2010 | 10/29/2010 | 12/25/2010 |
| | | | | | | | | | | |
| PROMO | | | DUE ASAP - | | | | | | | |
| APT CLIP | 77 | | DUE ASAP - | | | | | | | |
| 1ST EP | 78 | | DUE 08/01/10 for PRESS PREVIEW | | | | | | | |
| | 79 | | | | | | | | | |
| 1ST EP | 80 | | DUE 08/01/10 | | | | | | | |
| | 81 | | | | | | | | | |
| | 82 | | | | | | | | | |
| | 83 | | | | | | | | | |

Exhibit D

Existing Videos

(1)     **Toolbox** produced October 2009, by MLW;
(2)     **Shaker Step Stool**, produced January, 2010, by MLW; and
(3)     **Kitchen Table**, produced by MLW, January, 2010.

**EXHIBIT D - 18**

<u>Exhibit E</u>

<u>Existing Tool Set</u>

To be completed by Company.

**EXHIBIT D - 19**

Exhibit F

Net Proceeds

1. For the purposes of this Net Proceeds Definition:

(a)   (i)   "PBSd" means (x) WGBH's distributor, Public Media Distribution, LLC, d/b/a PBS Distribution (wholly owned by WGBH and the Public Broadcasting Service), and/or (y) WGBH if WGBH itself exploits or licenses the exploitation of any distribution rights.

(ii)   The "Program" shall mean the Series defined in the Agreement and all episodes thereof.

(b)   **Net Proceeds**

(i)   For PBSd self-distribution of the Program in the **Home Video and Non-Theatrical** markets:

A.   For Videogram distribution (e.g., DVDs and other tangible, physical devices):
"Net Proceeds" means PBSd's Gross Wholesale from such distribution less Third Party Payments, the Production Deficit, and the Reserve. For the avoidance of doubt, PBSd shall not take a Distribution Fee or Distribution Expenses with respect to PBSd self-distribution of Videograms.

B.   For Electronic Distribution (e.g., paid download, subscription or advertiser supported streaming, wireless):

"Net Proceeds" means fifty percent (50%) of PBSd's "Net Electronic Receipts" from such distribution.   Net Electronic Receipts means Gross Receipts from Electronic Distribution less a thirty percent (30%)

distribution fee, the actual costs of preparing mastertapes for distribution and encoding the Program, Third Party Payments, and the Production Deficit. For the avoidance of doubt, PBSd shall not take a Distribution Fee or, except as set forth in the previous sentence, Distribution Expenses with respect to PBSd self-Electronic Distribution.

(ii)     Where PBSd sublicenses any or all of the Home Video and/or Non-Theatrical rights in the Program in North America:

"Net Proceeds" means fifty percent (50%) of PBSd's Gross Receipts from such sublicensee(s), less the actual costs of materials required to be delivered to such sublicensee(s), Third Party Payments, the PBS Share, the Production Deficit, and the PBSd Override/Management Fee. For the avoidance of doubt, PBSd shall not take a Distribution Fee or, except as set forth in the previous sentence, Distribution Expenses with respect to such sublicenses.

(iii)    For (x) worldwide distribution of the Program in the **Television** and **Theatrical** markets, for worldwide exploitation of the **Publishing and Merchandise** rights, and for (y) distribution in the Home Video and Non-Theatrical markets outside North America (unless sales are made directly to consumers by PBSd):

"Net Proceeds" means Gross Receipts from such distribution less Distribution Fees, Distribution Expenses, Third Party Payments, and the Production Deficit.

(c)    **Gross Receipts**

(i)     For (x) worldwide distribution of the Program in the Television (but excluding US public television) and Theatrical markets, and

worldwide exploitation of the Publishing and Merchandise rights and for (y) distribution in the Home Video and Non-Theatrical markets outside North America (unless Videograms are sold directly to consumers by PBSd):

"Gross Receipts" means all amounts actually received by PBSd in the United States in United States Dollars.

(ii)    For PBSd self-distribution of the Program in the **Home Video** and **Non-Theatrical markets**:

(1)    For wholesale sales of Videograms:  "Gross Wholesale" means twenty-five percent (25%) of the actual wholesale revenue received by PBSd.

(2)    For direct to consumer sales of Videograms (including, e.g., Non-Theatrical sales directly to schools): "Gross Wholesale" means twelve and one-half percent (12 ½ %) of the actual retail revenue received by PBSd.

(3)    For Electronic Distribution: "Gross Receipts" means all amounts actually received by PBSd in the United States in United States Dollars.

(iii)    Gross Receipts shall not include: shipping and handling charges and taxes;  amounts paid or payable to WGBH or to PBSd from PBS, the Corporation for Public Broadcasting, and/or as production financing for the production of the Program, including, without limitation, funds received from underwriters, co-producers, pre-sales, and/or as advances ("Production Funding"); amounts received with respect to US public television exhibition; amounts received related to state, federal, or other tax credits; and amounts received related to copyright retransmission and similar collections and

royalties, music publishing, soundtrack exploitation, clip sales, and/or excerpt licenses.

(iv)     Where Gross Receipts are not allocable to a specific program (e.g., subscription fees paid to view the Program and other programs), PBSd shall make an allocation of such Gross Receipts reasonably and in good faith.

(v)     Advances that are not used for production financing for the Program shall be included in Gross Receipts only when earned, unless they are non-refundable and specifically allocated to sales of the Program, in which case such advances shall be included in Gross Receipts when received.   For advances received in connection with Publishing, Merchandise, and/or Theatrical rights exploitation, only the portion, if any, of the advance that is not used or being held for use to pay Distribution Expenses shall be included in Gross Receipts.

(vi)     With respect to funds received by PBSd in foreign currency, PBSd shall apply the same rate of currency exchange as applied to PBSd when such funds were converted to United States Dollars by or for PBSd.   In the event that funds received by PBSd, or credited to its account, originate from a territory with blocked currency, PBSd shall notify Company so that Company may establish an account in that territory for the purpose of receiving its appropriate revenue share in such blocked currency.

(vii)     PBSd may cross-collateralize income and deductions across all seasons of the Program, including but not limited to prior and subsequent episodes and seasons pursuant to agreements with WGBH other than this Agreement.   PBSd may cross-collateralize income and deductions across all media distributed hereunder.

2.     Additional Definitions:

**EXHIBIT D - 23**

(a)    "Collection Rights" means the right to collect any remuneration, royalties, charges or other levies for which WGBH or OTB may be or become eligible, directly or indirectly, as a result of the exploitation of the rights in the Program, including but not limited to cable and/or satellite retransmission royalties, private copy levies (imposed on blank video media), off-air institutional exhibition and/or copying license fees, or rental/lending royalties.

(b)    "Distribution Expenses" means all costs and expenses paid and/or incurred by PBSd and/or a third party distributor that are charged to PBSd in the distribution and exploitation of the Program (including Publishing and Merchandise exploitation), including, without limitation, the costs of advertising, promotion, publicity, marketing, duplication, subtitling, foreign language versions and translations, editing, shipping, handling, and insurance, related Overhead on all such items, and taxes.

(i)    For distribution in (x) Worldwide Television Media and (y) Home Video and Non-Theatrical Media, excluding North America:  PBSd shall deduct, in lieu of Distribution Expenses, five percent (5%) of Gross Receipts from such distribution;  provided however that PBSd may also deduct the cost of foreign language translations.

(ii)    Distribution Expenses include, and PBSd may deduct, WGBH's costs of producing books, publications, merchandise and materials necessary for exploitation of the Publishing, Theatrical, and/or Merchandise rights, including related Overhead.

(c)    "Distribution Fees" means the following percentages of Gross Receipts:

**EXHIBIT D - 24**

(i)     Worldwide Television Media (all forms of television, including, without limitation, U.S. network television, commercial syndication, video on demand [unless licensed as a video right], basic cable, and pay television [including pay cable, pay-over-the-air, hotel/motel, pay-per-view, MDS and DBS, unless otherwise set forth below], but excluding broadcast on public television stations:     **30%**

(ii)     Home Video and Non-Theatrical Media, excluding North America:     **30%**

(iii)     Worldwide Publishing:          **20%**

(iv)     Worldwide Theatrical Media:          **40%**

(v)     Worldwide Merchandise and any other source not specifically mentioned above: **35%**

(vi)     Net Proceeds for so-called transportation/"inflight" rights, e.g., airplanes and ships at sea, shall be calculated as if such rights were Television Rights, i.e., PBSd shall take a **30%** Distribution Fee plus Distribution Expenses of **5%**.

(vii)     For Television, Home Video and Non-Theatrical markets outside North America, in limited instances PBSd may use agents, sublicensees and distributors (e.g., Television licenses in the Middle East and Italy).  In such instances, the monies received by PBSd from such agents, sublicensees and distributors shall be deemed Gross Receipts.  With respect to Publishing, Theatrical and Merchandise exploitation, the combined Distribution Fees of PBSd and any distributor or agent shall not exceed the fees set forth above, plus 5%.

(d)    "Electronic Distribution" means the digital distribution of the Program over the internet or similar transmission system directly to consumers (e.g., download to own, download to rent, pay-per-view streaming or subscription supported streaming to the extent revenue from such streaming is specifically allocable to the Program), whether provided through PBSd's own website or that of a third party.

(e)    "Home Video" means the right to duplicate and/or manufacture copies of the Program in any and all formats, tangible and intangible, and to sell, lease, license, sublicense, rent, distribute, reproduce, exploit, advertise, and otherwise market the Program in the Video market and to authorize others to do so.  The "Video market" means distribution intended for non-public exhibition (viewing) of the Program by means of video cassettes, disks, DVD's, and/or any other devices or media now known or hereafter invented (but specifically excluding Television-based "pay-per-view," "video-on-demand," "near-video-on-demand," and similar on-demand means), and by means of the internet, intranet, and/or any other system of networked computers or devices (so called "IP delivery"), whether wireless, mobile, streamed, downloaded or otherwise, and other direct delivery playback or transmission means in linear or non-linear form provided that such distribution is for consumer private viewing for a fee.

(f)    "In-Flight Rights" means exhibition of the Program on airlines, trains, ships, and/or other transportation facilities.

(g)    "Merchandise" means the distribution of products and services related to, derived from, or promoted in conjunction with the Program, such as tools, blueprints (including the Blueprints), interactive and electronic merchandise, dolls, plush, apparel, games, puzzles, figurines, novelties, foods, snacks, consumables, beverages, toys and any other merchandise, products,

premiums, tie-ins or materials or goods, but specifically excluding Television, Home Video, Non-Theatrical, Publishing, and Theatrical Rights products.

(h)   "Non-Theatrical Rights" means the right to duplicate and/or manufacture copies of the Program in any and all formats, tangible and intangible, and to sell, lease, license, sublicense, rent, distribute, reproduce, exploit, advertise, and otherwise market the Program in the Non-Theatric market, and to authorize others to do so.  Such rights shall include the right to exhibit and publicly perform the Program, and to authorize others to do so, for the duration of the copyright in and to the Program.  The "Non-Theatric market" means distribution of the Program by means of video cassettes, disks, DVD's, and/or any other devices or media now known or hereafter invented, and by means of the internet, intranet, and/or any other system of networked computers or devices, and other direct delivery playback or transmission means (so called "IP delivery"), whether wireless, mobile, streamed, downloaded or otherwise, and other direct delivery playback or transmission means in linear or non-linear form, for any and all forms of "non-theatrical exhibition." Non-Theatrical exhibition includes but is not limited to exhibition at military bases, military installations, hospitals, oil rigs, libraries, prisons, schools, colleges, churches and other educational, institutional and/or groups or organizations, business and industry, and/or other traditional non-theatrical venues.

(i)   "Overhead" means eighteen percent (18%) of the stated items, and covers WGBH's related internal administrative costs.

(j)   "PBSd Override/Management Fee" means fifteen percent (15%) of Gross Receipts from a sublicense of the Home Video and/or Non-Theatrical rights in North America.

(k)     "Production Deficit" means the actual cost of producing the Program and related materials (including but not limited to related Overhead, overages, and development costs), including but not limited to prior and subsequent episodes and seasons, less the amount of production funding actually received by WGBH with respect to the Program. The Production Deficit shall be cumulative across all episodes and seasons. The Production Deficit shall include interest on the Production Deficit (but not on interest) calculated at the then current Bank of America prime rate, plus 2% thereof.

(l)     "Publishing" means the distribution of text-based or text and image-based works in book, magazine, newsletter, or similar form (in hard copy or digital format, and which may include additional content, but excluding websites and web-content) that are derived from the content of the Program or related to woodworking.

(m)     "Reserve" means such portion of any payable royalty amount derived from Gross Wholesale as shall be necessary and appropriate in PBSd's reasonable business judgment (hereinafter referred to as the "Exchange and Return Reserve") as a reserve against exchanges or returns; provided, however, that in no event will the Exchange and Return Reserve exceed twenty percent (20%) of Gross Wholesale in any accounting period. PBSd also shall have the right to retain, as a reserve against any bad debt incurred in connection with the distribution of the Program by PBSd, one percent (1%) of gross sales in any accounting period (hereinafter referred to as the "Bad Debt Reserve"). The Exchange and Return Reserve will be liquidated on a semi-annual basis.

(n)     "Television" means the right to distribute and exhibit the Program by standard free television terrestrial broadcast stations (including but not limited to analog, digital, VHF, and UHF), the video and audio portions of which are intelligibly receivable without charge by means of standard home roof-top or television set built-in antenna and by means of basic cable, satellite

transmission, pay cable/over the air pay subscription television (e.g., DBS, MATV, MDS, SMATV), pay-per-view, and similar and dissimilar means now or hereafter invented (in digital, analog and any other format), and shall also include, but not be limited to, so-called "video-on-demand," "near-video-on-demand," and other direct delivery playback or transmission means to any and all devices (including but not limited to telephones and other hand-held devices), and all forms and formats of internet, intranet and other computer-mediated means of distribution (including so-called "internet protocol television"). Television shall include Collection Rights.

(o)     "Theatrical" means license or rental of the Program or an audio-visual work derived from the Program to commercial motion picture theaters that are open to the public on a regularly scheduled basis and which charge an admission fee to view audio-visual works.

(p)     "Third Party Payments" means all fees, royalties, residuals, and other amounts, whether paid to third parties by WGBH or PBSd, or incurred by third parties, related to the distribution and exploitation of the Program, Merchandise, and Publishing, including, without limitation, amounts payable to any performer and any union or guild representing same, music clearance fees, copyright and permission fees, trademark and copyright search and registration fees (including outside counsel expenses), all other amounts customarily included as third party payments, payments to entities providing financing for the Program, and related Overhead on all such items, provided that there shall not be any Overhead charge with respect to Third Party Payments that are based on a percentage of Net Proceeds or Gross Receipts. Third Party Payments shall include costs of prosecution and defense (including court costs and reasonable attorneys' fees) related to exploitation hereunder, and related Overhead.

(q)    "Videogram" means all forms of videocassette ("VHS"), video disc, digital versatile disc ("DVD"), magnetic tape, CD-ROM photoelectric disc or other tangible (i.e., physical) electronic, magnetic, laser, smartcard, digital file or any digital, analog or other media or formats, whether now known or hereafter devised, used for a visual and acoustic record consisting of a succession of visible pictures capable of appearing as motion pictures together with a soundtrack synchronized therewith, intended for viewing in a linear fashion without edits.

3.    (a)    PBSd shall deliver to Company a complete and accurate statement relating to the exploitation and activity specified herein, and the computation of payments to Company, if any, on a calendar quarterly basis not later than sixty (60) days after each March 31, June 30, September 30, and December 31 for the preceding quarter, respectively.  No statements shall be required for periods in which no Gross Receipts have been received by PBSd.  Each such statement shall be accompanied by payment of the sum, if any, due, shall indicate all moneys received by PBSd in each medium specified herein, and shall set forth in reasonable detail the computation of the amount paid.  PBSd shall allocate costs incurred and/or income received for a group of programs which includes the Program, as PBSd shall reasonably determine.  Company shall have the right to examine PBSd's books and records related to the exploitation of the Program at the offices of PBSd or at such other place where the PBSd books and records are kept, during reasonable business hours upon at least three (3) weeks prior written notice.  Such examination and the results thereof shall be confidential and shall not be disclosed by Company to any person or entity. Company may not conduct such an examination more frequently than once each calendar year and may not examine any statement more than once.

(b)    Each such statement shall be incontestable if no objection has been raised within two (2) years after each statement has been rendered, or if

no action has been taken within one (1) year after notice of objection has been received by PBSd.

      (c)    In the event that an audit by a national or Massachusetts firm of reputable CPAs licensed to conduct such an audit discloses an underpayment in excess of ten percent (10%) of the total amount due Company hereunder with respect to the period covered by such audit, Company shall provide PBSd with a copy of the report of such examination at the time it is supplied to Company.  In the event either (i) PBSd agrees in writing that the amount of such underpayment is correct, or (ii) a court of competent jurisdiction enters a final, binding, and non-appealable judgment against PBSd that the amount of such underpayment is correct, PBSd will pay the Company the amount of such underpayment, and if such underpayment exceeds Two Thousand Dollars ($2,000), then PBSd shall promptly pay to Company the amount of such CPA's fees, not to exceed Five Thousand Dollars ($5,000).

**EXHIBIT D - 31**

**WGBH**
One Guest Street
Boston, MA 02135
617 300 4349  tel
617 300 1014  fax
wgbh.org

**Legal and Business
Affairs**



April 1, 2013

Thomas J. MacDondald
Thomas J. MacDonald Fine Furniture, Inc.
137 Spring Lane
Canton, MA 02021

Re:  <u>First Amendment to Project Participation Agreement (WGBH #K201100120)</u>

Dear Mr. MacDonald:

This letter will serve to amend the Project Participation Agrement between Thomas J. MacDonald Fine Furniture, Inc. ("Company") and the WGBH Educational Foundation ("WGBH") dated January 20, 2011 (the "Agreement").  Unless otherwise provided herein, all capitalized terms shall be as defined in the Agreement.

Notwithstanding anything to the contrary contained in the Agreement, WGBH and Company agree as follows:

1.      In accordance with Paragraph 5 of the Agreement, the Term of the Agreement is extended to cover a fourth broadcast season for the Series ("Season 4") and, to the extent provided for in Paragraph 3 below, a fifth broadcast season for the Series ("Season 5").  Any Programs produced for Season 4 and/or Season 5 shall be considered "Program(s)" under the Agreement.

2.      WGBH and Company shall collaborate to produce Season 4 in accordance with the Agreement, subject to the following:

(a)      the Production Budget and Production Schedule for Season 4 are set forth on **Exhibits A-1** and **A-2**, respectively;

(b)      MacDonald's fee under the Host Agreement (the "Host Fee") for Season 4 shall be six thousand dollars ($6,000) per Program for thirteen (13) Programs - a total of seventy-eight thousand dollars ($78,000);

(c)      WGBH represents that it entered into an Underwriting Agreement with Woodcraft Supply, LLC ("Woodcraft") dated January 18, 2013 for the funding of Season 4 (the "Woodcraft Agreement").  Under the Woodcraft Agreement, Woodcraft has the right to sell "sub-sponsorships" for Season 4 up to a total of three hundred forty thousand dollars ($340,000).  Woodcraft has fully sold such sub-sponsorships, so that as of the date hereof WGBH and Company have the right to seek funding from additional funder(s) (the "Additional Funding") for Season 4, subject to the following:

(i)  the rights of Woodcraft under the Woodcraft Agreement, including, without limitation, Woodcraft's "Category Exclusivity" requirements;

(ii)  all funders, and the terms of any agreements with funders, shall be subject to the mutual approval of WGBH and MacDonald, which shall not be unreasonabley withheld; and

(iii)    no funder shall contribute less than fifty thousand dollars ($50,000) unless otherwise approved in writing by Woodcraft and WGBH.

(iv)    WGBH shall collect all Additional Funding for Season 4 and allocate it as follows:

(A)    fifty percent (50%) of the Additional Funding to Company as a fee for Company's Services as a consultant and an Executive Producer of Season 4 (the "Consulting Fee"). The Consulting Fee shall not exceed forty-six thousand dollars ($46,000) so as to ensure the total compensation to Company for Season 4 (the Consulting Fee, the Host Fee referred to in Paragraph 2[b] above, and the Trade Show Appearance Fee referred to in Paragraph 2[e] below) shall not exceed one hundred thirty thousand dollars ($130,000);

(B)    fifty percent (50%) of the Additional Funding to cover production costs for Season 4 of the Series as determined by WGBH after consultation with Company;

(C)    if the Additional Funding exceeds the amount required to pay Company the maximum Consulting Fee and cover all of WGBH's costs for Season 4, then WGBH shall apply such funding overages as provided in Paragraph 8(b)(iii) of the Agreement;

(d)    WGBH shall pay Company a fee for the use of the Workshop during Season 4 as set forth in the Production Budget referred to in Paragraph 2(a) above;

(e)    Company shall cause MacDonald to make personal appearances at a maximum of two (2) trade shows for Woodcraft during the Term for Season 4, up to three (3) days per trade show for a total of up to six (6) days (the "Trade Show Appearances").  Promptly following Company's fulfillment of its obligations in respect to the Trade Show Appearances, WGBH shall pay Company, and Company shall accept as full compensation therefor, six thousand dollars ($6,000) (the "Trade Show Appearance Fee").  In addtion, WGBH shall reimburse Company for all reasonable travel expenses incurred by Company in respect to the Trade Show Appearances, provided that (i) Company submits to WGBH substantiated invoices and original receipts, and (ii) such expenses are approved in writing by WGBH. Company shall submit invoices for approval by WGBH no later than sixty (60) days after the date incurred by Company.  All travel expenses incurred by Company in connection with the Trade Show Appearances shall be subject to the WGBH Travel and Expense Reimbursement Policy attached hereto as **Exhibit A-3**;

(f)    MacDonald shall have the right to participate in speaking engagements and/or other appearances (the "MacDonald Outside Activities"), provided such Activities:

(i)    shall not conflict with the interests and rights of Woodcraft and/or any other funders of Season 4, nor shall such Activities constitute an endorsement of any funder and/or its products and/or services;

(ii)    shall comply with applicable rules and regulations of the FCC, APT and WGBH; and

(iii)    shall be subject to WGBH's prior written approval, which shall not be unreasonably withheld;

(g)    As part of the MacDonald Outside Activities, MacDonald may make appearances at Woodcraft's franchise stores (the "Franchise Appearances") for a fee of one thousand five hundred dollars ($1,500) for each Franchise Appearance, unless another amount is approved by WGBH and

Woodcraft.  The details of such Franchise Appearances, including any possible reimbursement of Company/McDonald's travel expenses, shall be arranged separately by Company/MacDonald and each franchise store, and WGBH shall have no obligations, financial or otherwise, in connection therewith.  Company/MacDonald shall provide the franchise stores with a standardized list of travel and accommodation requirements for the purposes of arranging any such travel reimbursements;

(h)     Subject to Company's fulfillment of its obligations hereunder, MacDonald shall receive credit as an "Executive Producer" on each Season 4 Program (the "Credit").  The format, order, prominence, and duration of all credits on the Project shall be determined by WGBH in its sole discretion.  No casual or inadvertent failure of WGBH or others to include the Credit shall constitute a breach by WGBH of this Agreement;

(i)     Company, WGBH and PBSd shall consult concerning strategies for developing and exploiting Related Materials, such as design plans, DVDs, merchandise, t-shirts, caps, and calendars. The terms of such arrangements shall be subject to the mutual approval of Company, WGBH and PBSd, which shall not be unreasonably withheld; and

(j)     Company shall have the right to manufacture and sell furniture based on projects designed for the Series, and authorize others to do so, provided Company shall pay WGBH fifty percent (50%) of Company's "net revenues" derived therefrom in substantially the same manner, and subject to the same accounting obligations of Company and audit rights of WGBH, as set forth in Exhibit F of the Agreement in respect to WGBH's payment to Company of a share of Net Proceeds.

3.     WGBH shall have the exclusive option (the "Season 5 Option") to extend the Term for Season 5.  WGBH shall notify Company in writing by no later than December 31, 2013 of its exercise of the Season 5 Option.  Commencement of production of Season 5 shall be subject to sufficient funding as described in Paragraph 3(a) of the Agreement.  If WGBH exercises the Season 5 Option, then:

(a)  WGBH and Company shall use their reasonable best efforts to raise funding to produce Season 5 in accordance with Paragraph 3(a) of the Agreement.  Company shall keep WGBH informed on a timely basis of Company's fundraising efforts for Season 5, and shall not submit any funding proposals or enter into any agreements concerning the Project without WGBH's prior written approval, which shall not be unreasonably withheld.  Each of WGBH and Company shall mutually approve, and perform in accordance with, the terms of any agreements with any funder(s), including, without limitation, with respect to "client services";

(b)  WGBH shall consult with Company and prepare a preliminary anticipated production budget for Season 5 (the "Season 5 Preliminary Budget") by no later than March 31, 2014.  If sufficient funding to cover fully the Season 5 Preliminary Budget is secured by no later than July 1, 2014, then WGBH shall produce Season 5 and Company/McDonald shall render services for Season 5 in accordance with this Agreement and past practice.  WGBH shall determine the final production budget for Season 5 after consultation with Company (the "Season 5 Production Budget").  WGBH shall seek to ensure the Season 5 Production Budget includes total compensation for Company (the applicable Host Fee, Consulting Fee, and Trade Show Appearance Fee) (the "Season 5 Compensation") not less than one hundred thousand dollars ($100,000) (the "Minimum Amount") and not more than one hundred thirty thousand dollars ($130,000).  If for any reason WGBH determines that Company's Season 5 Compensation would be less than the Minimum Amount, then WGBH shall so notify Company promptly in writing (the "MA Notice"), which Notice shall occur no later than July 1, 2014. Company shall have the right, exercisable by notice in writing to WGBH within thirty (30) days after Company's receipt of the MA Notice, to withdraw from further participation in the Project; and

(c)      Except as provided in Paragraphs 3(a) and (b) above, the terms set forth in Paragraph 2 above for Season 4 shall apply also for Season 5, subject to the following:  if Woodcraft exercises its right to renew the Woodcraft Agreement and provides the same level of funding for Season 5, then WGBH and Company shall not seek Additional Funding for Season 5 without Woodcraft's prior written approval until the earlier of (i) the date (if any) on which Woodcraft notifies WGBH that it sold sub-sponsorships for Season 5 up to a total of three hundred forty thousand dollars ($340,000), or (ii) April 1, 2014.

4.      Except as provided herein, all other terms and conditions of the Agreement shall remain in full force and effect.

Please confirm your acceptance of the above terms and conditions by signing both original copies of this amendment and returning them to WGBH.  A fully executed original will be returned to you.

**ACCEPTED and AGREED TO** effective as of the date first set forth above:


**WGBH EDUCATIONAL FOUNDATION**          **THOMAS J. MACDONALD FINE FURNITURE, INC.**

By: _____          By: _____
    Susan L. Kantrowitz
    Vice President and General Counsel          Title: _____

Date Signed: _____ _____          Date Signed: _____

                                        Federal Tax ID#:  _____ _____


**ACCEPTED and AGREED TO** Insofar as this Agreement Applies to it:

**PUBLIC MEDIA DISTRIBUTION, LLC ("PBSd")**

By:_____
    David Bernstein
    Co-President

Date Signed:_____


I have read and understand the Agreement and agree to perform the services, grant the rights and otherwise abide by the terms of this Amendment.  I represent that I have the right to enter into this Agreement and to provide my services and grant such rights.  I will look solely to Company for payment of my compensation in connection with such services and grant of rights.

**THOMAS J. MACDONALD**

By: _____ _____

Date Signed: _____

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 5 of 35

**EXHIBIT D - 35**

<u>Exhibits</u>

Exhibit A-1      Season 4 Production Budget

Exhibit A-2      Season 4 Production Schedule

Exhibit A-3      WGBH Travel and Expense Reimbursement Policy

Exhibit A-1

Season 4 Production Budget

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 7 of 35

**EXHIBIT D - 37**

WGBH BUDGET                                                                Page 1

| | |
|---|---|
| **PROJECT: Rough Cut with Tommy Mac** | Date: 4/9/13 |
| SEASON FOUR | |
| **Contract Budget** | |
| Producer: Laurie Donnelly | Number of shows: 13 |
| | Length of each show: 30 |

ASSUMPTIONS:  13 stories/episodes, 1 studio shoots per show, 1/2 day field shoots per show

### PROJECT SUMMARY

| | |
|---|---|
| PRODUCTION | 648,099 |
| NATIONAL MARKETING (no radio tour) | 20,194 |
| STATION RELATIONS    (no system event) | 21,967 |
| APPEARANCES | 13,511 |
| WEB SITE | 21,447 |
| VODCASTS | 9,783 |
| CLIENT SERVICES | 0 |
| Tommy will handle CS | |
| **TOTAL PROJECT COST** | **735,000** |

| FUNDING | 735,000 |
|---|---|
| CONFIRMED | 735,000 |
| Woodcraft Supply, LLC | 685,000 |
| Adjustable Clamp company | 50,000 |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 8 of 35

**EXHIBIT D - 38**

WGBH BUDGET                                                                                      Page 2

| | |
|---|---|
| **PROJECT: Rough Cut with Tommy Mac** | Date: 4/9/13 |
| SEASON FOUR | |
| PRODUCTION | |
| Producer: Laurie Donnelly | Number of shows:      13 |
| | Length of each show:      30 |

Rights cleared:  4 in 3; HV; Foreign - all covered in host fee

**PRODUCTION SUMMARY**

| | |
|---|---:|
| Staff | 213,699 |
| Administration | 12,819 |
| Workshop Fees | 26,520 |
| Talent and Script | 116,636 |
| Travel and Living - Lifestyle Unit | 3,900 |
| Travel and Living - Shoot related | 12,125 |
| Remote Shoot | 21,000 |
| Studio Shoot | 60,550 |
| Scenics, Props, Wardrobe | 13,050 |
| Music | 0 |
| Graphics, Animation | 6,500 |
| Post-Production | 56,345 |
| Contingency | 6,093 |
| | |
| Total Direct Expense | 549,237 |
| Indirect | 98,863 |

18% on           549,237      98,863

| | |
|---|---:|
| **TOTAL PRODUCTION COST** | **648,099** |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 9 of 35

**EXHIBIT D - 39**

WGBH BUDGET                                                                 Page 3

| PROJECT: Rough Cut with Tommy Mac | Date: 4/9/13 | |
| SEASON FOUR | | |
| PRODUCTION | | |
| Producer: Laurie Donnelly | Number of shows: | 13 |
| | Length of each show: | 30 |

**STAFF**

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| **Staff** | | | | | 139,257 |
| Executive Producer | 15% | 30 weeks | | | |
| Series Editor | 100% | 17 weeks | | | |
| Senior Program Producer | 15% | 30 weeks | | | |
| Producer | 100% | 16 weeks | | | |
| Coordinating Producer | 20% | 30 weeks | | | |
| Production Assistant | 100% | 30 weeks | | | |
| Unit Manager | 25% | 30 weeks | | | |
| Vacation Accrued | | 6.6% on | | | |
| **Benefits** | | | | | 38,992 |
| Benefits | | 28% on | 139,257 | 38,992 | |
| | | | | | |
| **Tommy Mac Staff** | | | | | 35,450 |
| Technical Advisor | 100% | 30 weeks | 900 | 27,000 | |
| Shop Assistant | 100% | 13 episodes | 400 | 5,200 | |
| Steve Brown/Consultant | 100% | 13 episodes | 250 | 3,250 | |

**TOTAL STAFF**                                                            **213,699**

**ADMINISTRATION**          Producer will be offsite, so no occ

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Occupancy LD | 15% offices | 7 months | 1,000 | 1,050 | |
| Occupancy AA | 15% offices | 7 months | 1,000 | 1,050 | |
| Occupancy Coo Prod | 20% offices | 7 months | 1,000 | 1,400 | |
| Occupancy AM | 25% offices | 7 months | 1,000 | 1,750 | |
| Computer | 15% computer | 7 months | 200 | 210 | |
| Computer | 15% computer | 7 months | 200 | 210 | |
| Computer | 20% computer | 7 months | 200 | 280 | |
| Computer | 25% computer | 7 months | 200 | 350 | |
| Telephone | 15% phones | 7 months | 75 | 79 | |
| Telephone | 15% phones | 7 months | 75 | 79 | |
| Telephone | 20% phones | 7 months | 75 | 105 | |
| Telephone | 25% phones | 7 months | 75 | 131 | |
| Photocopy | | 7 months | 75 | 525 | |
| Office Supplies | | 7 months | 100 | 700 | |
| Postage and Freight | | 7 months | 200 | 1,400 | |
| E&O Insurance | | 1 allow | 0 | 0 | (covered by WGBH) |
| Neg Insurance | | 1 allow | 3,500 | 3,500 | |

**TOTAL ADMINISTRATION**                                                    **12,819**

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 10 of 35

**EXHIBIT D - 40**

WGBH BUDGET                                                                 Page 4

| PROJECT: Rough Cut with Tommy Mac | Date: 4/9/13 | |
|---|---|---|
| SEASON FOUR | | |
| PRODUCTION | | |
| Producer: Laurie Donnelly | Number of shows: | 13 |
| | Length of each show: | 30 |

**WORKSHOP FEES**

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Co-Production/Acquisition | | | | | 26,520 |
| Tommy Admin Expense | | 24 weeks | 1,105 | 26,520 | |
| Season 4 Workshop Fee | | | | | |
| **TOTAL WORKSHOP FEES** | | | | | **26,520** |

**TALENT AND SCRIPT**
Tommy Overscale will cover home-vid/AV, not clearing foreign

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Talent | | | | | 116,636 |
| Host | | 13 shows | 6,000 | 78,000 | |
| Consultating Fee | | 1 allow | 25,000 | 25,000 | |
| Guest Stars x 1 | | 2 shows | 250 | 500 | |
| Voice Overs | 13 shows | 0 VO | 0 | 0 | |
| Funder Announcer | | 1 announce | 1,180 | 1,180 | |
| Promo Announcer | | 0 promos | 239 | 0 | |
| Tag Announcer | | 0 tags | 341 | 0 | |
| Tease Announcer | 13 shows | 1 tease | 0 | 0 | |
| AV rights | | 6 payments | 0 | 0 | |
| Supplemental mkt | | 0 payments | 0 | 0 | |
| (home video, foreign non-standard) | | | | | |
| Benefits | | 15.1% on | 79,180 | 11,956 | |
| **TOTAL TALENT AND SCRIPT** | | | | | **116,636** |

**TRAVEL AND LIVING - Laurie, Anne & Tommy to Woodcraft**

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Administrative | | | | | 3,900 |
| Airfare | 3 people | 1 RT | 500 | 1,500 | |
| Hotels | 3 people | 2 days | 250 | 1,500 | |
| PerDiem/Meals | 3 people | 2 days | 75 | 450 | |
| Ground - Rental Car | 3 people | 1 trips | 150 | 450 | |
| **TOTAL TRAVEL AND LIVING** | | | | | **3,900** |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 11 of 35

**EXHIBIT D - 41**

WGBH BUDGET                                                                                          Page 5

| PROJECT: Rough Cut with Tommy Mac | Date: 4/9/13 | |
|---|---|---|
| SEASON FOUR | | |
| PRODUCTION | | |
| Producer: Laurie Donnelly | Number of shows: | 13 |
| | Length of each show: | 30 |

**TRAVEL - NYC (assumes 4: TM, LD, PA, DP) - local audio, local make-up**

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| Travel - New York | Travel Tommy, Laurie, John Baynard, Lauren OR Anne | | | | | | 8,800 |
| Airfare | 4 | people | 1 | RT | 700 | 2,800 | |
| Hotels | 4 | people | 3 | days | 350 | 4,200 | |
| Ground | 1 | allow | 1 | trips | 600 | 600 | |
| Van Parking | 1 | allow | 1 | allow | 300 | 300 | |
| Per Diems | 4 | people | 3 | days | 75 | 900 | |
| | | | | | | | |
| Travel - Local | | | | | | | 3,325 |
| Ground | 7 | people | 19 | trips | 25 | 3,325 | |
| Per Diem | 0 | people | 0 | days | 75 | 0 | |
| | | | | | | | |
| | **TOTAL TRAVEL** | | | | | | **12,125** |

**REMOTE SHOOT**
ASSUMPTIONS:  Field: 5 shoot days (2 Boston; 3 NYC): 13 stories

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| Boston | | | | | | | 21,000 |
| Camera Operator | 5 | days | 1 | shoot | 1,000 | 5,000 | reduced:5days |
| Camera Operator travel days | 0 | days | 0 | shoot | 900 | 0 | local only |
| Camera Pkg | 5 | days | 1 | shoot | 650 | 3,250 | |
| Camera Pkg travel days | 0 | days | 0 | shoot | 650 | 0 | local only |
| Audio Person | 5 | days | 1 | shoot | 700 | 3,500 | |
| Audio Pkg | 5 | days | 1 | shoot | 400 | 2,000 | |
| Lights | 5 | days | 1 | package | 500 | 2,500 | |
| Location Fees & permits | 5 | locations | 1 | allow | 250 | 1,250 | |
| Tape Stock DVC-Pro HD | 5 | days | 10 | tapes | 15 | 750 | |
| Craft Services/Lunch | 5 | days | 11 | people | 50 | 2,750 | |
| | | | | | | | |
| | **TOTAL REMOTE SHOOT** | | | | | | **21,000** |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 12 of 35

**EXHIBIT D - 42**

WGBH BUDGET                                                                    Page 6

| PROJECT: Rough Cut with Tommy Mac | Date: 4/9/13 | |
| SEASON FOUR | | |
| PRODUCTION | | |
| Producer: Laurie Donnelly | Number of shows: | 13 |
| | Length of each show: | 30 |

**STUDIO SHOOT**
ASSUMPTIONS: 13 stories/episodes, 1 studio shoot per show, plus 1 extra days for pick-ups, tracks & opens
1 cam. shoot

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Director of Photography/Dir | 1 person | 14 days | 1,000 | 14,000 | John Baynard |
| Camera Pkg | 1 pkg | 14 days | 650 | 9,100 | 1 cam. shoot |
| Audio Person | 1 person | 14 days | 700 | 9,800 | |
| Audio Pkg | 1 pkg | 14 days | 400 | 5,600 | |
| Lights | 2 pkg | 14 days | 500 | 14,000 | |
| Tapestock DVC Pro HD | 20 tapes | 14 days | 15 | 4,200 | |
| Craft Services/Lunch | 11 people | 14 days | 25 | 3,850 | |

|  | **TOTAL STUDIO SHOOT** | | | | **60,550** |

**SCENICS, PROPS, WARDROBE**
assumes 14 studio days - 5 field shoot days

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Scenery & Props | | | | | 2,600 |
| Props Purchase/Rental | | 13 shows | 200 | 2,600 | |
| | | | | | |
| Wardrobe & Makeup | | | | | 10,450 |
| Makeup & Hair Artist | | 19 days | 550 | 10,450 | |
| Wardrobe Purchase | | 0 allow | 0 | 0 | |

|  | **TOTAL SCENICS, PROPS, WARDROBE** | | | | **13,050** |

**MUSIC**

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Music | | | | | 0 |
| Series Theme Music | | 1 update | 0 | 0 | NO UPDATE FOR S4 |
| includes composer fee & musician payments | | | | | |

|  | **TOTAL MUSIC** | | | | **0** |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 13 of 35

**EXHIBIT D - 43**

WGBH BUDGET                                                                 Page 7

| PROJECT: Rough Cut with Tommy Mac | Date: 4/9/13 |
|---|---|
| SEASON FOUR | |
| PRODUCTION | |
| Producer: Laurie Donnelly | Number of shows:         13 |
| | Length of each show:    30 |

### GRAPHICS, ANIMATION

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Series Open and Show Branding | | | | | 6,500 |
| Series Open | | 1 open | 1,500 | 1,500 | reduced |
| Show Branding | | 1 allow | 5,000 | 5,000 | |
| | | | | | |
| **TOTAL GRAPHICS, ANIMATION** | | | | | **6,500** |

### POST-PRODUCTION

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| APT Fees | | | | | 3,565 |
| APT (Producer) Feed Fee | 13 shows | 1 fee | 225 | 2,925 | |
| Revenue Share | | 1 allow | 250 | 250 | |
| Website Product Offer | | 1 allow | 390 | 390 | |
| Refeed Fees for APT | | | | | 2,925 |
| APT (Producer) Feed Fee | 13 shows | 1 refeed | 225 | 2,925 | |
| Offline Edit | | | | | 29,325 |
| Final Cut HD Room | | 17 weeks | 1,050 | 17,850 | |
| DVC Pro HD Deck | | 17 weeks | 675 | 11,475 | |
| Narration & Announce Record | | | | | 0 |
| Voice Over Record | 13 shows | 0 hours | 0 | 0 | |
| Promos, Announce record | | 0 hours | 0 | 0 | |
| Final Dubs, Captioning | | | | | 15,990 |
| Eval - 13 shows | | 13 shows | 150 | 1,950 | |
| Dubbing for APT | | 13 shows | 300 | 3,900 | |
| Dubbing for internal | | 13 shows | 300 | 3,900 | |
| DVD show dubs | | 13 shows | 55 | 715 | |
| Legalizer | 13 show | 1 fee | 75 | 975 | |
| (includes stock) | | | | | |
| Captioning | | 13 shows | 350 | 4,550 | |
| Post Tape Stock | | | | | 4,540 |
| HD Cam Masters | 13 shows | 5 tape | 50 | 3,250 | |
| Digibeta APT/WGBH Dubs | 13 shows | 3 tape | 20 | 780 | |
| BetaSP Dubs | 13 shows | 2 tapes | 15 | 390 | |
| Digibeta  Promo tape | 2 shows | 2 tapes | 30 | 120 | |
| Other | | | | | 0 |
| Highlight reel edit | | 0 allow | 2,500 | 0 | |
| | | | | | |
| **TOTAL POST-PRODUCTION** | | | | | **56,345** |

### CONTINGENCY

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Contingency | | 1.1% of | 543,144 | 6,093 | 6,093 |
| | | | | | |
| **TOTAL CONTINGENCY** | | | | | **6,093** |

WGBH Biudget                                                                                          Page 8

| PROJECT: Rough Cut with Tommy Mac | | | |
|---|---|---|---|
| SEASON FOUR | | Date: 3/14/13 | |
| greenlight budget | | Number of shows: | |
| NATIONAL MARKETING | | Length of each show: | 30" |
| | Airdate: | TBD | Budget Life: 38 weeks |

### SUMMARY - NATIONAL MARKETING

| | | | | |
|---|---|---|---|---|
| Staff | | | | 11,256 |
| Administrative Expenses | | | | 1,300 |
| Photography | | | | 2,000 |
| Marketing Materials | | | | 600 |
| Dubbing | | | | 960 |
| Online/Wireless Promotion | | | | 500 |
| Clipping Services and Clipbooks | | | | 498 |
| Radio Tour (no radio tour) | | | | 0 |
| Total Direct Expense | | | | 17,113 |
| Indirect | | | | 3,080 |
| | 18% on | 17,113 | 3,080 | |
| | | | | |
| **TOTAL NATIONAL MARKETING** | | | | **20,194** |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 15 of 35

**EXHIBIT D - 45**

WGBH Biudget                                                                                          Page 9

| PROJECT: Rough Cut with Tommy Mac | | |
|---|---|---|
| SEASON FOUR | Date: 3/14/13 | |
| greenlight budget | Number of shows: | |
| NATIONAL MARKETING | Length of each show:  30" | |
| Airdate:    TBD | Budget Life: 38 weeks | |

## STAFF

| Description | Weeks  Period | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Staff | | | | | 11,256 |
| Account Manager | 38 weeks | 1 hr/wks | | | |
| Sr. Account Executive | 38 weeks | 4 hr/wks | | | |
| Director | 38 weeks | 1 hr/wks | | | |
| Business Manager | | 18 hours | | | |
| Vacation Accrued | | 6.6% on | | | |
| Benefits | | 28% on | | | |
| **TOTAL STAFF** | | | | | **11,256** |

## ADMINISTRATIVE EXPENSES

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Occupancy | | | | | 920 |
| Occupancy AM | 1 office | 0.22 months | 600 | 131 | |
| Occupancy AE | 1 office | 1.10 months | 600 | 657 | |
| Occupancy Director | 1 office | 0.22 months | 600 | 131 | |
| Computers | | | | | 192 |
| Computer AM | 1 computer | 0.22 months | 125 | 27 | |
| Computer AE | 1 computer | 1.10 months | 125 | 137 | |
| Computer Director | 1 computer | 0.22 months | 125 | 27 | |
| Phones | | | | | 138 |
| Phone AM | 1 phone | 0.22 months | 90 | 20 | |
| Phone AE | 1 phone | 1.10 months | 90 | 99 | |
| Phone Director | 1 phone | 0.22 months | 90 | 20 | |
| Supplies | | | | | 49 |
| Mailing supplies | | 0.22 months | 75 | 16 | |
| Subscriptions/equip | | 0.22 months | 75 | 16 | |
| Office Supplies | | 0.22 months | 75 | 16 | |
| **TOTAL ADMINISTRATIVE EXPENSES** | | | | | **1,300** |

## PHOTOGRAPHY

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Photography | | | | | 2,000 |
| Photographer Fee | | 1 day | 1,500 | 1,500 | |
| (day rate inc photo CDs, processing) | | | | | |
| Make-up Fee | | 1 day | 500 | 500 | |
| **TOTAL PHOTOGRAPHY** | | | | | **2,000** |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 16 of 35

**EXHIBIT D - 46**

WGBH Biudget                                                                 Page 10

| PROJECT: Rough Cut with Tommy Mac | | Date: 3/14/13 | | | |
| SEASON FOUR | | Number of shows: | | | |
| greenlight budget | | Length of each show:  30" | | | |
| NATIONAL MARKETING | | | | | |
| | Airdate:  TBD | | Budget Life: 38 weeks | | |

**MARKETING MATERIALS**

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Design | | | | | 500 |
| Designer | | 5 hours | 100 | 500 | |
| Postage and Handling | | | | | 100 |
| Postage | | 1 misc postage | 100 | 100 | |
| | | **TOTAL MARKETING MATERIALS** | | | **600** |

**DUBBING**

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Dubbing (from DVD) | | | | | 960 |
| DVD Dubbing (30") | 1 show(s) | 150 dub(s) | 3.00 | 450 | |
| Safety Box | | 150 pieces | 0.40 | 60 | |
| Shipping | | 150 pieces | 3.00 | 450 | |
| | | **TOTAL DUBBING** | | | **960** |

**ONLINE/WIRELESS PROMOTION**

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Online/Wireless Promotion | | | | | **500** |
| Online Advertising | | 1 fee | 500 | 500 | |
| | | **TOTAL ONLINE/WIRELESS PROMOTION** | | | **500** |

**CLIPPING SERVICES**

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Clippings | | | | | 498 |
| Express Clips | 15 clips | 11 months | 3.02 | 498 | |
| | | **TOTAL CLIPPING SERVICES** | | | **498** |

**RADIO TOUR**

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Interviews | | | | | 8,000 |
| Fee | | 1 tour | 8,000 | 8,000 | |
| Airfare | | | | | 2,100 |
| NP Staff | 1 person | 1 RT | 600 | 600 | |
| Talent | 1 person | 1 RT | 1,500 | 1,500 | |
| Ground | | | | | 300 |
| NP Staff | 1 person | 1 trip | 100 | 100 | |
| Talent | 1 person | 1 trip | 200 | 200 | |
| Meals | | | | | 175 |
| NP Staff | 1 person | 1 day | 75 | 75 | |
| Talent | 1 person | 1 day | 100 | 100 | |
| | | **TOTAL RADIO TOUR** | | | **0** |

**EXHIBIT D - 47**

WGBH Budget                                                      Page  11

| | |
|---|---|
| **PROJECT: Rough Cut with Tommy Mac** | Date: 3/14/13 |
| Season 4 | Number of shows:      13 |
| **greenlight budget** | Length of each show:    30" |
| STATION RELATIONS | |
| Airdate:        2013 | Budget Life: 48 weeks |

SUMMARY - STATION RELATIONS

| | |
|---|---:|
| Staff | 16,399 |
| Administrative Expenses | 1,517 |
| SR Marketing Materials | 600 |
| Database Management and Digital Delivery | 100 |
| Total Direct Expense | 18,616 |
| Indirect | 3,351 |
| 18% on          18,616          3,351 | |
| **TOTAL STATION RELATIONS** | **21,967** |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 18 of 35

**EXHIBIT D - 48**

WGBH Budget                                                                         Page  12

| PROJECT: Rough Cut with Tommy Mac | | |
|---|---|---|
| Season 4 | Date: 3/14/13 | |
| **greenlight budget** | Number of shows: | 13 |
| STATION RELATIONS | Length of each show: | 30" |
| Airdate:      2013 | Budget Life: 48 weeks | |

STAFF

| Description | Weeks  Period | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Staff | | | | | 16,399 |
| Account Manager | 48 weeks | 4 hr/wks | | | |
| Marketing Coordinator | 48 weeks | 3 hr/wks | | | |
| Director | 48 weeks | 0.50 hours | | | |
| Business Manager | | 12 hours | | | |
| Vacation Accrued | | 6.60% on | | | |
| Benefits | | 28% on | | | |
| **TOTAL STAFF** | | | | | **16,399** |

Staff Hours include the following activities:

* Season launch

* Collateral ( including development/implementation)

* Communications and marketing calls

* Project reports (including carriage)

* Ongoing project management and coordination

ADMINISTRATIVE EXPENSES

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Occupancy | | | | | 1,038 |
| Occupancy AM | 1 office | 1.11 months | 500 | 554 | |
| Occupancy MC | 1 office | 0.83 months | 500 | 415 | |
| Occupancy Dir | 1 office | 0.14 months | 500 | 69 | |
| Computers | | | | | 208 |
| Computer AM | 1 computer | 1.11 months | 100 | 111 | |
| Computer MC | 1 computer | 0.83 months | 100 | 83 | |
| Computer Dir | 1 computer | 0.14 months | 100 | 14 | |
| Phones | | | | | 166 |
| Phone AM | 1 phone | 1.11 months | 80 | 89 | |
| Phone MC | 1 phone | 0.83 months | 80 | 66 | |
| Phone Dir | 1 phone | 0.14 months | 80 | 11 | |
| Other | | | | | 105 |
| Trac Media/carriage | | 1.11 months | 35 | 40 | |
| Subscriptions/equip | | 1.11 months | 35 | 40 | |
| Office Supplies | | 1.11 months | 25 | 25 | |
| **TOTAL ADMINISTRATIVE EXPENSES** | | | | | **1,517** |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 19 of 35

**EXHIBIT D - 49**

WGBH Budget                                                                                    Page  13

| PROJECT: Rough Cut with Tommy Mac | | |
|---|---|---|
| Season 4 | Date: 3/14/13 | |
| **greenlight budget** | Number of shows: 13 | |
| STATION RELATIONS | Length of each show: 30" | |
| Airdate: 2013 | Budget Life: 48 weeks | |

SR MARKETING MATERIALS

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Electronic Delivery | | | | | 500 |
| HTML postcard (all interactive) | | 2 pieces | 250 | 500 | |
| Postage and Handling | | | | | 100 |
| Postage | | 1 misc | 100 | 100 | |
| | | **TOTAL SR MARKETING MATERIALS** | | | **600** |

DATA MANAGEMENT AND DIGITAL DELIVERY

| Description | Quan Type | Quan Packets | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Data Management and Digital Delivery | | | | | 100 |
| Fee | | 1 fee | 100 | 100 | |
| | | **TOTAL DATA MANAGEMENT AND DIGITAL DELIVERY** | | | **100** |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 20 of 35

**EXHIBIT D - 50**

WGBH BUDGET                                                      Page 14

| PROJECT: Rough Cut with Tommy Mac | Date: 4/9/13 | |
|---|---|---|
| SEASON FOUR | | |
| APPEARANCES | Number of shows: | 13 |
| Producer: Laurie Donnelly | Length of each show: | 30 |

Rights cleared:

**APPEARANCES: SUMMARY**

Staff                                                           6,000

Travel and Living - Shoot related                              5,450

Total Direct Expense                                           11,450

Indirect                                                        2,061

|  | 18% on | 11,450 | 2,061 |
|---|---|---|---|

**TOTAL APPEARANCES COST**                                    **13,511**

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 21 of 35

**EXHIBIT D - 51**

WGBH BUDGET                                                                           Page 15

| PROJECT: Rough Cut with Tommy Mac | Date: 4/9/13 | |
|---|---|---|
| SEASON FOUR | | |
|    APPEARANCES | | |
| | Number of shows: | 13 |
| Producer: Laurie Donnelly | Length of each show: | 30 |

## STAFF

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Staff | | | | | 6,000 |
|    Tommy Appearance Fee | 1 fee | 6 days | 1,000 | 6,000 | |

<b>TOTAL STAFF</b>     <b>6,000</b>

## TRAVEL

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Fees | | | | | 2,500 |
|    Hand-outs for Appearances | 1 allow | | 2,500 | 2,500 | |
| Travel - 1 travel day, 1 day at location (reduced - 2 trips, 3 nights ea) | | | | | 2,950 |
|    Airfare | 1 person | 2 RT | 500 | 1,000 | |
|    Hotels | 1 person | 6 days | 200 | 1,200 | |
|    Ground | 1 person | 2 trips | 100 | 200 | |
|    Excess Baggage | 1 person | 2 trips | 50 | 100 | |
|    Per Diems | 1 person | 6 days | 75 | 450 | |

<b>TOTAL TRAVEL</b>     <b>5,450</b>

**EXHIBIT D - 52**

ThomasJMacDonald.com/RoughCut site section -  Itemized Costs

| Line Item | Hard Costs |
|---|---|
| SOW Items (In Scope Work) | |
| Project Management (For Launch) | 1,100.00 |
| System Testing | 250.00 |
| 13 Project Animations | 0.00 moved to GBH side |
| Videos for 13 episodes (either teasers or full length, vodcast) | 4,200.00 |
| Behind the scenes | 800.00 |
| Social Media | 6,100.00 |
| • Provide ongoing support to National Marketing team with needed materials for distribution. | |
| • Populate iTunes and Youtube with season two and three. | |
| • Add another 13 weekly blogs in addition to the 13 show related blogs. | |
| • Working with National Marketing team, add monthly Sweepstakes give-away, if appropriate – for Rough Cut merchandise and/or to view a show taping. | |
| • Provide ongoing support to Major sponsors with needed materials for distriburion. | |
| Season 4 infrastructure (basically appending to season 3) | 3,600.00 |
| SEO/SEM | 300.00 |
| Blogging 13 weeks for show (13 blogs) | 1,825.00 |
| Total Direct | $18,175 |
| WGBH Indirect 18% | 3,272 |
| BUDGET TOTAL | 21,447 |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 23 of 35

**EXHIBIT D - 53**

WGBH BUDGET                                                          Page 17

| | |
|---|---|
| **PROJECT: Rough Cut with Tommy Mac** | Date: 4/9/13 |
| **SEASON FOUR** | |
| VODCAST PRODUCTION | |
| Producer: Laurie Donnelly | Number of shows: 13 |
| | Length of each show: 30 |

Rights cleared:

<u>VODCAST SUMMARY</u>

| | | | | |
|---|---|---|---|---|
| Staff | | | | 2,865 |
| Administration | | | | 0 |
| **Remote Shoot** | | | | **3,700** |
| Post-Production | | | | 1,725 |
| Total Direct Expense | | | | 8,290 |
| Indirect | | | | 1,492 |
| | 18% on | 8,290 | 1,492 | |
| **TOTAL VODCAST PRODUCTION COST** | | | | **9,783** |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 24 of 35

**EXHIBIT D - 54**

WGBH BUDGET

Page 18

| PROJECT: Rough Cut with Tommy Mac | Date: 4/9/13 | |
|---|---|---|
| SEASON FOUR | | |
| VODCAST PRODUCTION | | |
| Producer: Laurie Donnelly | Number of shows: | 13 |
| | Length of each show: | 30 |

**STAFF**

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Staff | | | | | 2,239 |
| Executive Producer (included in production budget) | | | | 0 | |
| Series Editor | 100% | 1 week | 2,100 | 2,100 | |
| Senior Producer (included in production budget) | | | | 0 | |
| Vacation Accrued | | 6.6% on | 2,100 | 139 | |
| Benefits | | | | | 627 |
| Benefits | | 28% on | 2,239 | 627 | |
| | | **TOTAL STAFF** | | | **2,865** |

**ADMINISTRATION**
included in production budget

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| | | | | | |
| | | **TOTAL ADMINISTRATION** | | | **0** |

**REMOTE SHOOT**
ASSUMPTIONS:

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Boston | | | | | 3,700 |
| Camera Operator | 1 days | 1 days | 1,000 | 1,000 | |
| Audio Person | 1 days | 1 days | 700 | 700 | |
| Camera Pkg | 1 days | 1 days | 650 | 650 | |
| Audio Pkg | 1 days | 1 days | 400 | 400 | |
| Lights | 1 days | 1 days | 250 | 250 | |
| Make-up person | 1 days | 1 days | 550 | 550 | |
| Tape Stock DVC-Pro HD | 1 days | 10 tapes | 15 | 150 | |
| | | **TOTAL REMOTE SHOOT** | | | **3,700** |

**POST-PRODUCTION**

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Offline Edit | | | | | 1,725 |
| Avid room | 1 shows | 1 week | 1,050 | 1,050 | |
| DVC Pro Deck | 1 shows | 1 week | 675 | 675 | |
| | | **TOTAL POST-PRODUCTION** | | | **1,725** |

**EXHIBIT D - 55**

Exhibit A-2

Season 4 Production Schedule

**EXHIBIT D - 56**

### ROUGH CUT - WOODWORKING WITH TOMMY MAC
### AS OF 04/02/2013

| EP # | DEL # | EPISODE TITLE | FIELD SHOOT | STUDIO SHOOT | EDIT START | CAPTION & EVAL | DELIVER | AIR DATE |
|---|---|---|---|---|---|---|---|---|
| | | **ROUGH CUT - WOODWORKING WITH TOMMY MAC** | | | | | | |
| 401 | 1 | Memory Box | TBD | 6/11/13 | 6/18/13 | | 7/2/13 | 9/1/13 |
| 402 | 2 | Bent Lamination Chair | TBD | 6/14/13 | 6/25/13 | | 7/9/13 | 9/8/13 |
| 403 | 3 | Tall Glass Corner Lamp | TBD | 6/18/13 | 7/2/13 | | 7/16/13 | 9/15/13 |
| 404 | 4 | Hall Table with Fed Embellish | TBD | 6/21/13 | 7/9/13 | | 7/23/13 | 9/22/13 |
| 405 | 5 | Room Divider with Rice Paper | TBD | 6/25/13 | 7/16/13 | | 7/30/13 | 9/29/13 |
| 406 | 6 | Pub Table | none | 6/28/13 | 7/23/13 | | 8/6/13 | 10/6/13 |
| 407 | 7 | Mantle Clock | TBD | 7/2/13 | 7/30/13 | | 8/13/13 | 10/13/13 |
| 408 | 8 | Dovetail Cradle | TBD | 7/9/13 | 8/6/13 | | 8/20/13 | 10/20/13 |
| 409 | 9 | Three Legged Stool | TBD | 7/12/13 | 8/13/13 | | 8/27/13 | 10/27/13 |
| | | | | 7/16/13 | | | | |
| 410 | 10 | Six Board Pine Chest | TBD | | 8/20/13 | | 9/3/13 | 11/3/13 |
| 411 | 11 | Octagonal Table with Veneer | TBD | 7/19/13 | 8/27/13 | | 9/10/13 | 11/10/13 |
| 412 | 12 | TBD | TBD | 7/23/13 | 9/3/13 | | 9/17/13 | 11/17/13 |
| 413 | 13 | Hanging Swing | none | 7/26/13 | 9/10/13 | | 9/24/13 | 11/24/13 |
| PROMO | | DUE 07/01/13 | | | | | | |
| APT CLIP | | DUE 06/15/13 | | | | | | |

Exhibit A-3

WGBH Travel and Expense Reimbursement Policy



**TRAVEL AND EXPENSE
REIMBURSEMENT POLICY**

**(for Independent Contractors working on WGBH projects)**

**EXHIBIT D - 59**

## TABLE OF CONTENTS

PAGE

INTRODUCTION                                      3

ACCEPTABLE EXPENSES                      3

UNACCEPTABLE EXPENSES                  4

AIR/TRAIN TRAVEL                              5

HOTEL/LODGING                                   5

TRANSPORTATION                               6

MEALS                                                   7

Appendix:
ADDITIONAL GUIDELINES FOR TRAVEL AND BUSINESS
EXPENSES WHEN WORKING ON PROJECTS FUNDED BY
FEDERAL GRANTS                                8

**EXHIBIT D - 60**

## INTRODUCTION

*Purpose of Policy*

This document sets forth the policies of WGBH with respect to certain business and travel expenses of independent contractors working on WGBH projects.

Please direct any questions regarding this policy to your WGBH project contact or Charles Keefe, Director of Compliance at (617) 300-3825.

## ACCEPTABLE EXPENSES

In addition to expenses for hotels, transportation, and meals, as defined in the policy, the following expenses are considered acceptable expenses for WGBH projects (with proper receipt documentation):

- Business office expenses (fax, copy service, etc.)
- Business phone calls
- Conference fees (include copy of registration form with expense report)
- Currency conversion fees
- Personal phone calls, not to exceed an average of 15 minutes per day
- Gasoline allowance for rental car (if mileage allowance not claimed)
- Mileage allowance for personal car usage per IRS rates
- Ground transportation (taxi, bus, train, subway, etc.)
- Laundry/dry cleaning/suit pressing for trips exceeding 5 days
- Luggage fees for airlines that charge for normal baggage
- Overnight delivery/postage for business purposes
- Parking and tolls for business purposes
- Tips related to business meals and travel (see guide to tipping, page 9)
- Visa/passport consulate fees for business travel
- Supplies when on site (production, conference, etc.)
- Travelers' check fees for business purposes

**Required Receipts for Reimbursement**
The traveler should include:
- A copy of the airfare itinerary or original ticket receipt
- Original folio for all lodging expenditures, regardless of amount
- Car rental agreement and detailed statement of amount paid (not estimate)
- Credit card receipts (not statements) for entertainment expenses (must include names, titles, and business purpose of meeting and detailed restaurant meal receipts)

For WGBH independent contractors who work on projects funded by grants, the independent contractor should refer to the terms of the grant agreement for further information on acceptable expenses.  For independent contractors that work on projects funded by federal funds, the independent contractor should also refer to the Appendix to this policy for special requirements applicable to these types of grants.

## UNACCEPTABLE EXPENSES

Travelers **will not** be reimbursed for the following expenses:

- Alcohol; see the Appendix re: travel and expenses for projects funded by federal grants
- Airline club membership dues and other award programs
- Annual fees for personal credit card used for travel purposes
- Airline upgrades
- Car rental upgrades or GPS systems
- Auto repairs
- Child care services
- Barbers, hairdressers, clothing, or toiletry items
- Baggage fees associated with personal items such as skis, golf equipment, etc.
- Portion of meals for conference where meals are part of registration
- Health club/resort fees, gym, or recreational fees
- Corporate card delinquency fees or finance charges
- Expenses related to vacation or personal days taken before, during, or after a business trip
- Laundry or dry cleaning services for travel of fewer than 5 consecutive days
- Valet service (unless mandatory at the location)
- Loss or theft of cash or airline tickets
- Loss or theft of personal funds or property
- Lost baggage or associated costs (losses covered by airlines)
- Luggage, briefcases
- Magazines, books, or personal reading materials
- Medical expenses incurred while traveling, except for business-related injury or accident (medical services covered by insurance)
- Mini-bar/ in-room refreshments (non-alcoholic only may be meal expense)
- Movies (including in-flight and hotel in-house)
- "No show" charges for hotel or car service
- Optional personal travel or baggage insurance
- Parking tickets or traffic violations
- Personal entertainment, including sports events
- Personal telephone calls in excess of reasonable calls home, as defined in the "Acceptable Expenses" section
- Pet care
- Spa services, shoe shines
- Personal guest travel and expenditures
- Souvenirs, personal gifts (except in lieu of lodging)

**AIR/TRAIN TRAVEL**

**Air Travel**

All air travel is restricted to coach class or to the least expensive airfare available, unless circumstances prevent it. It is WGBH's policy not to cover the cost of business class travel, even for international flights, except under extraordinary circumstances. Independent contractors wishing to travel in business class travel outside North America under such unusual circumstances must obtain prior written approval from WGBH's Accounting office.  When traveling on a federally-funded project (see Appendix), travelers must book the lowest coach class airfare available, and travel may only be on approved airlines (generally American-owned carriers).

First class travel is prohibited for all destinations unless pre-approved by WGBH's Accounting office. First class travel is not allowed for federally-funded projects.

Travelers attending a conference are strongly encouraged to consider multiple-stop fares as time allows, and should review the conference registration forms for details regarding discount airfare and hotel rate made available through the agency of the conference.

The use of personal aircraft is not allowed for WGBH business travel.

**Train Travel**

Out-of-town train travel is restricted to coach class or its equivalent.  First class or business class train travel is not allowed under WGBH policy.  For rail travel only, if coach class is not available due to the type of train, business class is acceptable.  This fact should be documented.  First class rail travel is not acceptable in any circumstances.

**HOTEL/LODGING**

Independent contractors working on WGBH projects who are required to stay overnight when traveling for WGBH project purposes should stay in a standard, business-class, single room in a non-luxury hotel. Suite or luxury accommodations are not acceptable unless pre-approved by WGBH's Accounting office, or unless no other rooms are available.  Approved supporting documentation should be submitted.

Hotel rates in major cities (Chicago, Los Angeles, San Francisco, Washington, DC) may not exceed $250 per night, excluding taxes. New York rates may not exceed $400 per night, October through December; $300 all other months. Please note: WGBH is exempt from some hotel taxes in New York, and a tax- exempt certificate for the state of New York (available from the Accounting office) should be provided upon check-in.

It is the responsibility of the traveler to notify either the hotel to cancel a room reservation. Travelers should request and record the cancellation number in case of billing disputes.  "No show" charges are unacceptable expenses and will not be reimbursed.

Original hotel paid folio receipts must be retained.  If a business trip exceeds 5 days, laundry, dry cleaning, and pressing services are acceptable when reasonable and receipts are retained.

Reasonable gratuities to porters and bellmen are acceptable:
- Bellmen: $2 per bag
- Housekeeping:  $2 per night
- Cabs: 15-18% of fare
- Porters: $2-$3 per bag

Note: When traveling on a federally-funded project, tokens of appreciation are not allowable (see Appendix regarding federal grant travel and business expenses)

WGBH independent contractors who travel with persons not tied to the purpose of the business trip are expected to pay all incremental costs associated with the guests' travel, including transportation costs, additional lodging expenses, if any, meal expenses, and registration fees.


**TRANSPORTATION**

**Automobile Rental**
Car rental should be limited to situations where public transportation would not be practical or economical.  A compact to mid-size car is considered adequate for general transportation, but larger vehicles may be rented if required for the number of passengers or equipment being transported. Approval for a larger car should be obtained from your WGBH project contact and documented as to the reason a larger car is required.  A car to be used for more than a few days should be contracted at the most economical weekly rate available. Independent contractors traveling to the same destination should make every effort to share automobile rentals whenever possible.

Gas tanks should be filled prior to returning cars to rental agencies to avoid refueling charges, which may be billed at as much as $5 per gallon or more. Cars should be returned on time to avoid additional hourly charges.

**Allowance for Personal Auto**
An acceptable fee for use of a personal car for WGBH business is the current IRS reimbursement rate (55.5 cents per mile as of July 1, 2011) for the most direct route to and from the business destination.  (This rate is subject to change, and WGBH will notify independent contractors of any change.)  Independent contractors on WGBH projects must keep track of the origin and destination of such trips and total number of miles driven. Costs incurred for parking and tolls are acceptable and receipts should be retained for all auto expenses.

Unacceptable transportation expenses include:
- Car repairs
- Rental car costs during repair of personal car
- Tickets, fines, or traffic violations incurred while driving a car for  business purposes or for commuting to work

**Public Transportation**
Business travel expenses for public transportation or taxis within the local area are acceptable. Travelers should note the origination and destination of each portion of such trips.

**Taxi Service**
Taxi fares paid out of pocket are acceptable and receipts should be retained. Taxis are not authorized for routine commuting to and/or from work.

**Car Services**
Car services are more expensive than taxis and should not be used.  Use of car services should be limited to talent/VIP purposes only and requires pre-approval by WGBH.

**MEALS**

Meals are defined as food or beverage while on working on a WGBH project. Meals also include food items consumed during a hotel stay.

**Expense Limits**
Independent contractors working on WGBH projects must retain original detailed receipts for personal meal expenses.  Meal expenses per day, including tax and gratuity should not exceed $75. (For New York, San Francisco, and Los Angeles an additional $20 per day is reimbursable.)

The individual daily meal allowance (including snacks and non-alcoholic refreshments) is not to exceed the **daily spending limit of  $75**.  Individuals performing work for projects funded by federal grants should refer to the Appendix for additional restrictions.

**Receipt Requirements**
Receipts are required for individual meals.

**EXHIBIT D - 65**

**APPENDIX:  ADDITIONAL GUIDELINES FOR TRAVEL AND BUSINESS EXPENSES WHEN WORKING ON PROJECTS FUNDED BY FEDERAL GRANTS**

Independent contractors charging expenses to projects funded by federal grant funds should be cognizant of the special requirements and limitations related to expenses charged to federal grants. These policies are in addition to the WGBH travel and expense policies, and expenses need to be in compliance with both policies.

A.    All expenses are subject to review by the grant's Grant Manager.

B.    The independent contractor and the Supervisor/Manager approving the expense are responsible for ensuring each expense is allowable by the terms of the grant, OMB circular A110 and OMB Circular A-122.  OMB Circular A-110 sets forth standards for obtaining consistence and uniformity among Federal agencies in the administration of grants to agreements with the institutions of higher education, hospitals, and other non-profit organizations.  OMB Circular A-122 establishes principles of determining costs of grants, contracts and other agreements with non-profit organizations.

C.    Every expense item must be supported by a detailed receipt, regardless of amount. A credit card statement is not an acceptable form of receipt

D.    Expenses associated with the purchase of alcoholic beverages, gifts or contributions, donations and entertainment are not acceptable expenses and may not be charged to federal grants.  To provide positive proof that meal expenses do not include charges for alcohol, detailed receipts with proof of payment  (listing of items included in the total) must be submitted for meal expenses.

E.    OMB Circular A-110 discourages grant recipients (WGBH) from purchasing unnecessary items and incurring meal expenses when not traveling on grant related business, with federal grant funds.  Local lunches, and dinners that are not deemed necessary are not acceptable expenses.  Additionally, entertainment costs such as the cost of amusement, diversion, social activities (including "wrap parties" or other project completion celebratory events), ceremonials, and costs relating thereto, such as meals lodging rentals, transportation and gratuities are unallowable.



K2011001208

**EXHIBIT D - 66**

as of April 1, 2015

**WGBH**
One Guest Street
Boston, MA 02135
617 300 4349 tel
617 300 1014 fax
wgbh.org

**Legal and Business
Affairs**



Mr. Thomas J. MacDonald
Tommy Mac Enterprises, Inc.
28 Draper Lane
Canton, Massachusetts  02021

Re:  <u>Second Amendment to Project Participation Agreement (WGBH #K201100120)</u>

Dear Mr. MacDonald:

This letter will serve as the Second Amendment of the Project Participation Agrement between Thomas J. MacDonald Fine Furniture, Inc. ("Company") and the WGBH Educational Foundation ("WGBH") dated January 20, 2011, as amended (the "Agreement").  Unless otherwise provided herein, all capitalized terms shall be as defined in the Agreement.

Notwithstanding anything to the contrary contained in the Agreement, WGBH and Company agree as follows:

1.      In accordance with Paragraph 5 of the Agreement, the Term of the Agreement is extended to cover a sixth broadcast season for the Series ("Season 6") and, to the extent provided in Paragraph 3 below, a seventh broadcast season for the Series ("Season 7").  Any Programs produced for Season 6 or Season 7 shall be considered "Program(s)" under the Agreement.

2.      WGBH and Company shall collaborate to produce Season 6 in accordance with the Agreement, subject to the following:

        (a)      the Production Budget and Production Schedule for Season 6 are set forth on **Exhibits B-1** and **B-2**, respectively;

        (b)      MacDonald's fee under the Host Agreement (the "Host Fee") for Season 6 shall be six thousand dollars ($6,000) per Program for thirteen (13) Programs - a total of seventy-eight thousand dollars ($78,000);

        (c)      WGBH represents that it entered into an Underwriting Agreement with Woodcraft Supply, LLC ("Woodcraft") dated July 15, 2013 for the funding of Season 6 (the "Woodcraft Agreement").  Under the Woodcraft Agreement, Woodcraft has the right to sell "sub-sponsorships" for Season 6 up to a total of three hundred forty thousand dollars ($340,000). WGBH and Company have the right to seek Additional Funding for Season 6, subject to the following:

                (i)  the rights of Woodcraft under the Woodcraft Agreement, including, without limitation, Woodcraft's "Category Exclusivity" requirements;

                (ii)  all funders, and the terms of any agreements with funders, shall be subject to the mutual approval of WGBH and MacDonald, which shall not be unreasonably withheld; and

(iii)      WGBH shall collect all Additional Funding for Season 6 (the "Season 6 Additional Funding") and allocate it as follows:

(A)     fifty percent (50%) of the Season 6 Additional Funding to Company as a fee for MacDonald's Services as a consultant and as Executive Producer of Season 6 (the "Consulting Fee"). The Consulting Fee shall not exceed forty-six thousand dollars ($46,000) so as to ensure the total compensation to Company for Season 6 (the Consulting Fee, the Host Fee referred to in Paragraph 2(b) above, and the Trade Show Appearance Fee referred to in Paragraph 2(e) below) shall not exceed one hundred thirty thousand dollars ($130,000);

(B)     fifty percent (50%) of the Season 6 Additional Funding to cover production costs for Season 6 of the Series as WGBH shall determine after consultation with Company;

(C)     if the Season 6 Additional Funding exceeds the amount required to pay Company the maximum Consulting Fee and cover all of WGBH's costs for Season 6, then WGBH shall apply such funding overages as provided in Paragraph 8(b)(iii) of the Agreement;

(d)     WGBH shall pay Company a fee for the use of the Workshop during Season 6 as set forth in the Production Budget referred to in Paragraph 2(a) above;

(e)     Company shall cause MacDonald to make personal appearances at a maximum of two (2) trade shows for Woodcraft during the Term for Season 6, up to three (3) days per trade show for a total of up to six (6) days (the "Trade Show Appearances"). Promptly following Company's fulfillment of its obligations in respect to the Trade Show Appearances, but in any event by no later than December 31, 2015 whether or not Woodcraft requires MacDonald to make any such trade show appearances, WGBH shall pay Company, and Company shall accept as full compensation therefor, six thousand dollars ($6,000) (the "Trade Show Appearance Fee"). In addition, WGBH shall reimburse Company for all reasonable travel expenses incurred by Company in respect to the Trade Show Appearances, provided that (i) Company submits to WGBH substantiated invoices and original receipts, and (ii) such expenses are approved in writing by WGBH. Company shall submit invoices for approval by WGBH no later than sixty (60) days after the date incurred by Company. All travel expenses incurred by Company in connection with the Trade Show Appearances shall be subject to the WGBH Travel and Expense Reimbursement Policy referred to in Paragraph 2(e) of the First Amendment of the Agreement dated April 1, 2013;

(f)     MacDonald shall have the right to participate in speaking engagements and/or other appearances (the "MacDonald Outside Activities"), provided such Activities:

(i)     shall not conflict with the interests and rights of Woodcraft and/or any other funders of Season 6, nor shall such Activities constitute an endorsement of any funder and/or its products and/or services;

(ii)     shall comply with applicable rules and regulations of the FCC, APT and WGBH; and

(iii)     shall be subject to WGBH's prior written approval, which shall not be unreasonably withheld;

(g)     As part of the MacDonald Outside Activities, MacDonald may make appearances at Woodcraft's franchise stores (the "Franchise Appearances") for a fee of one thousand five hundred dollars ($1,500) for each Franchise Appearance, unless another amount is approved by WGBH and Woodcraft. The details of such Franchise Appearances, including any possible reimbursement of Company/McDonald's travel expenses, shall be arranged separately by Company/MacDonald and each franchise store, and WGBH shall have no obligations, financial or otherwise, in connection

therewith.  Company/MacDonald shall provide the franchise stores with a standardized list of travel and accommodation requirements for the purposes of arranging any such travel reimbursements;

(h)      Subject to Company's fulfillment of its obligations hereunder, MacDonald shall receive credit as an "Executive Producer" on each Season 6 Program (the "Credit").  The format, order, prominence, and duration of all credits on the Project shall be determined by WGBH in its sole discretion.  No casual or inadvertent failure of WGBH or others to include the Credit shall constitute a breach by WGBH of this Agreement;

(i)      Company, WGBH and PBSd shall consult concerning strategies for developing and exploiting Related Materials, such as design plans, DVDs, merchandise, t-shirts, caps, and calendars.  The terms of such arrangements shall be subject to the mutual approval of Company, WGBH and PBSd, which shall not be unreasonably withheld; and

(j)      Company shall have the right to manufacture and sell furniture based on projects designed for the Series, and authorize others to do so, provided Company shall pay WGBH fifty percent (50%) of Company's "net revenues" derived therefrom in substantially the same manner, and subject to the same accounting obligations of Company and audit rights of WGBH, as set forth in Exhibit F of the Agreement in respect to WGBH's payment to Company of a share of Net Proceeds.

3.      WGBH shall have the exclusive option (the "Season 7 Option") to extend the Term for Season 7.  WGBH shall notify Company in writing by no later than December 31, 2015 of its exercise of the Season 7 Option.  Commencement of production of Season 7 shall be subject to sufficient funding as described in Paragraph 3(a) of the Agreement.  If WGBH exercises the Season 7 Option, then:

(a)      WGBH and Company shall use their reasonable best efforts to raise funding to produce Season 7 in accordance with Paragraph 3(a) of the Agreement.  Company shall keep WGBH informed on a timely basis of Company's fundraising efforts for Season 7, and shall not submit any funding proposals or enter into any agreements concerning the Project without WGBH's prior written approval, which shall not be unreasonably withheld.  Each of WGBH and Company shall mutually approve, and perform in accordance with, the terms of any agreements with any funder(s), including, without limitation, with respect to "client services";

(b)      WGBH shall consult with Company and prepare a preliminary anticipated production budget for Season 7 (the "Season 7 Preliminary Budget") by no later than March 31, 2016.  If sufficient funding to cover fully the Season 7 Preliminary Budget is secured by no later than July 1, 2016, then WGBH shall produce Season 7 and Company/McDonald shall render services for Season 7 in accordance with this Agreement.  WGBH shall determine the final production budget, including changes resulting from any Season 7 Additional Funding as described in Paragraph 3(b)(iii) below (individually and collectively, the "Season 7 Production Budget"), subject to the following:

(i)      the Season 7 Production Budget shall include compensation for Company and/or MacDonald that includes at a minimum the applicable Host Fee (which amount per Program shall be not less than the Host Fee payable for Season 6);

(ii)      the Season 7 Production Budget shall include at a mimimum sixteen thousand dollars ($16,000) to pay for a Shop Assistant (which amount represents $20 per hour, 40 hours per week, for 20 weeks) (or a proportionately lower amount in the unlikely event Season 7 includes fewer than thirteen (13) Programs);

(iii)     if the total funding for Season 7 exceeds four hundred eighty-six thousand dollars ($486,000) (with any excess constituting the "Season 7 Additional Funding"), then WGBH shall pay Company a Consulting Fee for MacDonald's services as a consultant and an Executive Producer of Season 7, as follows:  (A) the initial six thousand dollars ($6,000) of Season 7 Additional Funding; and (B) fifty percent (50%) of any subsequent Season 7 Additional Funding until Company receives total compensation for Season 7 (including, without limitation, the Host Fee and Consulting Fee) of one hundred thirty thousand dollars ($130,000).  WGBH shall use the Season 7 Additional Funding that remains after payment to Company of such Consultant Fee to cover production costs for Season 7 as WGBH shall determine after consultation with Company, provided that:  (C) such Funding shall be used first to cover any amounts that may be required to cover additional costs for any Shop Assistant(s) as reasonably approved by WGBH and Company, which approval shall not be unreasonably withheld; and (D) if the Season 7 Additional Funding exceeds the amount required to cover all of WGBH's costs for Season 7 (including, without limitation, payments to Company hereunder), then WGBH shall apply such funding overages as provided in Paragraph 8(b)(iii) of the Agreement;

(iii)     if the total funding for Season 7 is less than the total funding for Season 6, then, subject to Paragraphs 7(b)(i) and (ii) above, WGBH shall make adjustments to the production plans for Season 7 so as to allow production of Season 7 pursuant to such reduced budget as WGBH shall determine after consultation with Company, which adjustments may include, without limitation, any or all of the following:  reduction or elimination of travel and/or guests; reduction or elimination of costs for MacDonald's "wardrobe"; reduction of Shop Assistant(s) (in which case MacDonald may be responsible for rendering certain woodworking services as otherwise would have been rendered by such Shop Assistant[s]); replacement of outside director with WGBH in-house director (e.g., Laurie Donnelly); and use of one (1) camera rather than two (2) cameras; and

(iv)     WGBH and Company shall consider in good faith whether the Season 7 Production Budget should provide for Company to assume responsibility for paying directly any Shop Assistant(s) from production funding to be paid by WGBH to Company; and

(c)     WGBH acknowledges that Company shall be represented by Ken Fishkin for purposes of exercising its consultation rights under this Paragraph 3.

4.     Notwithstanding anything to the contrary contained in this Agreement, WGBH shall pay Company the amounts provided in the Production Budget for Season 6 to cover MacDonald's "Wardrobe Costs" within thirty (30) business days after the execution of this Second Amendment. Company shall (a) provide WGBH with receipts evidencing such Wardrobe Costs promptly after they are incurred but no later than August 31, 2015, and (b) promptly refund to WGBH that portion of such Wardrobe Costs that are so paid by WGBH but not incurred by Company as evidenced by such date as described above (if any).

5.     Company and MacDonald represent that Tommy Mac Enterprises, Inc. is the successor-in-interest to Thomas J. MacDonald Fine Furniture, Inc. in respect to all rights and obligations under the Agreement.

6.     Except as provided herein, all other terms and conditions of the Agreement (as previously amended) shall remain in full force and effect.

Amendment to Project Participation Agreement
"Rough Cut: Woodworking with Tommy Mac"
Page 5 of 25

**EXHIBIT D - 70**

Please confirm your acceptance of the above terms and conditions by signing both original copies of this Second Amendment and returning them to WGBH. A fully executed original will be returned to you.

ACCEPTED and AGREED TO effective as of the date first set forth above:

WGBH Educational Foundation

By: _Sue Kantrowitz_

Susan L. Kantrowitz
Vice President and General Counsel

Date Signed: _5/4/15_

Tommy Mac Enterprises, Inc.

By: _Thomas J. MacDonald_

Title: _President_

Date Signed: _4-21-15_

Federal Tax ID#: _203136294_

ACCEPTED and AGREED TO insofar as this Agreement Applies to it:

Public Media Distribution, LLC ("PBSd")

By: _David Bernstein_

David Bernstein
Co-President

Date Signed: _5/1/15_

I have read and understand the Agreement and agree to perform the services, grant the rights and otherwise abide by the terms of this Amendment. I represent that I have the right to enter into this Agreement and to provide my services and grant such rights. I will look solely to Company for payment of my compensation in connection with such services and grant of rights.

Thomas J. MacDonald

By: _Thomas J. MacDonald_

Date Signed: _4-21-15_

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 6 of 23

**EXHIBIT D - 71**

<u>Exhibits</u>

Exhibit B-1      Season 6 Production Budget

Exhibit B-2      Season 6 Production Schedule

Amendment to Project Participation Agreement/
"*Rough Cut: W*oodworking with Tommy Mac"
Page 7 of 23

**EXHIBIT D - 72**

Exhibit B-1

Season 6 Production Budget

**EXHIBIT D - 73**

| | |
|---|---|
| **PROJECT: Rough Cut with Tommy Mac**<br>SEASON SIX | Date: February 20, 2015 |
| Producer: Laurie Donnelly | Number of shows:         13<br>Length of each show:     30 |

ASSUMPTIONS:  13 episodes

## PROJECT SUMMARY

| | |
|---|---|
| PRODUCTION | 620,548 |
| STATION RELATION (no system event) | 23,563 |
| NATIONAL MARKETING (no radio tour) | 13,395 |
| WEB SITE | 27,494 |
| STATION FINDER | 5,000 |
| **TOTAL PROJECT COST** | **690,000** |

| | |
|---|---|
| **FUNDING** | **690,000** |
| CONFIRMED | 690,000 |
| Woodcraft Supply, LLC | 685,000 |
| Rollover Season Five | 5,000 |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 9 of 23

# EXHIBIT D - 74

| PROJECT: **Rough Cut with Tommy Mac**<br>SEASON SIX<br>PRODUCTION<br>Producer: Laurie Donnelly | Date: February 20, 2015 | |
|---|---|---|
| | Number of shows:<br>Length of each show: | 13<br>30 |

NP Reviewed 2/12/15
Rights cleared:  4 in 3; HV; Foreign - all covered in host fee

## PRODUCTION SUMMARY

| | |
|---|---:|
| Staff | 198,567 |
| Administration | 16,586 |
| Workshop Fees | 26,520 |
| Talent and Script | 91,288 |
| Staff - Appearances | 6,000 |
| Travel and Living - Appearances | 10,950 |
| Travel and Living - Studio Six - Woodcraft | 4,376 |
| Travel and Living - Shoot related | 13,945 |
| Remote Shoot | 19,790 |
| Studio Shoot | 68,080 |
| Scenics, Props, Wardrobe | 11,150 |
| Music | 1,500 |
| Graphics, Animation | 0 |
| Post-Production | 45,982 |
| Contingency | 11,153 |
| | |
| Total Direct Expense | 525,888 |
| Indirect | 94,660 |

18% on     525,888     94,660

| TOTAL PRODUCTION COST | 620,548 |
|---|---:|

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 10 of 23

## STAFF

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| **Staff** | | | | | | | 109,248 |
| Executive Producer (LD) | 12% | | 30 | weeks | 3,624 | 13,048 | |
| Senior Program Producer (AA) | 30% | | 30 | weeks | 1,953 | 17,573 | |
| Series Editor (SS) | 100% | | 23 | weeks | 2,020 | 46,460 | |
| Asst. Editor (SB) | 25% | | 30 | weeks | 1,100 | 8,250 | |
| Production Assistant (TBD) | 40% | | 30 | weeks | 883 | 10,591 | |
| Coordinating Producer (NP) | 5% | | 30 | weeks | 1,775 | 2,662 | |
| Business Manager (TM) | 10% | | 30 | weeks | 1,300 | 3,900 | |
| Vacation Accrued | 6.6% | on | | | 102,484 | 6,764 | |
| **Benefits** | | | | | | | 30,589 |
| Benefits | | | 28% | on | 109,248 | 30,589 | |
| **Freelance** | | | | | | | 16,200 |
| Director | 100% | | 9 | shows | 1,800 | 16,200 | |
| **Tommy Mac Staff** | | | | | | | 42,530 |
| Shop Assistants | 100% | | 9 | shows | 250 | 2,250 | |
| Guest Contributor | 100% | | 6 | shows | 2,000 | 12,000 | |
| Steve Brown/Consultant | 100% | | 3 | episodes | 3,200 | 9,600 | |
| Tommy Mac Assist | 100% | | 7 | episodes | 2,000 | 14,000 | |
| Jesse animations | 100% | | 13 | episodes | 360 | 4,680 | |
| **TOTAL STAFF** | | | | | | | 198,567 |

## ADMINISTRATION
Producer will be offsite, so no occ

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| | | | | | | | 16,586 |
| Occupancy | | | 8.5 | ppl/mo | 450 | 3,830 | |
| Computer | | | 8.5 | ppl/mo | 125 | 1,064 | |
| Telephone | | | 8.5 | ppl/mo | 75 | 638 | |
| Office Supplies | | | 8.5 | ppl/mo | 100 | 851 | |
| Postage and Freight | | | 8.5 | ppl/mo | 200 | 1,702 | |
| Award Submissions | | | 1 | allow | 5,000 | 5,000 | |
| E&O Insurance | | | 1 | allow | 0 | 0 | |
| Production Insurance | | | 1 | allow | 3,800 | 3,500 | |
| **TOTAL ADMINISTRATION** | | | | | | | 16,586 |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 11 of 23

# EXHIBIT D - 76

## WORKSHOP FEES

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| Co-Production/Acquisition | | | | | | | 26,520 |
|    Tommy Admin Expense | | | 24 | weeks | 1,105 | 26,520 | |
|    Season 6 Workshop Fee | | | | | | | |

**TOTAL WORKSHOP FEES**     **26,520**

## TALENT AND SCRIPT
Tommy Overscale will cover home-vid/AV, not clearing foreign

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| Talent | | | | | | | 91,288 |
|    Host | | | 13 | shows | 6,000 | 78,000 | |
|    Funder Announcer | | | 1 | announce | 1,180 | 1,180 | |
|    Benefits - Funder Announcer | | | 28.00% | on | 1,180 | 330 | |
|    Benefits - Host (LO) | | | 15.1% | on | 78,000 | 11,778 | |

**TOTAL TALENT AND SCRIPT**     **91,288**

## STAFF - Appearance (Tommy)

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| Staff | | | | | | | 6,000 |
|    Tommy Appearance Fee | 1 | fee | 6 | days | 1,000 | 6,000 | |

**TOTAL STAFF**     **6,000**

## TRAVEL - Appearances (Tommy)

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| Fees | | | | | | | 7,500 |
|    Hand-outs for Appearances | 1 | allow | | | 2,500 | 2,500 | |
|    Party at Woodcraft Event | 1 | allow | | | 5,000 | 5,000 | |
| Travel - 1 travel day, 1 day at location | | | | | | | 3,450 |
|    Airfare | 1 | person | 2 | RT | 600 | 1,200 | |
|    Hotels | 1 | person | 6 | days | 250 | 1,500 | |
|    Ground | 1 | person | 2 | trips | 100 | 200 | |
|    Excess Baggage | 1 | person | 2 | trips | 50 | 100 | |
|    Per Diems | 1 | person | 6 | days | 75 | 450 | |

**TOTAL TRAVEL - Apperances**     **10,950**

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 12 of 23

**EXHIBIT D - 77**

### TRAVEL AND LIVING - Laurie, Anne to Woodcraft (Tommy covered in appearances)

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| Administrative | | | | | | | 4,376 |
| Airfare | 2 | people | 1 | RT | 600 | 1,200 | |
| Hotels | 2 | people | 4 | days | 250 | 2,000 | |
| PerDiem/Meals | 2 | people | 4 | days | 72 | 576 | |
| Ground - Rental Car | 2 | people | 2 | trips | 150 | 600 | |
| | | | | | | | |
| **TOTAL TRAVEL Woodcraft** | | | | | | | **4,376** |

### TRAVEL - LA ONLY (assumes 4: TM, LD, PA, DP) - local audio,local second camera, local make-up

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| Travel - LA | Travel Tommy, Laurie, John Baynard, Anne | | | | | | 11,670 |
| Airfare - Host | 1 | people | 1 | RT | 1,000 | 1,000 | |
| Airfare - LD, PA, DP | 3 | people | 1 | RT | 750 | 2,250 | |
| Hotels | 4 | people | 5 | days | 250 | 5,000 | |
| Ground - to/from home city | 1 | allow | 2 | trips | 100 | 200 | |
| Van Parking | 1 | allow | 2 | allow | 250 | 500 | |
| Rental Van | 2 | locations | 1 | allow | 750 | 1,500 | |
| Per Diems | 4 | people | 5 | days | 36 | 720 | |
| Excess Baggage | 4 | people | 1 | allow | 125 | 500 | |
| Travel - Local | | | | | | | 2,275 |
| Ground | 7 | people | 13 | trips | 25 | 2,275 | |
| | | | | | | | |
| **TOTAL TRAVEL - Shoot** | | | | | | | **13,945** |

### REMOTE SHOOT
ASSUMPTIONS:  (3 LA travel days, plus 5 local shoot days)

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| Boston & LA | | | | | | | 19,790 |
| Camera Operator | 7 | days | 1 | shoot | 900 | 6,300 | |
| Camera Pkg | 7 | days | 1 | shoot | 500 | 3,500 | |
| Audio Person | 4 | days | 1 | shoot | 500 | 2,000 | |
| Audio Pkg | 4 | days | 1 | shoot | 300 | 1,200 | |
| Lights | 7 | days | 1 | package | 500 | 3,500 | |
| P2 cards / drives | 7 | days | 1 | allow | 250 | 1,750 | |
| Craft Services/Lunch | 7 | days | 11 | people | 20 | 1,540 | |
| | | | | | | | |
| **TOTAL REMOTE SHOOT** | | | | | | | **19,790** |

**EXHIBIT D - 78**

**STUDIO SHOOT**
ASSUMPTIONS:  9 shows in Canton studio, 1 Santa Rosa, 1 Santa Barbara, 2 Canterbury, NH 1 studio shoot per
   show, plus 1 extra days for pick-ups, tracks & opens

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| | | | | | | | 68,080 |
| Director of Photography/Dir | 2 | person | 14 | days | 900 | 25,200 | |
| Camera Pkg | 2 | pkg | 14 | days | 500 | 14,000 | |
| Audio Person | 1 | person | 14 | days | 500 | 7,000 | |
| Audio Pkg | 1 | pkg | 14 | days | 300 | 4,200 | |
| Lights | 1 | allow | 14 | days | 900 | 12,600 | |
| P2 cards / drives | 8 | days | 1 | allow | 250 | 2,000 | |
| Craft Services/Lunch | 11 | people | 14 | days | 20 | 3,080 | |

TOTAL STUDIO SHOOT                                        68,080

**SCENICS, PROPS, WARDROBE**
   assumes 9 studio days - 4 field shoot days

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| Scenery & Props | | | | | | | 1,350 |
| Props Purchase/Rental | | | 9 | shows | 150 | 1,350 | |
| Wardrobe & Makeup | | | | | | | 9,800 |
| Makeup & Hair Artist | | | 13 | days | 600 | 7,800 | |
| Wardrobe Purchase | | | 1 | allow | 2,000 | 2,000 | |

TOTAL SCENICS, PROPS, WARDROBE                           11,150

**MUSIC**

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| Music | | | | | | | 1,500 |
| Series Theme Music | | | 1 | update | 0 | 1,500 | |

TOTAL MUSIC                                              1,500

**GRAPHICS, ANIMATION**

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| Series Open and Show Branding | | | | | | | 0 |
| Show Branding | | | 1 | allow | 0 | 0 | |

TOTAL GRAPHICS, ANIMATION                                0

## POST-PRODUCTION

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| Offline Edit | | | | | | | 21,850 |
|    Final Cut HD Room | | | 23 | weeks | 750 | 17,250 | |
|    DVC Pro HD Deck | | | 23 | weeks | 200 | 4,600 | |
| Final Dubs, Captioning, DVS, Eval and Tape Stock | | | | | | | 15,512 |
|    Eval 13 eps | | | 13 | shows | 75 | 975 | |
|    Legalizing | | | 13 | shows | 0 | 0 | |
|    DVD show dubs | 13 | shows | 1 | DVDs | 35 | 455 | |
|    HDCam Tape Stock | 13 | shows | 3 | tapes | 28 | 1,091 | |
|    Digibeta Tape Stock | 13 | shows | 1 | tapes | 14 | 177 | |
|    Promo tape stock | | | 2 | tapes | 28 | 56 | |
|    HDCam Master Dubs | 13 | shows | 3 | dubs | 125 | 4,875 | |
|    Digibeta Master Dubs | 13 | shows | 1 | dubs | 76 | 988 | |
|    Hard Drives | | | 1 | allow | 850 | 850 | |
|    Captioning | | | 13 | shows | 465 | 6,045 | |
| APT Fees | | | | | | | 8,620 |
|    APT (Producer) Feed Fee | 13 | shows | 2 | fee | 300 | 7,800 | |
|    Revenue Share | | | 1 | allow | 300 | 300 | |
|    Website Product Offer | | | 1 | allow | 520 | 520 | |

**TOTAL POST-PRODUCTION**      **45,982**

## CONTINGENCY

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| Contingency | | | 2.2% | of | 514,735 | 11,154 | 11,153 |

**TOTAL CONTINGENCY**      **11,153**

**EXHIBIT D - 80**

| PROJECT: Rough Cut with Tommy Mac<br>    SEASON SIX<br>    STATION RELATIONS<br>Producer: Laurie Donnelly | Date: February 20, 2015 | |
|---|---|---|
| | Number of shows: | 13 |
| | Length of each show: | 30 |

### SUMMARY - STATION RELATIONS

| | | | | |
|---|---|---|---|---|
| Staff | | | | 18,030 |
| Administrative Expenses | | | | 1,839 |
| Database Management and Digital Delivery | | | | 100 |
| Total Direct Expense | | | | 19,969 |
| Indirect | | | | 3,594 |
| | 18% on | 19,969 | 3,594 | |

| | | |
|---|---|---|
| | **TOTAL STATION RELATIONS** | 23,563 |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 16 of 23

# EXHIBIT D - 81

## STAFF

| Description | Weeks | Period | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| Staff | | | | | | | 18,030 |
| Senior Account Manager | 48 | weeks | 4 | hr/wks | 37 | 7,116 | |
| Marketing Coordinator | 48 | weeks | 3 | hr/wks | 26 | 3,733 | |
| Senior Director | 48 | weeks | 0.50 | hours | 80 | 1,920 | |
| Business Manager | | | 12 | hours | 37 | 444 | |
| Vacation Accrued | | | 6.6% | on | 13,214 | 872 | |
| Benefits | | | 28% | on | 14,086 | 3,944 | |
| | | | | | | | |
| **TOTAL STAFF** | | | | | | | **18,030** |

Staff Hours include the following activities:

* Season launch
* Collateral ( including development/implementation)
* Communications and marketing calls
* Project reports (including carriage)
* Ongoing project management and coordination

## ADMINISTRATIVE EXPENSES

| Description | Quan | Type | Quan | Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| Occupancy | | | | | | | 1,246 |
| Occupancy SAM | 1 | office | 1.11 | months | 600 | 664 | |
| Occupancy MC | 1 | office | 0.83 | months | 600 | 498 | |
| Occupancy Sr. Director | 1 | office | 0.14 | months | 600 | 83 | |
| Computers | | | | | | | 280 |
| Computer SAM | 1 | computer | 1.11 | months | 135 | 149 | |
| Computer MC | 1 | computer | 0.83 | months | 135 | 112 | |
| Computer Sr. Director | 1 | computer | 0.14 | months | 135 | 19 | |
| Phones | | | | | | | 208 |
| Phone SAM | 1 | phone | 1.11 | months | 100 | 111 | |
| Phone MC | 1 | phone | 0.83 | months | 100 | 83 | |
| Phone Sr. Director | 1 | phone | 0.14 | months | 100 | 14 | |
| Other | | | | | | | 105 |
| Trac Media/carriage | | | 1.11 | months | 35 | 39 | |
| Subscriptions/equip | | | 1.11 | months | 35 | 39 | |
| Office Supplies | | | 1.11 | months | 25 | 28 | |
| | | | | | | | |
| **TOTAL ADMINISTRATIVE EXPENSES** | | | | | | | **1,839** |

## DATA MANAGEMENT AND DIGITAL DELIVERY

| Description | Quan | Type | Quan | Packets | Cost | Subtotal | Total |
|---|---|---|---|---|---|---|---|
| Data Management and Digital Delivery | | | | | | | 100 |
| Fee | | | 1 | fee | 100 | 100 | |
| | | | | | | | |
| **TOTAL DATA MANAGEMENT AND DIGITAL DELIVERY** | | | | | | | **100** |

**EXHIBIT D - 82**

| PROJECT: Rough Cut with Tommy Mac | Date: February 20, 2015 | |
|---|---|---|
| SEASON SIX | | |
| NATIONAL MARKETING | | |
| Producer: Laurie Donnelly | Number of shows: | 13 |
| | Length of each show: | 30 |

### SUMMARY - NATIONAL MARKETING

| | |
|---|---|
| Staff | 7,804 |
| Administrative Expenses | 968 |
| Marketing Materials | 380 |
| Electronic Media | 2,200 |
| Total Direct Expense | 11,352 |
| Indirect | 2,043 |
| 18% on    11,352    2,043 | |
| **TOTAL NATIONAL MARKETING** | **13,395** |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 18 of 23

# EXHIBIT D - 83

## STAFF

| Description | Weeks Period | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Staff | | | | | 7,804 |
| Account Executive | 35 weeks | 4 hr/wks | 26 | 3,640 | |
| Senior Director | 35 weeks | 0.5 hr/wks | 80 | 1,400 | SR .5 hr |
| Business Manager | | 18 hours | 38 | 680 | |
| Vacation Accrued | | 6.6% on | 5,720 | 377 | |
| Benefits | | 28% on | 6,097 | 1,707 | |
| **TOTAL STAFF** | | | | | **7,804** |

## ADMINISTRATIVE EXPENSES

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Occupancy | | | | | 545 |
| Occupancy AE | 1 office | 0.81 months | 600 | 484 | |
| Occupancy Sr. Director | 1 office | 0.10 months | 600 | 61 | |
| Computers | | | | | 139 |
| Computer AE | 1 computer | 0.81 months | 135 | 109 | |
| Computer Sr. Director | 1 computer | 0.22 months | 135 | 30 | |
| Phones | | | | | 103 |
| Phone AM | 1 phone | 0.81 months | 100 | 81 | |
| Phone Sr. Director | 1 phone | 0.22 months | 100 | 22 | |
| Supplies | | | | | 182 |
| Mailing supplies | | 0.81 months | 75 | 61 | |
| Subscriptions/equip | | 0.81 months | 75 | 61 | |
| Office Supplies | | 0.81 months | 75 | 61 | |
| **TOTAL ADMINISTRATIVE EXPENSES** | | | | | **968** |

Amendment to Project Participation Agreement/
"*Rough Cut: Woodw*orking with Tommy Mac"
Page 19 of 23

**EXHIBIT D - 84**

## MARKETING MATERIALS

| Description | Quan  Type | Quan  Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Promotional Dubs | | | | | 380 |
| Dubs | | 40  dubs | 7 | 280 | |
| Postage | | 1  misc postage | 100 | 100 | |

| | TOTAL MARKETING MATERIALS | 380 |
|---|---|---|

## ELECTRONIC MEDIA

| Description | Quan  Type | Quan  Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Electronic Media | | | | | 2,200 |
| Cision | | 1  allow | 700 | 700 | |
| PR Newswire | | 1  allow | 1,500 | 1,500 | |

| | TOTAL DUBBING | 2,200 |
|---|---|---|

# ThomasJMacDonald.com/RoughCut site section -  Itemized Costs

| Line Item | | Hard Costs |
|---|---|---|
| **SOW Items (In Scope Work)** | | |
| Project Management (For Launch) | | 1,100.00 |
| System Testing | | 850.00 |
| | | |
| | | |
| Videos for 13 episodes teasers, then full length in January 2016 | | 6,900 |
| Behind the scenes | | 600.00 |
| Social Media<br><br>• Provide ongoing support to National Marketing team with needed materials for distriburion.<br><br>• Populate iTunes with season 6<br><br>• Facebook updates and ad placement<br><br>• Instagram/Pintrest  posts<br><br>• Answering Email for website questions<br><br>• Add Sweepstakes give-away, if appropriate – for Rough Cut merchandise and/or sponsor's products. Total of 1 possibly 2 for the season<br><br>• Provide ongoing support to Major sponsors with needed materials for distriburion. | | 2,675.00 |
| | | |
| | | |

**EXHIBIT D - 86**

| | | |
|---|---|---|
| Season 6 infrastructure (appending to season 5) | | 4,200.00 |
| SEO | | 150.00 |
| Animations | | 0.00 |
| Blogging 13 weeks for show (13 blogs) | | 1,825.00 |
| **Grand Total of All Work** | | **$18,300** |
| Social Media Ad buy | | 5,000.00 |
| **Total Including Ad Buy** | | **$23,300** |

| | | |
|---|---|---|
| **WGBH Indirect** | **18%** | **$4,194.00** |

| | |
|---|---|
| **Total Web Budget** | **$27,494** |

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 22 of 23

**EXHIBIT D - 87**

Exhibit B-2

Season 6 Production Schedule

Amendment to Project Participation Agreement/
"Rough Cut: Woodworking with Tommy Mac"
Page 23 of 23

**EXHIBIT D - 88**

PREPARED AS OF: 3/4/15

## ROUGH CUT WOODWORING WITH TOMMY MAC - SEASON 6

| EP# | DEL# | EPISODE TITLE | FIELD SHOOT | STUDIO SHOOT | EDIT START | DELIVER | AIRDATE |
|-----|------|---------------|-------------|--------------|------------|---------|---------|
| 601 | 1 | Tom McLaughlin | | 7/7/15 | | 8/21/15 | 10/3/15 |
| 602 | 2 | David Marks - Santa Rosa | 5/11/15 | | | 8/28/15 | 10/10/15 |
| 603 | 3 | Steve Brown | | 7/9/15 | | 9/4/15 | 10/17/15 |
| 604 | 4 | Glen Huey | | 7/13/15 | | 9/11/15 | 10/24/15 |
| 605 | 5 | Paul Schurch - Santa Barbara | 5/9/15 | | | 9/18/15 | 10/31/15 |
| 606 | 6 | Jesse Shaw | | 7/16/15 | | 9/25/15 | 11/7/15 |
| 607 | 7 | Al D'Attanasio | | 7/20/15 | | 10/2/15 | 11/14/15 |
| 608 | 8 | Phil Lowe - Beverly | 7/25/15 | | | 10/9/15 | 11/21/15 |
| 609 | 9 | Tom McLaughlin | | 7/27/15 | | 10/16/15 | 11/28/15 |
| 610 | 10 | Steve Brown | | 7/30/15 | | 10/23/15 | 12/5/15 |
| 611 | 11 | Tom McLaughlin - NH | 6/25/15 | | | 10/30/15 | 12/12/15 |
| 612 | 12 | Steve Brown | | 8/3/15 | | 11/6/15 | 12/19/15 |
| 613 | 13 | Paul Wahlberg - Tommy's House | 8/6/15 | | | 11/13/15 | 12/26/15 |
| PROMO | | DUE: 10/1/15 | | | | | |
| APT CLIP | | DUE: 8/8/15 | | | | | |

**Executed Contract**

**EXHIBIT D - 89**
#K201100120C



WGBH
One Guest Street
Boston, MA 02135
617 300 4349 tel
617 300 1014 fax
wgbh.org

**Legal and Business Affairs**

May 20, 2016

Mr. Thomas J. MacDonald
Tommy Mac Enterprises, Inc.
28 Draper Lane
Canton, Massachusetts 02021

Re: Third Amendment to Project Participation Agreement (WGBH #K201100120)

Dear Mr. MacDonald:

This letter will serve as the Third Amendment of the Project Participation Agrement between Thomas J. MacDonald Fine Furniture, Inc. ("Company") and the WGBH Educational Foundation ("WGBH") dated January 20, 2011, as amended (the "Agreement"). Unless otherwise provided herein, all capitalized terms shall be as defined in the Agreement.

Notwithstanding anything to the contrary contained in the Agreement, WGBH and Company agree as follows:

1.      WGBH and Company shall collaborate to produce Season 7 in accordance with the Agreement, subject to the following:

(a)      the Production Budget (the "Season 7 Budget") and Production Schedule for Season 7 are set forth on **Exhibits C-1** and **C-2**, respectively;

(b)      MacDonald's fee under the Host Agreement (the "Host Fee") for Season 7 shall be three thousand seventy-six dollars ninety-two cents ($3,076.92) per Program for thirteen (13) Programs - a total of forty thousand dollars ($40,000). Payment of the Host Fee shall be made in the following installments:

(i)      twenty-four thousand dollars ($24,000) within fifteen (15) business days of the signing of this Amendment by all parties hereto;

(ii)      one thousand two hundred and thirty dollars ($1,230) as soon as practicable after the recording of the first twelve (12) Programs in Season 7, but in no event later than fifteen (15) business days after each such recording; and

(iii)      one thousand two hundred and forty dollars ($1,240) as soon as practicable after the recording of the final Program in Season 7, but in no event later than fifteen (15) business days after such recording;

(c)      the Season 7 Budget shall not cover any costs for services of a Shop Assistant;

(d)      WGBH and Company have the right to seek Additional Funding for Season 7 to cover costs in excess of the amount set forth in the Season 7 Budget (the "Season 7 Additional Funding"), provided that all funders, and the terms of any agreements with funders, shall be subject to the mutual approval of WGBH and MacDonald, which shall not be unreasonably withheld. WGBH shall collect all Additional Funding for Season 7 and allocate it as follows:

(i)     one hundred percent (100%) of the Season 7 Additional Funding shall be payable to WGBH until WGBH has recouped any production overages (i.e., actual costs incurred for Season 7 of the Series not covered by the Season 7 Budget), provided that for purposes of this allocation such production overages shall not exceed twenty percent (20%) of the Production Budget except to the extent they are directly attributable to Company's action or inaction or are otherwise approved by Company ("Allowable Season 7 Overages"); and

(ii)     to the extent the Season 7 Additional Funding exceeds the amount of the Allowable Season 7 Overages, then such excess Season 7 Additional Funding shall be allocated fifty percent (50%) to each of Company and WGBH;

(e)     Company shall cause MacDonald to make a personal appearance at one (1) trade show for Woodcraft Supply LLC ("Woodcraft") during the Term for Season 7, for up to three (3) days (the "Trade Show Appearance"). WGBH shall reimburse Company for all reasonable travel expenses incurred by Company in respect to the Trade Show Appearance, provided that (i) Company submits to WGBH substantiated invoices and original receipts, and (ii) such expenses are approved in writing by WGBH. Company shall submit invoices for approval by WGBH no later than sixty (60) days after the date incurred by Company. All travel expenses incurred by Company in connection with the Trade Show Appearance shall be subject to the WGBH Travel and Expense Reimbursement Policy attached hereto as Exhibit C-3;

(f)     MacDonald shall have the right to participate in speaking engagements and/or other appearances (the "MacDonald Outside Activities"), provided such MacDonald Outside Activities:

(i)     shall not conflict with the interests and rights of any funders of Season 7, nor shall such MacDonald Outside Activities constitute an endorsement of any funder and/or its products and/or services;

(ii)     shall comply with applicable rules and regulations of the FCC, APT and WGBH; and

(iii)     shall be subject to WGBH's prior written approval, which shall not be unreasonably withheld;

(g)     Subject to Company's fulfillment of its obligations hereunder, MacDonald shall receive credit as an "Executive Producer" on each Season 7 Program (the "Credit"). The format, order, prominence, and duration of all credits on the Project shall be determined by WGBH in its sole discretion. No casual or inadvertent failure of WGBH or others to include the Credit shall constitute a breach by WGBH of this Agreement;

(h)     Company, WGBH and PBSd shall consult concerning strategies for developing and exploiting Related Materials, such as design plans, DVDs, merchandise, t-shirts, caps, and calendars. The terms of such arrangements shall be subject to the mutual approval of Company, WGBH and PBSd, which shall not be unreasonably withheld; and

(i)     Company shall have the right to manufacture and sell furniture based on projects designed for the Series, and authorize others to do so, and shall not have any obligation to pay WGBH any share of Company's "net revenues" derived therefrom.

2.     Except as provided herein, all other terms and conditions of the Agreement (as previously amended) shall remain in full force and effect. If any terms in this Amendment are inconsistent with any

**EXHIBIT D - 91**

Third Amendment to Project Participation Agreement/"Rough Cut: Woodworking with Tommy Mac"
Page 3 of 14

other terms of the Agreement, then the terms of this Amendment shall be the definitive and over-ruling part of the Agreement.

Please confirm your acceptance of the above terms and conditions by signing both original copies of this Second Amendment and returning them to WGBH. A fully executed original will be returned to you

ACCEPTED and AGREED TO effective as of the date first set forth above

WGBH Educational Foundation

By: *Sue Kantrowitz*
Susan L. Kantrowitz
Vice President and General Counsel

Date Signed: *July 25, 2016*

Tommy Mac Enterprises, Inc.

By: _____

Title: _____

Date Signed: _____

Federal Tax ID#: _____

ACCEPTED and AGREED TO insofar as this Agreement applies to it:

Public Media Distribution, LLC ("PBSd")

By: _____
David Bernstein
Co-President

Date Signed: *6/9/16*

I have read and understand the Agreement and agree to perform the services, grant the rights and otherwise abide by the terms of this Amendment. I represent that I have the right to enter into this Agreement and to provide my services and grant such rights. I will look solely to Company for payment of my compensation in connection with such services and grant of rights.

Thomas J. MacDonald

By

Date Signed

**EXHIBIT D - 92**

other terms of the Agreement, then the terms of this Amendment shall be the definitive and over-ruling part of the Agreement.

Please confirm your acceptance of the above terms and conditions by signing both original copies of this Second Amendment and returning them to WGBH.  A fully executed original will be returned to you.

ACCEPTED and AGREED TO effective as of the date first set forth above:

WGBH Educational Foundation                    Tommy Mac Enterprises, Inc.

By: _____                 By: _____
    Susan L. Kantrowitz                        Title: _____
    Vice President and General Counsel

Date Signed: _____                   Date Signed: __5-23-16__

                                              Federal Tax ID#: _____


ACCEPTED and AGREED TO insofar as this Agreement applies to it:

Public Media Distribution, LLC ("PBSd")

By: _____
    David Bernstein
    Co-President

Date Signed: _____


I have read and understand the Agreement and agree to perform the services, grant the rights and otherwise abide by the terms of this Amendment.  I represent that I have the right to enter into this Agreement and to provide my services and grant such rights.  I will look solely to Company for payment of my compensation in connection with such services and grant of rights.

Thomas J. MacDonald

By: _____

Date Signed: _____

**Exhibits**

Exhibit C-1      Season 7 Production Budget

Exhibit C-2      Season 7 Production Schedule

Exhibit C-3      WGBH Travel and Expense Reimbursement Policy

**EXHIBIT D - 94**

Exhibit C-1

Season 7 Production Budget

WGBH BUDGET

| PROJECT: Rough Cut with Tommy Mac SEASON SEVEN | Date: | 7/21/16 |
|---|---|---|
| Executive Producer: Laurie Donnelly | Number of shows: Length of each show: | 13 30 |

ASSUMPTIONS:  13 episodes

### PROJECT SUMMARY

| | |
|---|---|
| PRODUCTION | 298,114 |
| STATION RELATIONS | 10,135 |
| NATIONAL MARKETING | 0 |
| WEB SITE | 3,750 |
| STATION FINDER | 0 |
| **TOTAL PROJECT COST** | **312,000** |

| | FUNDING | ~~312,000~~ | |
|---|---|---|---|
| | CONFIRMED | 0 | |
| 1 | Woodcraft Supply, LLC | 150,000 | Contracted |
| 2 | Microjig | 28,000 | Contracted |
| 3 | Titebond/Franklin Internat | ~~56,000~~ | Contracted |
| 4 | SCM | 28,000 | Contracted |
| 5 | Pony Tools (25,000) | | Contracted |
| 6 | Starrett | 25,000 | Contracted |
| 7 | Toolstream/Triton | | |
| 8 | Rikon Power Tools ($56,000) | | TBA |
| 9 | WGBH | 25,000 | Due to bankrupcy of Pony Tools, WGBH has agreed to cover this shortfall |
| | Remaining Funding Requ | 0 | |

WGBH BUDGET

# EXHIBIT D - 96

Page 2

| PROJECT: Rough Cut with Tommy Mac<br>SEASON SEVEN<br>PRODUCTION<br>Executive Producer: Laurie Donnelly | Date:            7/21/16 |
|---|---|
| | Number of shows:            13<br>Length of each show:            30 |

Rights cleared:  4 in 3; HV; Foreign - all covered in host fee

## PRODUCTION SUMMARY

| | |
|---|---:|
| STAFF | 146,206 |
| ADMINISTRATION | 10,130 |
| WORKSHOP FEES | 0 |
| TALENT AND SCRIPT | 48,150 |
| TRAVEL AND LIVING | 7,175 |
| STUDIO SHOOT | 0 |
| GRAPHICS AND ANIMATIONS | 2,000 |
| SCENICS, PROPS, WARDROBE | 1,550 |
| MUSIC | 1,500 |
| POST-PRODUCTION | 25,821 |
| CONTINGENCY | 10,107 |
| | |
| Total Direct Expense | 252,639 |
| Indirect | 45,475 |

18% on        252,639        45,475

**TOTAL PRODUCTION COST**                298,114

WGBH BUDGET

Page 3

# EXHIBIT D - 97

| PROJECT: Rough Cut with Tommy Mac | Date: | 7/21/16 |
|---|---|---|
| SEASON SEVEN | | |
| PRODUCTION | | |
| Executive Producer: Laurie Donnelly | Number of shows: | 13 |
| | Length of each show: | 30 |

**STAFF**

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| **Staff** | | | | | 47,583 |
| Executive Producer (LD) | 20% | | | | |
| Senior Program Producer (AA) | 20% | | | | |
| Series Editor (Sabrina Zanella) | 100% | | | | |
| Amie Harchik - | | | | | |
| Assistant Editor (BR) | 10% | | | | |
| Associate Producer (AR) | 20% | | | | |
| Coordinating Producer (SLS) | 5% | | | | |
| Business Manager (TM) | 10% | | | | |
| Vacation Accrued | | 6.6% on | 44,637 | 2,946 | |
| **Benefits** | | | | | 13,323 |
| Benefits | | 28% on | 47,583 | 13,323 | |
| **Non-WGBH Staff** | | | | | 85,300 |
| Director of Photography/Dir | 1 person | 8 days | 0 | 0 | |
| Audio Person | 1 person | 8 days | 0 | 0 | |
| DGA - Shoot | 100% | 15 shows | 3,000 | 45,000 | |
| DGA - Edit | 100% | 13 shows | 3,100 | 40,300 | |
| **Third Company Hiring Mgmt** | | | | | 0 |
| Media Services Fee | | 24.0% on | 85,300 | 0 | |
| **Tommy Mac & Staff** | | | | | 0 |
| Tommy Appearance Fee | 1 fee | 3 days | 0 | 0 | |
| Tommy Mac Assist | 100% | 13 episodes | 0 | 0 | |
| Jesse animations | 100% | 0 episodes | 0 | 0 | |
| **TOTAL STAFF** | | | | | 146,206 |

**ADMINISTRATION**
Producer will be offsite, so no occ

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| | | | | | 10,130 |
| Occupancy | | 4.9 ppl/mo | 840 | 4,150 | |
| Computer | | 4.9 ppl/mo | 167 | 824 | |
| Telephone | | 4.9 ppl/mo | 35 | 173 | |
| Office Supplies | | 4.9 ppl/mo | 100 | 494 | |
| Postage and Freight | | 4.9 ppl/mo | 200 | 988 | |
| E&O Insurance | | 1 allow | 0 | 0 | |
| Production Insurance | | 1 allow | 3,500 | 3,500 | |
| Awards Submission | | 0 allow | 0 | 0 | |
| **TOTAL ADMINISTRATION** | | | | | 10,130 |

WGBH BUDGET

Page 4

# EXHIBIT D - 98

| PROJECT: Rough Cut with Tommy Mac | | |
|---|---|---|
| SEASON SEVEN | Date: | 7/21/16 |
| PRODUCTION | | |
| Executive Producer: Laurie Donnelly | Number of shows: | 13 |
| | Length of each show: | 30 |

## WORKSHOP FEES

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Co-Production/Acquisition | | | | | 0 |
| Tommy Admin Expense | | 24 weeks | 0 | 0 | |
| Season 7 Workshop Fee | | | | | |

**TOTAL WORKSHOP FEES**                                                                 **0**

## TALENT AND SCRIPT

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Talent | | | | | 48,150 |
| Host | | 13 shows | 3,077 | 40,000 | |
| Benefits - Host (LO) | 16.6% on | | 40,000 | 6,640 | |
| Tommy Consulting Fee | | 13  shows | 0 | 0 | |
| Funder Announcer | | 1  announce | 1,180 | 1,180 | |
| Benefits - Funder Announcer | 28.0% on | | 1,180 | 330 | |

**TOTAL TALENT AND SCRIPT**                                                      **48,150**

## TRAVEL AND LIVING

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Woodcraft Fees | | | | | 0 |
| Hand-outs for Appearances | 0 allow | | 0 | 0 | |
| Party at Woodcraft Event | 0 allow | | 0 | 0 | |
| Talent Travel - Tommy (Columbus OH OR Atlanta GA) 1 Trip ONLY | | | | | 1,925 |
| Airfare | 1 person | 1 RT | 650 | 650 | |
| Hotels | 1 person | 2 nights | 300 | 600 | |
| Ground | 1 person | 1 trips | 400 | 400 | |
| Excess Baggage | 1 person | 1 RT | 50 | 50 | |
| Per Diems | 1 person | 3 days | 75 | 225 | |
| Studio Shoot | | | | | 5,250 |
| Craft Services/Lunch | 10 people | 15 days | 25 | 3,750 | |
| Ground - Admin ONLY | 2 people | 15 days | 50 | 1,500 | |

**TOTAL TRAVEL**                                                                        **7,175**

## GRAPHICS AND ANIMATIONS

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| New Title and Lower thirds | | 1.0 allow | 2,000 | 2,000 | 2,000 |

**TOTAL GRAPHICS AND ANIMATIONS**                                          **2,000**

WGBH BUDGET

| PROJECT: Rough Cut with Tommy Mac | | Date: | 7/21/16 |
|---|---|---|---|
| SEASON SEVEN | | | |
| PRODUCTION | | | |
| Executive Producer: Laurie Donnelly | | Number of shows: | 13 |
| | | Length of each show: | 30 |

**STUDIO SHOOT**

ASSUMPTIONS:  All 13 shows in Canton new studio (Tommy's Home)
plus 1 extra days for pick-ups, tracks & opens

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| | | | | | 0 |
| Camera/Monitor/lights Pkg | 1 pkg | 0 days | 0 | 0 | |
| Audio Pkg | 1 pkg | 0 days | 0 | 0 | |
| Lights only | 1 allow | 0 days | 0 | 0 | |
| SSD Cards | 1 allow | 0 days | 0 | 0 | |

**TOTAL STUDIO SHOOT** 0

**SCENICS, PROPS, WARDROBE**

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Scenery & Props | | | | | 1,300 |
| Props Purchase/Rental | | 13 shows | 100 | 1,300 | |
| Wardrobe & Makeup | | | | | 250 |
| Makeup & Hair Kit | | 1 allow | 1 | 250 | |
| Wardrobe Purchase | | 1 allow | 0 | 0 | |

**TOTAL SCENICS, PROPS, WARDROBE** 1,550

**MUSIC**

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Music - APM | | | | | 1,500 |
| Series Theme Music | | 1 update | 0 | 1,500 | |

**TOTAL MUSIC** 1,500

WGBH BUDGET

**EXHIBIT D - 100**

| PROJECT: Rough Cut with Tommy Mac | | | Date: | 7/21/16 |
| SEASON SEVEN | | | | |
| PRODUCTION | | | | |
| Executive Producer: Laurie Donnelly | | | Number of shows: | 13 |
| | | | Length of each show: | 30 |

## POST-PRODUCTION
### See EXHIBIT 2: Post-Production tab          ONLY ONE FEED TO APT

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| **Multiformat Suite** | | | | | 1,950 |
| Multiformat Suite | | 13 days | 150 | 1,950 | |
| Editing Eqipment Rental | | 16 weeks | 0 | 0 | |
| | | | | | |
| Final Dubs, Captioning, DVS, Eval and Tape Stock | | | | | 19,151 |
| Dubbing & Evaluation | | 13 shows | 150 | 1,950 | |
| DVD show dubs | | 13 DVDs | 35 | 455 | |
| Post-Production Tape Stock | | 13 shows | 164 | 2,136 | |
| Dubbing - General | | 4 dubs | 1,625 | 6,500 | |
| Hard Drives | | 2 allow | 800 | 1,600 | |
| Captioning | | 14 shows | 465 | 6,510 | |
| | | | | | |
| APT Fees | | | | | 4,720 |
| Transmission/Distribution Fee | | 13 shows | 363 | 4,720 | |

|  | | | **TOTAL POST-PRODUCTION** | | **25,821** |

## CONTINGENCY

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Contingency | | 3.1% of | 242,532 | 10,102 | 10,107 |

|  | | | **TOTAL CONTINGENCY** | | **10,107** |

WGBH Budget

**EXHIBIT D - 101**

Page 7

| | |
|---|---|
| PROJECT: **Rough Cut with Tommy Mac** | Date:  May 12, 2016 |
| SEASON SEVEN | |
| STATION RELATIONS | |
| Producer: Laurie Donnelly | Number of shows:       13 |
| DRAFT #1 | Length of each show:      .30 |

**SUMMARY - STATION RELATIONS**

| | | | | |
|---|---|---|---|---:|
| Staff | | | | 7,754 |
| Administrative Expenses | | | | 836 |
| Total Direct Expense | | | | 8,589 |
| Indirect | | | | 1,546 |
| | 18% on | 8,589 | 1,546 | |
| | **TOTAL STATION RELATIONS** | | | **10,135** |

WGBH Budget

Page 1

**EXHIBIT D - 102**

| PROJECT: Rough Cut with Tommy Mac | | Date: May 12, 2016 |
| SEASON SEVEN | | |
| STATION RELATIONS | | |
| Producer: Laurie Donnelly | | Number of shows:        13 |
| DRAFT #1 | | Length of each show:        30 |

## STAFF

| Description | Weeks  Period | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| **Staff** | | | | | 7,754 |
| Senior Account Manager | 48 weeks | 1.00 hr/wks | | | |
| Marketing Coordinator | 48 weeks | 2.50 hr/wks | | | |
| Business Manager | 48 weeks | 0.25 hours | | | |
| Vacation Accrued | | 6.6% on | 5,682 | 375 | |
| Benefits | | 28% on | 6,058 | 1,696 | |

TOTAL STAFF                                     7,754

**Staff Hours include the following activities:**

* Season launch
* Collateral ( including development/implementation)
* Communications and marketing calls
* Project reports (including carriage)
* Ongoing project management and coordination

## ADMINISTRATIVE EXPENSES

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| **Occupancy** | | | | | 623 |
| Occupancy SAM | 1 office | 0.28 months | 600 | 166 | |
| Occupancy MC | 1 office | 0.69 months | 600 | 415 | |
| Occupancy BM | 1 office | 0.07 months | 600 | 42 | |
| **Computers** | | | | | 130 |
| Computer SAM | 1 computer | 0.28 months | 125 | 35 | |
| Computer MC | 1 computer | 0.69 months | 125 | 87 | |
| Computer BM | 1 computer | 0.07 months | 125 | 9 | |
| **Phones** | | | | | 83 |
| Phone SAM | 1 phone | 0.28 months | 80 | 22 | |
| Phone MC | 1 phone | 0.69 months | 80 | 55 | |
| Phone BM | 1 phone | 0.07 months | 80 | 6 | |

TOTAL ADMINISTRATIVE EXPENSES                              836

WGBH Bludget

**EXHIBIT D - 103**

Page 9

| | |
|---|---|
| **PROJECT: Rough Cut with Tommy Mac**<br>**SEASON SEVEN**<br>**NATIONAL MARKETING**<br>Executive Producer: Laurie Donnelly | Date: |
| | Number of shows:  13 |
| | Length of each show:  30 |

## SUMMARY - NATIONAL MARKETING

| | |
|---|---|
| Staff | 7,804 |
| Administrative Expenses | 988 |
| Marketing Materials | 380 |
| Electronic Media | 2,200 |
| Total Direct Expense | 11,362 |
| Indirect | 2,043 |
| 18% on       11,352       2,043 | |
| | |
| **TOTAL NATIONAL MARKETING** | **13,395** |

WG8H Bludget

| PROJECT: Rough Cut with Tommy Mac | | | Date: | | |
| SEASON SEVEN | | | | | |
| NATIONAL MARKETING | | | | | |
| Executive Producer: Laurie Donnelly | | | Number of shows: | | 13 |
| | | | Length of each show: | | 30 |

**STAFF**

| Description | Weeks Period | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Staff | | | | | |
| | | | | | 7,804 |
| Account Executive | 35 weeks | 4 hr/wks | | | |
| Senior Director | 35 weeks | 0.5 hr/wks | | | |
| Business Manager | | 18 hours | | | |
| Vacation Accrued | | 6.6% on | 5,720 | 377 | |
| Benefits | | 28% on | 6,097 | 1,707 | |
| | **TOTAL STAFF** | | | | 7,804 |

**ADMINISTRATIVE EXPENSES**

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Occupancy | | | | | |
| | | | | | 545 |
| Occupancy AE | 1 office | 0.81 months | 600 | 484 | |
| Occupancy Sr. Director | 1 office | 0.10 months | 600 | 61 | |
| Computers | | | | | 139 |
| Computer AE | 1 computer | 0.81 months | 135 | 109 | |
| Computer Sr. Director | 1 computer | 0.22 months | 135 | 30 | |
| Phones | | | | | 103 |
| Phone AM | 1 phone | 0.81 months | 100 | 81 | |
| Phone Sr. Director | 1 phone | 0.22 months | 100 | 22 | |
| Supplies | | | | | 182 |
| Malling supplies | | 0.81 months | 75 | 61 | |
| Subscriptions/equip | | 0.81 months | 75 | 61 | |
| Office Supplies | | 0.81 months | 75 | 61 | |
| | **TOTAL ADMINISTRATIVE EXPENSES** | | | | 968 |

WGBH Bludget

Page 1

# EXHIBIT D - 105

| PROJECT: Rough Cut with Tommy Mac | Date: | |
|---|---|---|
| SEASON SEVEN | | |
| NATIONAL MARKETING | | |
| Executive Producer: Laurie Donnelly | Number of shows: | 13 |
| | Length of each show: | 30 |

## MARKETING MATERIALS

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Promotional Dubs | | | | | 380 |
| Dubs | | 40 dubs | 7 | 280 | |
| Postage | | 1 misc postage | 100 | 100 | |

| | TOTAL MARKETING MATERIALS | | | | 380 |
|---|---|---|---|---|---|

## ELECTRONIC MEDIA

| Description | Quan Type | Quan Type | Cost | Subtotal | Total |
|---|---|---|---|---|---|
| Electronic Media | | | | | 2,200 |
| Cision | | 1 allow | 700 | 700 | |
| PR Newswire | | 1 allow | 1,500 | 1,500 | |

| | TOTAL DUBBING | | | | 2,200 |
|---|---|---|---|---|---|

**SOW from David Masher**
Update sponsor logos
Create new "Season 7/Rough Cut" banner on home page
~~Add sponsor Vodcasts you mentioned 2-4~~
Add a landing page for season 7 with Episode titles & descriptions, a lead image and a teaser video.  This will require me to build out a new section of the site because the way the site was built. So hopefully you'll get more funding...

$3,750.00

**EXHIBIT D - 106**

**EXHIBIT D - 107**

<u>Exhibit C-2</u>

Season 7 Production Schedule

## ROUGH CUT SEASON 7 – SHOOTING SCHEDULE

| EPISODE | DATE (tentative and subject to change) |
|---------|-----------------------------------------|
| 101 | 6-16-16 |
| 102 | 6-20-16 |
| 103 | 6-27-16 |
| 104 | 7-1-16 |
| 105 | 7-11-16 |
| 106 | 7-18-16 |
| 107 | 7-25-16 |
| 108 | 7-29-16 |
| 109 | 8-25-16 |
| 110 | 9-1-16 |
| 111 | 9-2-16 |
| 112 | 9-6-16 |
| 113 | 9-13-16 |

<u>Exhibit C-3</u>

WGBH Travel and Expense Reimbursement Policy



## TRAVEL AND EXPENSE
## REIMBURSEMENT POLICY

### (for Independent Contractors working on WGBH projects)

**VM 5/8/09**
revised 02/24/2016

**EXHIBIT D - 110**

## TABLE OF CONTENTS

|  | PAGE |
|---|---|
| INTRODUCTION | 3 |
| ACCEPTABLE EXPENSES | 3 |
| UNACCEPTABLE EXPENSES | 4 |
| AIR/TRAIN TRAVEL | 5 |
| HOTEL/LODGING | 5 |
| TRANSPORTATION | 6 |
| MEALS | 7 |

Appendix:
ADDITIONAL GUIDELINES FOR TRAVEL AND BUSINESS
EXPENSES WHEN WORKING ON PROJECTS FUNDED BY
FEDERAL GRANTS                8

## *INTRODUCTION*

*Purpose of Policy*

This document sets forth the policies of WGBH with respect to certain business and travel expenses of independent contractors working on WGBH projects.

Please direct any questions regarding this policy to your WGBH project contact or David Brown, Chief Compliance Officer at (617) 300-3840.

## ACCEPTABLE EXPENSES

In addition to expenses for hotels, transportation, and meals, as defined in the policy, the following expenses are considered acceptable expenses for WGBH projects (with proper receipt documentation):

- Business office expenses (fax, copy service, etc.)
- Business phone calls
- Conference fees (include copy of registration form with expense report)
- Currency conversion fees
- Personal phone calls, not to exceed an average of 15 minutes per day
- Gasoline allowance for rental car (if mileage allowance not claimed)
- Mileage allowance for personal car usage per IRS rates
- Ground transportation (taxi, bus, train, subway, etc.)
- Laundry/dry cleaning/suit pressing for trips exceeding 5 days
- Luggage fees for airlines that charge for normal baggage
- Overnight delivery/postage for business purposes
- Parking and tolls for business purposes
- Tips related to business meals and travel (see guide to tipping, page 9)
- Visa/passport consulate fees for business travel
- Supplies when on site (production, conference, etc.)
- Travelers' check fees for business purposes

## Required Receipts for Reimbursement
The traveler should include:
- A copy of the airfare itinerary or original ticket receipt
- Original folio for all lodging expenditures, regardless of amount
- Car rental agreement and detailed statement of amount paid (not estimate)
- Credit card receipts (not statements) for entertainment expenses (must include names, titles, and business purpose of meeting and detailed restaurant meal receipts)

For WGBH independent contractors who work on projects funded by grants, the independent contractor should refer to the terms of the grant agreement for further information on acceptable expenses. For independent contractors that work on projects funded by federal funds, the independent

contractor should also refer to the Appendix to this policy for special requirements applicable to these types of grants.


## UNACCEPTABLE EXPENSES

Travelers **will not** be reimbursed for the following expenses:

- Alcohol; see the Appendix re: travel and expenses for projects funded by federal grants
- Airline club membership dues and other award programs
- Annual fees for personal credit card used for travel purposes
- Airline upgrades
- Car rental upgrades or GPS systems
- Auto repairs
- Child care services
- Barbers, hairdressers, clothing, or toiletry items
- Baggage fees associated with personal items such as skis, golf equipment, etc.
- Portion of meals for conference where meals are part of registration
- Health club/resort fees, gym, or recreational fees
- Corporate card delinquency fees or finance charges
- Expenses related to vacation or personal days taken before, during, or after a business trip
- Laundry or dry cleaning services for travel of fewer than 5 consecutive days
- Valet service (unless mandatory at the location)
- Loss or theft of cash or airline tickets
- Loss or theft of personal funds or property
- Lost baggage or associated costs (losses covered by airlines)
- Luggage, briefcases
- Magazines, books, or personal reading materials
- Medical expenses incurred while traveling, except for business-related injury or accident (medical services covered by insurance)
- Mini-bar/ in-room refreshments (non-alcoholic only may be meal expense)
- Movies (including in-flight and hotel in-house)
- "No show" charges for hotel or car service
- Optional personal travel or baggage insurance
- Parking tickets or traffic violations
- Personal entertainment, including sports events
- Personal telephone calls in excess of reasonable calls home, as defined in the "Acceptable Expenses" section
- Pet care
- Spa services, shoe shines
- Personal guest travel and expenditures
- Souvenirs, personal gifts (except in lieu of lodging)

**EXHIBIT D - 113**

## AIR/TRAIN TRAVEL

### Air Travel

All air travel is restricted to coach class or to the least expensive airfare available, unless circumstances prevent it. It is WGBH's policy not to cover the cost of business class travel, even for international flights, except under extraordinary circumstances. Independent contractors wishing to travel in business class travel under such unusual circumstances must obtain prior written approval from WGBH's Accounting office. When traveling on a federally-funded project (see Appendix), travelers must book the lowest coach class airfare available, and travel may only be on approved airlines (generally American-owned carriers). Any international travel on non-American-owned carriers must receive prior written approval from WGBH's Accounting office.

First class travel is prohibited for all destinations unless pre-approved by WGBH's Accounting office. First class travel is not allowed for federally-funded projects.

Travelers attending a conference are strongly encouraged to consider multiple-stop fares as time allows, and should review the conference registration forms for details regarding discount airfare and hotel rate made available through the agency of the conference.

The use of personal aircraft is not allowed for WGBH business travel.

### Train Travel

Out-of-town train travel is restricted to coach class or its equivalent. First class or business class train travel is not allowed under WGBH policy. For rail travel only, if coach class is not available due to the type of train, business class is acceptable. This fact should be documented. First class rail travel is not acceptable in any circumstances.

## HOTEL/LODGING

Independent contractors working on WGBH projects who are required to stay overnight when traveling for WGBH project purposes should stay in a standard, business-class, single room in a non-luxury hotel. Suite or luxury accommodations are not acceptable unless pre-approved by WGBH's Accounting office, or unless no other rooms are available. Approved supporting documentation should be submitted.

Hotel rates in major cities (Chicago, Los Angeles, San Francisco, Washington, DC) may not exceed $250 per night, excluding taxes. New York rates may not exceed $400 per night, October through December; $300 all other months. Please note: WGBH is exempt from some hotel taxes in New York, and a tax- exempt certificate for the state of New York (available from the Accounting office) should be provided upon check-in.

It is the responsibility of the traveler to notify either the hotel to cancel a room reservation. Travelers should request and record the cancellation number in case of billing disputes. "No show" charges are unacceptable expenses and will not be reimbursed.

Original hotel paid folio receipts must be retained.  If a business trip exceeds 5 days, laundry, dry cleaning, and pressing services are acceptable when reasonable and receipts are retained.  .

Reasonable gratuities to porters and bellmen are acceptable:
- Bellmen: $2 per bag
- Housekeeping:  $2 per night
- Cabs: 15-18% of fare
- Porters: $2-$3 per bag

Note: When traveling on a federally-funded project, tokens of appreciation are not allowable (see Appendix regarding federal grant travel and business expenses)

WGBH Independent contractors who travel with persons not tied to the purpose of the business trip are expected to pay all incremental costs associated with the guests' travel, including transportation costs, additional lodging expenses, if any, meal expenses, and registration fees.


## TRANSPORTATION

### Automobile Rental
Car rental should be limited to situations where public transportation would not be practical or economical.  A compact to mid-size car is considered adequate for general transportation, but larger vehicles may be rented if required for the number of passengers or equipment being transported. Approval for a larger car should be obtained from your WGBH project contact and documented as to the reason a larger car is required.  A car to be used for more than a few days should be contracted at the most economical weekly rate available. Independent contractors traveling to the same destination should make every effort to share automobile rentals whenever possible.

Gas tanks should be filled prior to returning cars to rental agencies to avoid refueling charges, which may be billed at as much as $5 per gallon or more. Cars should be returned on time to avoid additional hourly charges.

### Allowance for Personal Auto
An acceptable fee for use of a personal car for WGBH business is the current IRS reimbursement rate (check current IRS regulations for the rate) for the most direct route to and from the business destination.  (This rate is subject to change, and WGBH will notify independent contractors of any change.)  Independent contractors on WGBH projects must keep track of the origin and destination of such trips and total number of miles driven. Costs incurred for parking and tolls are acceptable and receipts should be retained for all auto expenses.

**EXHIBIT D - 115**

## APPENDIX:  ADDITIONAL GUIDELINES FOR TRAVEL AND BUSINESS EXPENSES WHEN WORKING ON PROJECTS FUNDED BY FEDERAL GRANTS

Independent contractors charging expenses to projects funded by federal grant funds should be cognizant of the special requirements and limitations related to expenses charged to federal grants. These policies are in addition to the WGBH travel and expense policies, and expenses need to be in compliance with both policies.

A.      All expenses are subject to review by the grant's Grant Manager.

B.      The independent contractor and the Supervisor/Manager approving the expense are responsible for ensuring each expense is allowable by the terms of the grant and 2 CFR Chapter I, Chapter II, Part 200, et al. Uniform Administrative Requirements, Cost Principles, and Audit requirements for Federal Awards; Final Rule (the "Uniform Guidance").  The Uniform Guidance sets forth standards for obtaining consistence and uniformity among Federal agencies in the administration of grants to agreements with the institutions of higher education, hospitals, and other non-profit organizations.  It also establishes principles for determining costs of grants, contracts and other agreements with non-profit organizations.

C.      Every expense item must be supported by a detailed receipt, regardless of amount. A credit card statement is not an acceptable form of receipt

D.      Expenses associated with the purchase of alcoholic beverages, gifts or contributions, donations and entertainment are not acceptable expenses and may not be charged to federal grants.  To provide positive proof that meal expenses do not include charges for alcohol, detailed receipts with proof of payment  (listing of items included in the total) must be submitted for meal expenses.

E.      The Uniform Guidance discourages grant recipients (WGBH) from purchasing unnecessary items and incurring meal expenses when not traveling on grant related business, with federal grant funds.  Local lunches, and dinners that are not deemed necessary are not acceptable expenses.  Additionally, entertainment costs such as the cost of amusement, diversion, social activities (including "wrap parties" or other project completion celebratory events), ceremonials, and costs relating thereto, such as meals lodging rentals, transportation and gratuities are unallowable.



K2011 00120D

**EXHIBIT D - 116**

July 8, 2016

Thomas J. MacDonald
Tommy Mac Enterprises, Inc.
28 Draper Lane
Canton, Massachusetts 02021

Re: Addendum to Third Amendment to Project Participation Agreement
(WGBH K201100120)

Dear Mr. MacDonald,

This letter will serve as an addendum to the Third Amendment, dated as of May 20, 2016, to the Project Participation Agreement between Thomas J. MacDonald Fine Furniture, Inc. ("Company") and the WGBH Educational Foundation ("WGBH") dated January 20, 2011, as amended (the "Agreement"). Unless otherwise provided herein, all capitalized terms shall be as defined in the Agreement.

Notwithstanding anything contained in the Agreement to the contrary, WGBH and Company agree that WGBH does not own any interest in the shop being constructed by Company for Season 7 of the Series. As between WGBH and Company, Company shall be the sole owner of all tools, building materials, and construction relating to said shop as well as the underlying real estate. WGBH shall not be entitled to any kind of revenue share with regard to any transaction concerning such real estate or any improvements thereto.

The parties hereby confirm their acceptance of the above terms and conditions by signing below.

WGBH Educational Foundation                    Tommy Mac Enterprises, Inc.

By: _____                            By: _____
    Eric Brass
    Susan L. Kantrowitz

Vice President and General Counsel             Title: President

Date Signed: 8/9/16                            Date Signed: 7-16-16